**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ROBERT J. FELEKEY, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 3:02CV691 (CFD) |
| AMERICAN TELEPHONE AND TELEGRAPH COMPANY, | : | |
| Defendant. | : | JULY 11, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The defendant, American Telephone and Telegraph Company ("AT&T"), respectfully moves for summary judgment on Plaintiff's two claims -- breach of contract and breach of the covenant of good faith and fair dealing[1] -- because Plaintiff has failed to adduce any evidence from which a reasonable fact finder could infer that Plaintiff has satisfied all elements of these claims. Rather, the undisputed evidence shows that no contract was ever formed between the parties and that, even if it were, AT&T did not violate any contract when it terminated Plaintiff's employment for good cause on the basis of his poor job performance.

## I. SUMMARY OF ARGUMENT

As to Plaintiff's claims that AT&T made oral and written representations that his employment would be terminated only for just and reasonable cause, Plaintiff's own deposition

[1] On or about March 20, 2002, Felekey filed a four-count Complaint in the Superior Court of Connecticut, which AT&T timely removed to this Court. On November 3, 2004, this Court granted AT&T's motion to dismiss Count One (wrongful discharge) and Count Four (intentional infliction of emotional distress), leaving the two counts that are the subject of this motion.

testimony makes clear that the alleged representations fall far short of promising to keep Plaintiff employed unless and until AT&T had good cause to terminate that employment. The undisputed evidence also demonstrates, in any event, that AT&T had good cause to terminate Plaintiff's employment because of Plaintiff's failure to meet the requirements of his sales position. Accordingly, Plaintiff's two claims cannot survive summary judgment and should be dismissed.

## II.
## FACTS[2]

### A. There Is No Evidence Of A Promise That Plaintiff's Employment Could Be Terminated Only For Good Cause

Plaintiff testified that, despite alleging in his Complaint that AT&T promised that his employment could be terminated only for "just and reasonable cause," not one person at AT&T ever made such an express representation to him. Compl., at First Count, ¶ 4; Ex. A - Felekey Dep. at 303-04.[3] Plaintiff further alleges that AT&T represented to him that the company valued employees and valued Plaintiff as an employee. Ex A - Felekey Dep. at 286. In Plaintiff's initial three-week orientation program in Cincinnati in 1979, "various instructors" told Plaintiff that the company spent a great deal of money to educate employees in the belief that their investment would pay off. Ex A - Felekey Dep. at 286. The instructors led him to believe that, after training at AT&T, "you are basically here for life." Ex. A - Felekey Dep. at 279.

Throughout Plaintiff's employment with AT&T, his supervisors allegedly expressed their support for him and his performance. Felekey's first boss in 1979, Ben Lubecki, supported and

[2] For purposes of this Motion for Summary Judgment only, AT&T accepts as true the facts as Plaintiff has alleged them in his Complaint and during discovery.

[3] Cited excerpts from Plaintiff's deposition are attached hereto as Exhibit A.

assisted Plaintiff's promotion to work for another supervisor. Ex. A - Felekey Dep. at 286. When Vice President of Sales, Bob Gebo, offered Plaintiff a job in Connecticut in the mid-1990s, it "led [him] to believe that the company wanted to employ [him] . . . ." Ex. A - Felekey Dep. at 282. David Way, Plaintiff's manager in Canada (in the late 1980s), supported Plaintiff's participation in a leadership program, offered him encouragement, and wrote performance appraisals. Ex. A - Felekey Dep. at 291. When Plaintiff returned from Canada, AT&T executive, Tom Luciano, employed and promoted Felekey. Ex. A - Felekey Dep. at 298. Luciano told AT&T's President that he "continued to expect great things from [Plaintiff] in the future." Ex. A - Felekey Dep. at 287-88. Likewise, Jim Pagos, International Transit Vice President and subsequently AT&T Solutions Vice President, awarded Plaintiff for achievements, signed off on appraisals, sponsored him for a leadership program, and agreed to Plaintiff's promotion. Ex. A - Felekey Dep. at 287-88. Ray Butkus, who reported to Jim Pagos, wrote appraisals and reference letters for Plaintiff. Ex. A - Felekey Dep. at 291-92.

Moreover, Plaintiff received a "career plan" from "every boss [he] had" that projected two to five years into the future. Ex. A - Felekey Dep. at 280. Furthermore, Rich Spena, another AT&T manager, created a document reflecting Plaintiff's annual rate of pay. Ex. A - Felekey Dep. at 294.

