UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT J. FELEKEY, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | NO. 3:02CV691 (CFD) |
| | : | |
| AMERICAN TELEPHONE AND | : | |
| TELEGRAPH COMPANY, | : | |
| | : | |
| Defendant. | : | JULY 11, 2005 |

**DEFENDANT'S LOCAL RULE 56(a)1 STATEMENT
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule of Civil Procedure 56(a)1, the defendant, American Telephone and Telegraph Company ("AT&T"), respectfully submits this Statement in support of its Motion for Summary Judgment. Some of the numbered paragraphs below reflect factual allegations of the Plaintiff, which AT&T accepts as true for purposes of summary judgment but may dispute at trial if summary judgment is not granted.

1. No one at AT&T expressly represented to Plaintiff that his employment could be terminated only for "just and reasonable cause." Ex. A - Felekey Dep. at 303-04.[1]

2. AT&T represented to him that the company valued employees and valued Plaintiff as an employee. Ex A - Felekey Dep. at 286.

3. In Plaintiff's initial three-week orientation program in Cincinnati in 1979, various instructors told Plaintiff that the company spent a great deal of money to educate employees in the belief that their investment would pay off. Ex A - Felekey Dep. at 286.

---

[1] Exhibits A, B, and C are attached to AT&T's Memorandum in Support of Motion for Summary Judgment.

-2-

4. The instructors led him to believe that, after training at AT&T, "you are basically here for life." Ex. A - Felekey Dep. at 279.

5. Throughout Plaintiff's employment with AT&T, his supervisors expressed their support for him and his performance. For example, Felekey's first boss in 1979, Ben Lubecki, supported and assisted Plaintiff's promotion to work for another supervisor. Ex. A - Felekey Dep. at 286.

6. When Vice President of Sales, Bob Gebo, offered Plaintiff a job in Connecticut in the mid-1990s, it "led [him] to believe that the company wanted to employ [him] . . . ." Ex. A - Felekey Dep. at 282.

7. David Way, Plaintiff's manager in Canada (in the late 1980s), supported Plaintiff's participation in a leadership program, offered him encouragement, and wrote performance appraisals. Ex. A - Felekey Dep. at 291.

8. When Plaintiff returned from Canada, AT&T executive, Tom Luciano, employed and promoted Felekey. Ex. A - Felekey Dep. at 298. Luciano told AT&T's President that he "continued to expect great things from [Plaintiff] in the future." Ex. A - Felekey Dep. at 287-88.

9. Likewise, Jim Pagos, International Transit Vice President and subsequently AT&T Solutions Vice President, awarded Plaintiff for achievements, signed off on appraisals, sponsored him for a leadership program, and agreed to Plaintiff's promotion. Ex. A - Felekey Dep. at 287-88.

10. Ray Butkus, who reported to Jim Pagos, wrote appraisals and reference letters for Plaintiff. Ex. A - Felekey Dep. at 291-92.

11. Plaintiff received a "career plan" from "every boss [he] had" that projected two to five years into the future. Ex. A - Felekey Dep. at 280.

12. Rich Spena, another AT&T manager, created a document reflecting Plaintiff's annual rate of pay. Ex. A - Felekey Dep. at 294.

13. Plaintiff's managers held annual meetings to review AT&T's code of conduct, and his understanding of these reviews was that he could be terminated only for "just and reasonable cause." Ex. A - Felekey Dep. at 301-02.

14. The "Management Handbook" state that managers are to use the Performance Improvement Plan (PIP) to assist them in correcting behavior, but not as a tool to terminate employees. Ex. A - Felekey Dep. at 320.

15. Plaintiff believes that his employment termination violated the "spirit" of the handbook. Ex. A - Felekey Dep. at 300-302.

16. The PIP itself states, however, that:

The Performance Improvement Plan and its guidelines are not a contract of employment, either expressed or implied, and don't create any contractual rights of any kind between AT&T and its employees. At AT&T, there is no fixed duration to the employment relationship. Employees can terminate their employment whenever they wish and for whatever reason they might have, just as AT&T may terminate any employee, with or without cause, at any time for any reason. This is known as Employment-At-Will.

Ex. C – Performance Improvement Plan.

17. Following four years as a Client Business Manager for AT&T's customer, ITT Corporation, in two years of which he failed to meet his sales quota, Plaintiff received a change of assignment to field sales for a business unit called AT&T Solutions. Ex. A - Felekey Dep. at 107; Ex. B – Weijer Letter.

18. His job in AT&T Solutions, which he started in March 1999, was primarily to generate sales of outsourcing services. Ex. A - Felekey Dep. at 111-14.

19. On August 25, 1999, Plaintiff's manager, William Weijer, met with Plaintiff to provide him with a mid-year evaluation. Ex. A – Felekey Dep. at 165-66; Ex. B - Weijer Letter.

20.     Weijer requested that Plaintiff provide input for a Performance Improvement Plan that was to be imposed to address Plaintiff's performance issues.  Ex. A – Felekey Dep. at 196-97.

21.     Weijer told Plaintiff that he would meet with Plaintiff at 30-, 45- and 60-day intervals and that, if Plaintiff's performance had not satisfactorily improved at any time, Plaintiff could be subject to dismissal. Ex. B – Weijer Letter.

22.     Plaintiff understood that a failure to improve his performance could result in termination of his employment.  Ex. A – Felekey Dep. at 201.

23.     On or about September 21, 1999, Weijer provided Plaintiff with a Performance Improvement Plan that specified areas in which Plaintiff needed to show immediate improvement. Ex. C – Performance Improvement Plan.

24.     Weijer identified the facts that a significant customer expressly requested that Plaintiff be taken off its account and that other AT&T Solutions team members provided feedback to Weijer concerning Plaintiff's ineffectiveness in working with the team.  Ex. C – Performance Improvement Plan.

25.     Weijer noted that his own direct observations of Plaintiff's interactions with customers revealed that Plaintiff was unable to articulate AT&T Solutions' value or to identify the customers' needs.  Ex. C – Performance Improvement Plan.

26.     Weijer detailed further performance deficiencies in the areas of consultative skills, leadership, communication and planning.  Ex. C – Performance Improvement Plan.

27.     Plaintiff submitted an extended written response to the PIP, and, on September 27, 1999, Weijer provided a detailed response, reiterating and providing further explanation of the basis for Weijer's conclusion that Plaintiff's performance was unsatisfactory. Ex. C – Performance Improvement Plan.

28.     On September 30, 1999, Plaintiff and Weijer met for the 30-day review of Plaintiff's progress, and Weijer indicated that Plaintiff had made "minimal progress" toward improving and meeting his PIP objectives; Weijer also noted additional or continuing deficiencies in numerous areas of Plaintiff's performance.  Ex. C – Performance Improvement Plan.

29.     In light of his substantial failure to move forward to improve his job performance, AT&T terminated Plaintiff's employment on October 15, 1999.  Ex. A – Felekey Dep. at 272.

DEFENDANT,
AMERICAN TELEPHONE AND
TELEGRAPH COMPANY


By _____
     Victoria Woodin Chavey (ct14242)
     Eric L. Sussman (ct19723)
     Day, Berry & Howard LLP
     CityPlace I
     Hartford, Connecticut 06103-3499
     (860) 275-0100
     Its Attorneys


## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing was sent via overnight mail, postage prepaid, to:  William T. Shea, Esq., Shea & Cook, P.C., 290 Pratt Street, P.O. Box 1856, Meriden, CT 06450.


_____
Victoria Woodin Chavey