UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT J. FELEKEY | : | CIVIL ACTION NO. |
| | : | 3:02CV00691 |
| Plaintiff, | : | |
| VS. | : | |
| | : | |
| AMERICAN TELEPHONE AND TELEGRAPH COMPANY | : | |
| | : | |
| Defendant. | | JUNE 10, 2005 |

### DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION

The defendant, American Telephone & Telegraph Company ("AT&T"), hereby responds and objects to Plaintiff's Second Set of Interrogatories and Requests For Production, as follows:

### GENERAL OBJECTIONS

1. Defendant objects generally to plaintiff's interrogatories to the extent they seek information protected by the attorney-client privilege, the work product doctrine or other applicable privileges.

2. Defendant objects generally to plaintiff's interrogatories to the extent they call for confidential personnel information of other employees and/or the confidential business records of AT&T.

3. Defendant objects generally to plaintiff's interrogatories on the ground that defendant has previously responded to 44 interrogatories served by plaintiff, and that plaintiff has served far more than the 25 interrogatories allowed under Fed. R. Civ. P. 33.

Without waiving any of the foregoing General Objections, and as supplemented below, defendant responds as follows:

## INTERROGATORIES

1. Who prepared the AT&T form for Termination of Employment relative to Robert J. Felekey as required by the AT&T Personnel Guide in force on October 15, 1999?

**ANSWER:** Upon information and belief, Human Resources prepared the form.

2. Did the management official who prepared The Termination of Employment form note the front of the file folder of Mr. Felekey with a recommendation to rehire as required by the AT&T Personnel Guide in force on October 15, 1999?

**ANSWER:** Upon information and belief, no. Defendant submits that the AT&T Personnel Guide does not require that an AT&T management official recommend that a terminated employee be rehired.

3. If Interrogatory #2 is answered in the affirmative, what did the note say?

**ANSWER:** Not applicable.

4.  If Interrogatory # 2 is answered in the negative, why was the note not placed on the file as required by the Personnel guide?

**ANSWER:** The AT&T Personnel Guide does not require that an AT&T management official recommend that a terminated employee be rehired. Upon information and belief, however, AT&T did not categorically preclude Mr. Felekey's rehire. Terminated employees are generally eligible for rehire so long as the note on the employee's folder does not expressly preclude rehire.

5.  Was the termination file sent to the AT&T Records Protection Center?

**ANSWER:** The defendant objects to this interrogatory on the ground that it is vague and ambiguous in that it fails to define the phrase "termination file." Subject to and without waiving the foregoing, yes.

6.  Did AT&T or in particular Willem Weijer receive any post employment inquiries concerning Mr. Felekey?

**ANSWER:** The defendant objects to this interrogatory on the ground that it is not reasonably calculated to lead to the discovery of admissible evidence. Whether AT&T or Willem Weijer received any "post employment inquiries" concerning plaintiff has no bearing on any of the claims asserted in plaintiff's Complaint. Subject to and without waiving the foregoing, upon information and belief, no.

7. Prior to the initiation of Mr. Felekey's termination, what "appropriate approvals" as required in the AT&T Personnel Guide or policies were sought and from whom?

**ANSWER:** Mr. Felekey's termination was approved by William Bangert, John Wood and Human Resources.

8. How many sales personnel in AT&T Solutions were terminated in the years 1999 and 2000?

**ANSWER:** The defendant objects to this interrogatory on the ground that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendant terminated plaintiff for poor performance. Whether defendant terminated other employees has no bearing on the issues in this case.

9. What budget considerations were considered in the termination of any AT&T Solutions sales personnel?

**ANSWER:** The defendant objects to this interrogatory on the ground that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendant terminated plaintiff for poor performance. Whether defendant terminated other employees, or whether budget considerations impacted decisions to terminate other employees, has no bearing on the issues in this case.

10. Who made the budget decisions concerning the terminations of AT&T sales personnel at Solutions in the years 1999 and 2000?

ANSWER: The defendant objects to this interrogatory on the ground that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendant terminated plaintiff for poor performance. Whether defendant terminated other employees, or whether budget considerations impacted decisions to terminate other employees, has no bearing on the issues in this case.