Plaintiff's managers also held annual meetings to review AT&T's code of conduct, and his understanding of these reviews was that he could be terminated only for "just and reasonable cause." Ex. A - Felekey Dep. at 301-02. No evidence has been adduced, however, showing that such a statement was made to Plaintiff in the annual reviews or in the code of conduct itself.

Plaintiff also cites to what he calls the "Management Handbook," which characterizes the Performance Improvement Plan ("PIP"), which Plaintiff was given prior to his termination. He

asserts that, according to this handbook, managers are to use the PIP to assist them in correcting behavior, but not as a tool to terminate employees. Ex. A - Felekey Dep. at 320. Plaintiff believes that his employment termination violated the "spirit" of the handbook. Ex. A - Felekey Dep. at 300-302. The PIP itself states, however, that:

> The Performance Improvement Plan and its guidelines are not a contract of employment, either expressed or implied, and don't create any contractual rights of any kind between AT&T and its employees. At AT&T, there is no fixed duration to the employment relationship. Employees can terminate their employment whenever they wish and for whatever reason they might have, just as AT&T may terminate any employee, with or without cause, at any time for any reason. This is known as Employment-At-Will.

PIP § 4.

**B. <u>AT&T Properly Terminated Plaintiff's Employment</u>**

Following four years as a Client Business Manager for AT&T's customer, ITT Corporation, in two years of which he failed to meet his sales quota (Ex. A - Felekey Dep. at 136, 141), Plaintiff received a change of assignment to field sales for a business unit called AT&T Solutions. Ex. A - Felekey Dep. at 107. His job in AT&T Solutions, which he started in March 1999, was primarily to generate sales of outsourcing services. Ex. A - Felekey Dep. at 111-14.

On August 25, 1999, Plaintiff's manager, William Weijer, met with Plaintiff to provide him with a mid-year evaluation. Ex. A – Felekey Dep. at 165-66; Ex. B - Weijer Letter.[4] Weijer requested that Plaintiff provide input for a Performance Improvement Plan that was to be imposed to address Plaintiff's performance issues. Ex. A – Felekey Dep. at 196-97. Weijer told Plaintiff that he would meet with Plaintiff at 30-, 45- and 60-day intervals and that, if Plaintiff's performance had not satisfactorily improved at any time, Plaintiff could be subject to dismissal. Ex. B – Weijer Letter. Plaintiff understood that a failure to improve his performance could result in termination of his employment. Ex. A – Felekey Dep. at 201.

---

[4] Weijer's September 21, 1999 letter is attached hereto as Exhibit B.

On September 21, 1999, Weijer provided Plaintiff with a Performance Improvement Plan that specified areas in which Plaintiff needed to show immediate improvement. Ex. C – Performance Improvement Plan.[5] Significantly, Weijer identified the facts that a significant customer expressly requested that Plaintiff be taken off its account and that other AT&T Solutions team members provided feedback to Weijer concerning Plaintiff's ineffectiveness in working with the team. Additionally, Weijer noted that his own direct observations of Plaintiff's interactions with customers revealed that Plaintiff was unable to articulate AT&T Solutions' value or to identify the customers' needs. Weijer detailed further performance deficiencies in the areas of consultative skills, leadership, communication and planning. See Ex. C – Performance Improvement Plan.

Plaintiff submitted an extended written response to the PIP, and, on September 27, 1999, Weijer provided a detailed response, reiterating and providing further explanation of the basis for Weijer's conclusion that Plaintiff's performance was unsatisfactory. Ex. C – Performance Improvement Plan. On September 30, 1999, Plaintiff and Weijer met for the 30-day review of Plaintiff's progress, and Weijer indicated that Plaintiff had made "minimal progress" toward improving and meeting his PIP objectives; Weijer also noted additional or continuing deficiencies in numerous areas of Plaintiff's performance. Ex. C – Performance Improvement Plan. In light of his substantial failure to move forward to improve his job performance, AT&T terminated Plaintiff's employment on October 15, 1999. Ex. A – Felekey Dep. at 272.

---

[5] The Performance Improvement Plan is attached hereto as Exhibit C.

## III.
## LEGAL STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide that a party is entitled to summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986); Viola v. Philips Med. Sys., 42 F.3d 712, 716 (2d Cir. 1994). To avoid summary judgment, a plaintiff thus must set forth "specific facts," supported by admissible evidence, showing that there is a genuine issue of material fact for trial. Fed. R. Civ. P. 56(e); Weinstock v. Columbia Univ., 224 F.3d 33 (2d Cir. 2000). "Properly used, summary judgment permits a court to streamline the process for terminating frivolous claims and to concentrate its resources on meritorious litigation." Knight v. United States Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (internal citations omitted). Summary judgment is not a disfavored procedural shortcut, but "an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Celotex Corp., 477 U.S. at 327 (internal citations and quotation marks omitted).