11. What were the contents of the Performance Improvement Program (PIP) to which Robert J. Felekey was assigned in 1999?

ANSWER: See plaintiff's PIP, produced herewith.

12. What was the planned duration of the PIP program to which Mr. Felekey was assigned?

ANSWER: See plaintiff's PIP, produced herewith.

13.    When did the PIP program for Robert J. Felekey begin?

**ANSWER:**    Plaintiff was placed on a PIP on August 25, 1999.

14.    When were the written notices required under the Performance Improvement Plan (PIP) given to Robert J. Felekey?

**ANSWER:**    The defendant objects to this interrogatory on the ground that it is vague and ambiguous in that it fails to identify the particular "written notices" to which it refers.

15.    What were the planned dates for reviews of Mr. Felekey's performance under the PIP program to which he was assigned?

**ANSWER:**    Following plaintiff's receipt of his written PIP, he attended a meeting concerning his performance on September 30, 1999. Upon information and belief, there were no other "planned dates" for reviews of plaintiff's performance under his PIP.

16.    What were the dates of the actual reviews of Mr. Felekey's performance by Mr. Felekey's supervisor, Mr. William Weijer?

**ANSWER:**    The defendant objects to this interrogatory on the ground that it is vague and ambiguous in that it fails to define the term "reviews." Subject to and

without waiving the foregoing, Willem Weijer communicated consistently with plaintiff concerning his performance, including but not limited to meetings with plaintiff on August 25, 1999 and September 30, 1999.

17. Did AT&T Solutions reduce it [sic] employment force in 1999 and/or 2000?

**ANSWER:** The defendant objects to this interrogatory on the ground that it is vague and ambiguous in that it is unclear whether plaintiff is asking whether AT&T Solutions fired or laid off *anyone* in 1999 or 2000, or whether plaintiff is asking whether AT&T Solutions underwent a reduction in force in 1999 or 2000. The defendant further objects to this interrogatory on the ground that it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff was fired for poor performance. Accordingly, any reduction in the workforce of AT&T Solutions has no bearing on the issues in this case.

18. Was Robert J. Felekey ever noticed he was eligible for an early retirement program known as VRIP?

**ANSWER:** The defendant objects to this interrogatory on the ground that it is vague, ambiguous and unintelligible. Subject to and without waiving the foregoing, insofar as defendant understands this interrogatory, AT&T did not inform plaintiff that he was eligible for VRIP.

19. Was Mr. Felekey advised by his senior management that he was too valuable to be considered eligible for an early retirement VRIP program?

**ANSWER:**   The defendant objects to this interrogatory on the ground that it is unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The interrogatory fails to identify the particular member(s) of "senior management" to which it refers. Accordingly, defendant is in the impossible position of attempting to determine whether any member of "senior management" at AT&T ever made such a representation to plaintiff. Subject to and without waiving the foregoing, upon information and belief, no.

## PRODUCTION

1. AT&T Code of Conduct in force in 1999.

**ANSWER:**   See documents produced herewith.

2. Personnel file of Robert J. Felekey.

**ANSWER:**   See documents produced herewith.

3. Robert J. Felekey Termination of Employment Form.

**ANSWER:**   Despite a diligent search, the defendant has been unable to locate this document to date. Defendant will supplement this response if it is able to find the document.

4. Exit checklist concerning termination of Robert J. Felekey.

**ANSWER:**   Despite a diligent search, the defendant has been unable to locate this document to date. Defendant will supplement this response if it is able to find the document.

THE DEFENDANT,
AMERICAN TELEPHONE AND
TELEGRAPH COMPANY

By: _____
Victoria Woodin Chavey (ct14242)
Eric L. Sussman (ct19723)
Day, Berry & Howard, LLP
CityPlace I
Hartford, CT 06103-3499
His Attorney

### CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was sent this date, via facsimile and certified mail, postage prepaid, to:

William T. Shea
Shea & Cook, P.C.
290 Pratt Street
P.O. Box 1856
Meriden, Connecticut 06450

_____
Eric L. Sussman

-9-