The mere existence of alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A scintilla of evidence in support of a plaintiff's position is insufficient; there must be evidence from which a jury reasonably could find for him. Id. at 252. The party opposing the motion must, therefore, demonstrate with admissible evidence that a genuine dispute over material facts actually exists, and cannot rely solely on pleadings, conclusory statements, or the "mere hope" that discovery proceedings will disclose additional evidence. Gray v. Town of Darien, 927 F.2d 69, 74 (2d Cir. 1991).

## IV.
## ARGUMENT

### A. Felekey's Employment Was At-Will

Under Connecticut law, absent an employment contract for a specified term, an individual's employment is terminable at the will of his employer. Fisher v. Jackson, 142 Conn. 734, 736, 118 A.2d 316 (1955); see also Santos v. Praxair Surface Techs., Inc., No. 3:04CV350, 2005 U.S. Dist. LEXIS 5354, at *7 (D. Conn. Mar. 31, 2005); Marfiak v. Blue Cross & Blue Shield, No. CV9403680075, 1997 Conn. Super. LEXIS 2997, at *4 (Conn. Super. Ct. Oct. 31, 1997) (where employee is not hired for a definite period of time, he is an at-will employee, and can be discharged at any time for a good reason, a bad reason, or no reason at all).

To establish an employment contract, Plaintiff must prove "by a fair preponderance of the evidence that [AT&T] had agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment to [him]." Torosyan v. Boehringer Ingelheim Pharmaceuticals, 234 Conn. 1, 15, 662 A.2d 89 (1995); see also Coelho v. Posi-Seal Int'l Inc., 208 Conn. 106, 111-12, 544 A.2d 170 (1988); Schermerhorn v. Mobil Chem. Co., No. 3:99CV941, 2001 U.S. Dist. LEXIS 519, at *4 (D. Conn. Jan. 17, 2001). A "contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties." Reynolds v. Chrysler First Commercial Corp., 40 Conn. App. 725, 730, 673 A.2d 573 (1996).

In Connecticut, employment for an unspecified period of time is legally identical to at-will employment. "'Permanent' or 'lifetime' employment is generally treated as indefinite in duration and terminable at the will of either party, in the absence of an express or implied agreement that refers to employment pending the occurrence of some event, such as the employer's dissatisfaction with the employee's services or some cause for termination." Shine v. Light Sources, Inc., No. CV0304804425, 2004 Conn. Super. LEXIS 1385, at *15 (Conn. Super. Ct. May 28, 2004).

Connecticut courts have held that "an agreement for permanent employment is no more than an indefinite general hiring, terminable at the will of either party without liability to the other." Carter v. Bartek, 142 Conn. 448, 450, 114 A.2d 923 (1955). Thus, even if Plaintiff could establish that he was guaranteed perpetual or lifetime employment, AT&T would maintain the legal authority to end his employment at its option.

None of the oral or written representations that Plaintiff alleges as the basis of his employment contract constitute a promise of something other than at-will employment. First, Plaintiff concedes that no AT&T representative ever explicitly made such a promise to him before or during his employment. Ex. A - Felekey Dep. at 303-04. Second, the general comments allegedly made by AT&T about Plaintiff's tenure or progress at the company cannot form the basis of a contract for employment. Under similar circumstances, this Court has held that such representations "did not constitute a clear and definite promise that [a] plaintiff could be terminated only for cause or only in a certain manner." Schermerhorn, 2001 U.S. Dist. LEXIS 519, at *15-16. The Court ruled that the plaintiff's factual support for his claim could not survive a motion for summary judgment as to the breach of contract claim, despite the plaintiff's allegation that individuals in the Personnel Department had "indicated to [him] that based on [his] father's reputation with the company, his years of service and hard work, that if [he] performed in the same fashion that [he] would probably be able to retire from Mobil with many years of service." Id. at *6, *23. Other Mobil representatives had allegedly conveyed to the plaintiff that "Mobil wanted [him] as an employee, that [his] job prospects at Mobil were excellent and that [he] could expect a long tenure at Mobil." Id. at *6-7. The Schermerhorn plaintiff conceded that no one "told him that he could be fired only for good cause, nor was he told anything specific about how long he would work for Mobil . . . ." Id. at *7.

As was the case in Schermerhorn, the kinds of representations allegedly made to Plaintiff did not rise to the level of a "clear and definite promise" that abrogates the at-will relationship. Alleged comments by the Plaintiff's Cincinnati trainers that employees are "basically here for life" convey no more than Schermerhorn's assurances about retirement with many years of service and a long employment tenure. Ex. A - Felekey Dep. at 279. Tom Luciano's alleged statement to Plaintiff that he "continued to expect great things from [him] in the future" echoes Schermerhorn's remarks about excellent job prospects. Ex. A – Felekey Dep. at 287-88. In sum, the Schermerhorn Court examined the very same kind of language that is alleged here and determined that there was "nothing in these remarks that could be construed as an expression of intent to establish the terms of plaintiff's employment, or that termination would only be for just cause . . . ." Schermerhorn, 2001 U.S. Dist. LEXIS 519, at *16.

Moreover, it is well established that an employer does not create an employment contract with an employee by describing future assignments and designating an annual salary. In Connecticut, "an annual salary term in a contract does not create a contract for a definite duration." Paris v. Northeast Savs. F.A., No. CV910398144, 1994 Conn. Super. LEXIS 1412 at *7 (Conn. Super. Ct. June 1, 1994); see also Davidson v. Morganti Nat'l Inc., No. 3:96CV1053, 1998 U.S. Dist. LEXIS 13488 (D. Conn. Aug. 14, 1998). In Davidson, employee and employer entered into a written employment agreement under which employee was to serve as a construction superintendent. Although plaintiff was hired to perform a specific task at a specific rate of pay, defendant was free to terminate plaintiff's employment at will. Id. at *8. The fact that plaintiff was to receive "10% of annual base pay payable upon completion of the project . . ." created no reasonable inference of an ongoing employment relationship. Id. The Davidson Court concluded that "fix[ing] a rate at which employees may be compensated during the course of their

employment" does not create a contract for employment. Davidson, 1998 U.S. Dist. LEXIS 13488, at *9. As in Davidson, Plaintiff's claim that career plans and salary projections created binding contractual employment obligations cannot survive summary judgment.

Finally, Plaintiff's reliance on AT&T's written policies is unavailing. Plaintiff is unable to identify any provision in those policies that created a contractual employment relationship, and he seeks to rely instead only on his understanding or belief about the implications of the written policies. Ex. A - Felekey Dep. at 285, 299-302. The Performance Improvement Plan specifically indicated that it was "not a contract of employment" and did not "create any contractual rights of any kind between AT&T and its employees." Ex. C – Performance Improvement Plan. It reaffirmed that "[a]t AT&T, there is no fixed duration to the employment relationship" and that "AT&T may terminate any employee, with or without cause, at any time for any reason." Ex. C – Performance Improvement Plan, § 4.

In the end, Plaintiff fails to cite any oral or written statement by AT&T that gives rise to a contract of employment ensuring a good cause termination standard or any particular duration of employment. He similarly fails to identify any statement by AT&T that could reasonably be construed as a "clear and definite promise" regarding the terms of his employment. His contract claim thus cannot stand.

## B. In Any Event, AT&T Had Good Cause To Terminate Plaintiff's Employment

Even if Plaintiff could establish that he had an enforceable employment contract pursuant to which his employment was terminable only for good cause, AT&T properly relied on Plaintiff's poor performance as cause for termination, and the alleged contract was, therefore, not breached.[6]

---

[6] Although Connecticut courts have not created a uniform definition of "good cause," the Model Uniform Employment Termination Act prefatory note, reprinted in 9A Lab. Rel. Rep.

As outlined in the Performance Improvement Plan, Plaintiff failed to produce results because of his inability to recognize and convey business opportunities. He lacked the managerial skills, communication tools, financial acumen, and sales expertise properly to perform the functions of his job. Plaintiff neglected his duties, mishandled his accounts, and failed to lead his sales team effectively. Most notably, he alienated clients to such a degree that a significant client specifically requested not to work with him. Ex. C – Performance Improvement Plan.

When given notice of his performance deficiencies, Plaintiff failed to make progress in remedying them. He continued to disappoint his supervisors with his failure to comprehend the field and inability properly to handle business opportunities. Ex. C – Performance Improvement Plan. Weijer attended Felekey's client meetings to supervise Plaintiff and, in essence, to perform Plaintiff's job for him; Weijer noted that "[i]n most instances, I was more up to date on selling activities within [Felekey's] assigned territory" than Plaintiff was himself. See Ex. B - Weijer Letter; Ex. C – Performance Improvement Plan. Because of Felekey's ongoing failure to meet the expectations of his employer, AT&T had good cause to terminate his employment.

## C. Felekey Has Failed to Create a Genuine Issue of Material Fact as to His Claim That AT&T Breached the Covenant of Good Faith and Fair Dealing

The Connecticut Supreme Court has recognized that an implied duty of good faith and fair dealing is imposed on parties to a contract. Magnan v. Anaconda Indus., Inc., 193 Conn. 558, 566-

---

(BNA) 21, 23 (Aug. 8, 1991), defines good cause as "(i) [A] reasonable basis related to an individual employee for termination of the employee's employment in view of relevant factors and circumstances, which may include the employee's duties, responsibilities, conduct on the job or otherwise, job performance, and employment record, or (ii) the exercise of business judgement [sic] in good faith by the employer, including setting its economic or institutional goals and determining methods to achieve those goals, organizing or reorganizing operations, discontinuing, consolidating, or divesting operations or positions or parts of operations or positions, determining the size of its work force and the nature of the positions filled by its work force, and determining and changing standards of performance for positions."

67, 479 A.2d 781 (1984). This duty is "a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended." Eis v. Meyer, 213 Conn. 29, 36-37, 566 A.2d 422 (1989) (internal citations omitted)). Under Connecticut law, to state a claim for breach of the covenant of good faith and fair dealing in the employment context, a plaintiff "must allege either that an enforceable employment contract exist, or that the employer's actions in discharging the employee violated a recognized public policy." Cowen v. Fed. Express Corp., 25 F. Supp. 2d 33, 37 (D. Conn. 1998); see also Doherty v. Sullivan, 29 Conn. App. 736, 743, 618 A.2d 56 (1992).[7]

"Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." Anatra v. Waldo, No. CV9603906685, 1998 Conn. Super. LEXIS 535, at *4 (Conn. Super. Ct. Feb, 27, 1998) (citing Habetz v. Condon, 224 Conn. 231, 238 (1992)). See also Magnan, 193 Conn. at 566. However, to prove bad faith, a plaintiff has a heavy burden because "[b]ad faith means more than mere negligence; it involves a dishonest purpose." Anatra, 1998 Conn. Super. LEXIS 535, at *4 (citing Habetz, 224 Conn. at 237). The burden is particularly onerous for an at-will employee because, as noted by the Connecticut Supreme Court, "[w]here employment is clearly terminable at will, a party cannot ordinarily be deemed to lack good faith in exercising this contractual right." Magnan, 193 Conn. at 572. "Bad faith in general implies both actual and constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's

[7] Here, Plaintiff alleges, in conclusory fashion, that AT&T violated its implied covenant of good faith and fair dealing based on the existence of a contract. He has not pleaded or adduced evidence of any violation of a recognized public policy.

rights or duties, but by some interested or sinister motive." Anatra, 1998 Conn. Super. LEXIS 535, at *4 (internal citations omitted).

Even if Plaintiff succeeds in proving the existence of an enforceable employment contract, which AT&T disputes, Plaintiff cannot meet the heavy burden of establishing that AT&T had a "dishonest purpose" or "sinister motive" in terminating his employment. Plaintiff has adduced no evidence to suggest that he was terminated for any reason other than his poor performance. As summarized above, Plaintiff substantially failed to meet the articulated expectations of AT&T; he did not satisfactorily fulfill the duties of his job in areas of salesmanship, leadership, communication, sales expertise, client development, and account management. See Ex. B – Weijer Letter; Ex. C – Performance Improvement Plan. Significantly, Plaintiff concedes that he understood as of late September 1999 ". . . that if [his] performance did not satisfactorily improve, that [his] employment could be terminated." Ex. A - Felekey Dep. at 201. His performance did not in fact improve, and AT&T exercised its right to terminate his at-will employment. Because Plaintiff has no evidence that AT&T acted in bad faith to breach an enforceable employment contract, this Court should grant Defendant's Motion for Summary Judgment on Count Two of the First Amended Complaint for breach of the covenant of good faith and fair dealing.

## V.
## CONCLUSION

Plaintiff's claims have no support in the undisputed facts or in the applicable law. Even giving Plaintiff the benefit of every reasonable inference from the facts alleged, this Complaint must be dismissed for all the reasons stated above. Accordingly, AT&T respectfully requests that this Court grant its motion for summary judgment as to the two remaining counts and enter judgment in favor of AT&T.

DEFENDANT,
AMERICAN TELEPHONE AND
TELEGRAPH COMPANY

By ___________________________________

Victoria Woodin Chavey (ct14242)
Eric L. Sussman (ct19723)
Day, Berry & Howard LLP
CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0100
Its Attorneys

**CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing was sent via overnight mail, postage prepaid, to: William T. Shea, Esq., Shea & Cook, P.C., 290 Pratt Street, P.O. Box 1856, Meriden, CT 06450.

___________________________________
Victoria Woodin Chavey