LEXSEE 2000 U.S. DIST. LEXIS 1871

**DAVID DONK, TODD PLETCHER, MARK HENNIG, AND MICHAEL LAROCCA, Plaintiffs, -against- DEBORAH MILLER, individually and in her capacity as the Director of the Division of Pari-Mutuel Wagering of the Department of Business and Professional Regulation of the State of Florida, MICHAEL TAGGART, individually and in his capacity as the Hearing Officer of the Division of Pari-Mutuel Wagering of the Department of Business and Professional Regulation of the State of Florida, and MICHAEL HOBLOCK, individually and in his capacity as the Chairman of the New York State Racing and Wagering Board, Defendants.**

99 Civ. 3775 (KMW)(FM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2000 U.S. Dist. LEXIS 1871*

February 22, 2000, Decided
February 24, 2000, Filed

**DISPOSITION:** [*1] New York and Florida Defendants' requests for additional non-expert discovery denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For GRETCHEN VASURA, plaintiff: Mark G. Strauss, Early & Strauss, L.L.C., New York, NY.

For ATLAS TURNER INC., defendant: Suzanne M. Halbardier, Barry, McTiernan & Moore, New York, NY.

**JUDGES:** FRANK MAAS, United States Magistrate Judge.

**OPINIONBY:** FRANK MAAS

**OPINION:**

**OPINION AND ORDER**

**FRANK MAAS,** United States Magistrate Judge.

I. Introduction

In late May 1999, four professional thoroughbred horse trainers ("Plaintiffs"), licensed in New York and Florida, filed this action, in which they contend, in part, that two Florida officials, defendants Deborah Miller and Michael Taggart ("Florida Defendants"), improperly suspended their trainer's licenses without affording them an opportunity for a meaningful post-suspension hearing, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article II, Section 3, of the Florida constitution. The third defendant, Michael Hoblock (the "New York Defendant"), is named because the New York State Racing and Wagering Board suspended the Plaintiffs' New York licenses following the Florida Defendants' decision [*2] as a matter of reciprocity.

The New York and Florida Defendants have made several recent discovery requests which are addressed in this Opinion and Order. As set forth in greater detail below, with one exception, all of these discovery requests are denied. The sole exception is that counsel for the New York and Florida Defendants each may serve the Plaintiffs with no more than ten interrogatories limited to questions about, or directly arising from, the information set forth in the Plaintiffs' medical and training logs.

II. Procedural Background

Within days after this suit was filed, the Honorable Kimba M. Wood, United States District Judge, held a two-day hearing on an application by the Plaintiffs for a preliminary injunction. The Florida Defendants appeared at that hearing through their counsel and participated extensively. As Judge Wood later observed, at the hearing the "Florida Defendants presented several grounds for opposing the injunction -- including an extended review of the abstention doctrine -- but raised no objection to personal jurisdiction." (12/22/99 Order ["December Order"] at 21). Thereafter, the Florida defendants also

Case 3:02-cv-00691-CFD    Document 60-3    Filed 09/12/2005    Page 2 of 5

Page 2
2000 U.S. Dist. LEXIS 1871, *

participated in two telephone [*3] discovery conferences on August 3 and 4, 1999 before Magistrate Judge Henry B. Pitman. (See 8/499 and 8/6/99 Orders of Mag. J. Pitman). n1

> n1 Although this case was referred to me for general pretrial supervision in July 1999, Judge Pitman resolved these discovery issues because I was attending an out-of-town conference.

On or about August 11, 1999, the Florida Defendants moved to dismiss this action on several grounds, including, pursuant to *Fed. R. Civ. P. 12(b)(2)*, lack of personal jurisdiction. In her December Order, Judge Wood denied the motion to dismiss, concluding that it was "reasonably feasible" for the Florida Defendants to present their personal jurisdiction objection prior to the preliminary injunction hearing. Judge Wood held that the Florida Defendants consequently had waived the objection by participating in the hearing and seeking rulings from Judge Pitman before it eventually was raised. (December Order at 21-22).

On July 30, 1999, this case was referred to me for general pretrial supervision. [*4] I since have held several discovery conferences. In addition, I entered a Rule 16(a) order which, as revised, provided for all non-expert depositions to be completed by November 30, 1999, all other non-expert discovery to be completed by December 31, 1999, and all expert discovery to be commenced in time to be completed by March 15, 2000.

On January 11, 2000, following a failed attempt to settle this case, I met with counsel to discuss the steps necessary to ensure that it is ready for trial. By then, the parties were to have completed all non-expert discovery. During the ensuing colloquy and a later telephone conference, Sheridan Weisenborn, Esq., co-counsel for the Florida Defendants, indicated that, despite the previously-imposed discovery deadlines, she now wished to take a series of *de bene esse* depositions of witnesses in Florida. n2 Ms. Weissenborn further stated that she might seek certain additional discovery based upon the medical and training logs that the Plaintiffs had turned over to the New York and Florida Defendants after Judge Wood, by order dated January 20, 2000, denied the Plaintiffs' objections to this Court's earlier order requiring that disclosure.

> n2 A *de bene esse* deposition is one which is taken specifically for use in lieu of live testimony at trial. See *Tatman v. Collins, 938 F.2d 509, 510 (4th Cir. 1991)*.

[*5]
By order dated January 25, 1999, I directed Ms. Weissenborn to submit a letter to the Court detailing why "further depositions should be permitted and, in the event they are, who should bear the cost," with the other parties having an opportunity to respond. The order further directed the New York and Florida Defendants to notify the Court if they sought further discovery related to the logs, with the Plaintiffs again having an opportunity to respond.

In subsequent letters to the Court, Ms. Weissenborn asked that "the discovery process be reopened" so that she could "depose approximately 14 more fact witnesses," secure the tax returns of Plaintiff Michael Larocca, and "depose the laboratory representative at Industrial labs in Denver Colorado." (1/31/00 letter from Ms. Weissenborn to the Court at 2). Ms. Weissenborn also sought to take the *de bene esse* depositions of "approximately fifteen persons" whose testimony she wished to use at trial, "four or five" of whom had previously been deposed. (Id. at 3). Finally, Ms. Weissenborn requested certain additional discovery allegedly related to the Plaintiffs' logs. The New York Defendant indicated through counsel that he, too, [*6] might wish to serve certain interrogatories based upon the recently-disclosed logs. (See 2/3/00 letter from Katherine E. Timon, Esq. to the Court).

These discovery requests are considered below.

III. Reopening Discovery

The Florida Defendants apparently contend that there are three reasons to reopen nonexpert discovery: (a) their belief that they were precluded from proceeding with discovery while their motion to dismiss was pending; (b) a conversation between Ms. Weissenborn's "paralegal" and "the Clerk" to the effect that there would "probably not be a problem" extending the discovery deadline "provided that the [Florida] Defendants had been diligent;" and (c) the Plaintiffs' alleged service of 395 requests for admissions after the expiration of the discovery deadline they now seek to enforce. (See 1/31/00 letter from Ms. Weissenborn to the Court at 2).

Turning first to the argument that the Florida Defendants could not participate in discovery for an extended period, Judge Wood found in her December Order that they had waived their personal jurisdiction objection "through their actions taken in response to Plaintiffs' preliminary injunction application and [*7] their seeking of affirmative relief from this Court." (December Order at 19). If so, the Florida Defendants plainly cannot rely on a motion to dismiss that they first filed several months later as a justification for their decision not to participate in pretrial discovery.

The Florida Defendants, not surprisingly, maintain that there was no waiver here. Indeed, following the denial of their motion to dismiss, the Florida Defendants moved to amend the December Order to include a certification pursuant to *28 U.S.C. § 1292(b)* so that they can take an interlocutory appeal with respect to this issue. However, even if the Court were to assume that the Florida Defendants' motion to dismiss should have been granted, there would be no basis for their unilateral refusal to participate in discovery while their motion was pending. Quite to the contrary, it is settled law that a defendant who has properly objected to a lack of personal jurisdiction in an answer or motion to dismiss may thereafter fully participate in the action without waiving the objection. *Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 709 F. Supp. 1279, 1282 (S.D.N.Y. 1989)* [*8] (no waiver of personal jurisdiction where defendants "promptly challenged the court's jurisdiction and their participation in case followed their assertion of that defense"); see also *Santos v. State Farm Fire and Cas. Co., 902 F.2d 1092, 1095-96 (S.D.N.Y. 1990)*(waiver found where party failed to assert the defense adequately through either a motion or a responsive pleading); *Marcial Ucin, S.A. v. SS Galicia, 723 F.2d 994, 997 (1st Cir. 1983)*(waiver found where defendant participated in thirteen depositions prior to moving for dismissal for lack of personal jurisdiction). Accordingly, even on the Florida Defendants' own view of the law, there was no justification for them to abstain from participation in the pretrial aspects of this lawsuit once their motion to dismiss for lack of personal jurisdiction was filed.

It also bears mention that the Florida Defendants did, in fact, participate selectively in discovery after filing their motion. For example, in September, Ms. Weissenborn attended several depositions and questioned some of the witnesses. (See Plaintiffs' 2/8/00 Law Memorandum at Exs. E-G, J, K). That same month, the Florida Defendants [*9] also moved before me to quash several subpoenas served upon Florida officials. (See id. at Ex. H (9/24/99 letter to the Court from Joel Berger, Esq., local counsel to the Florida Defendants). In fact, Ms. Weissenborn participated personally in a telephone conference with the Court regarding that motion.

I know of no authority, nor have the Florida Defendants cited any, which permits a defendant to participate in certain aspects of the discovery process, abstain in whole or in part from other aspects, and then seek a new round of discovery after the denial of the defendant's motion to dismiss for lack of personal jurisdiction. In the absence of any such authority, the Florida Defendants plainly have not shown good cause to reopen discovery.

Additionally, because the Florida Defendants should have participated fully in pretrial discovery, either because their initial activities in this case waived their personal jurisdiction argument or because their motion to dismiss preserved that objection and enabled them to go forward without prejudice, their decision not to do so throughout a four-month period when they faced no real impediment can hardly be characterized as "diligence. [*10] " Accordingly, even if one could argue that the alleged conversation between a paralegal at Ms. Weissenborn's firm and a clerk somehow bound the Court, it is clear that the Florida Defendants would not be entitled to reopen non-expert discovery since they did not live up to their end of the purported bargain by proceeding diligently.

Finally, there does not appear to be any basis for Ms. Weissenborn's suggestion that the period for non-expert discovery should be reopened because the Plaintiffs themselves have served 395 untimely requests to admit. What the record does show is that the Plaintiffs have filed a 395-paragraph "Statement Under Local Civil Rule 56.1(a) in Support of Their Motion for Summary Judgment." Rather than constituting a discovery device, this Statement is clearly a prelude to the type of dispositive motion typically filed at the close of discovery. As the Plaintiffs advised the Court at the January 11, 2000, conference, Judge Wood's uniform order regarding motions for summary judgement requires a potential movant to "serve and file a Local Civil Rule 56.1 Statement" containing "only one factual assertion in each numbered paragraph. Opposing counsel then must serve [*11] and file "a response to the . . . Statement within ten (10) business days . . . at which time [] opposing counsel may also file a Counterstatement." Judge Wood's Order further provides that, "after review of the parties' 56.1 Statements, the Court will hold a pre-motion conference if it believes that such a conference will have utility."

It is, to say the least, difficult to understand how the Florida Defendants can transmute a procedure which is intended to simplify motion practice into an impermissible attempt on the part of the Plaintiffs to circumvent the discovery deadlines in this case. Contrary to the Florida Defendants' contentions, by seeking to make a motion for summary judgment at this juncture, the Plaintiffs obviously are taking the position that there has been sufficient discovery, not that discovery should be reopened. See, e.g., *Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989)*("the nonmoving party must have had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment")(internal quotation omitted); *Llanes v. EMSA Limited Partnership, 996 F. Supp. 314, 316 (S.D.N.Y. 1998)* [*12] (summary judgment motion denied where "only limited discovery had occurred";.

In sum, the Florida Defendants should have participated in non-expert discovery during the period set aside

for that purpose. Although there failure to do so may have been based upon a misunderstanding of the applicable law, that simply does not constitute good cause to reopen discovery.

IV. *De Bene Esse* Depositions

The federal courts have not drawn a distinction between discovery depositions and trial depositions for many years. See, e.g., *United States v. IBM, 90 F.R.D. 377, 381 (S.D.N.Y. 1981)*("Rule 32 does not 'evince a distinction as to the admissibility at trial between a deposition taken solely for purposes of discovery and one taken for use at trial . . . .'")(quoting *Rosenthal v. Peoples Cab Co., 26 F.R.D. 116, 117 (W.D. Pa. 1960))*. Accordingly, any deposition taken by a party may be used at trial if the deponent subsequently becomes unavailable through no fault of the party proffering the testimony. See *Fed. R. Civ. P. 32(a)(3)*.

Here, the Florida Defendants seek to take the *de bene esse* depositions of some fifteen witnesses, approximately [*13] one third of whom have previously been deposed. (See 1/31/00 letter from Ms. Weissenborn to the Court at 3). These witnesses are in addition to the approximately fourteen "fact" witnesses that Ms. Weissenborn also seeks to depose. The Florida Defendants' justification for this new round of depositions is as follows:

> It would be an undue burden upon the tax payers of the state of Florida to transport and house all of the Florida witnesses for trial in the State of New York when all the actions by them occurred in Florida. Therefore, the more economical and prudent practice would be to take each witnesses' [sic] trial testimony in Florida. It is easier to transport one or two lawyers to Florida for a day than to transport and house numerous witnesses in New York for several weeks. With the cooperation of all counsel involved, the de benne [sic] depositions could be intertwined with this defendant's [sic] regular discovery depositions, and greatly reduce or eliminate any additional expense to the other parties. Hence, the more appropriate practice would be to grant the undersigned leave to take these de-benne [sic] depositions in Florida, given that [*14] the Florida defendants have not had an opportunity to participate in the discovery process.

(Id. at 3-4).

Suffice it to say, the Florida Defendants, along with every other party, have had ample opportunity to participate in the discovery process. Accordingly, the Florida Defendants could have taken any depositions that they needed for trial during the period allotted for that purpose. That they chose not to notice such depositions, or once noticed by the Plaintiffs chose not to cross-examine, does not provide a justification for additional depositions -- *de bene esse* or otherwise -- at this late date. As the Fifth Circuit noted in *Wright Root Beer v. Dr. Pepper Co., 414 F.2d 887, 889-90 (5th Cir. 1969)*, whether a lawyer choses to cross-examine at a deposition is a matter "left to counsel's judgment, and to the strategy that is inherent in a trial lawyer's decision." The fact that the Florida Defendants unilaterally decided to participate only selectively in pretrial discovery is not a justification for allowing them to take additional depositions now.

Nor is the Court persuaded that the *de bene esse* depositions should be permitted to save the [*15] Florida taxpayers unwarranted expense. First, the Florida Defendants have presented nothing other than counsel's conclusory assertion that each of these witnesses will "need to testify at trial concerning the issues that will be before the Court." (See 1/31/00 letter from Ms. Weissenborn to the Court at 3). n3 Second, even if one were to assume that fifteen such trial witnesses were required, depositions *de bene esse* "are properly used when it is impossible for the witness to appear as required due to circumstances beyond that witness's control. The gravity of a final illness and the near certainty of a sudden death are, for example grounds for such a deposition." *Bregman v. District of Columbia, 1998 U.S. Dist. LEXIS 22793, No. Civ. A. 97-789, 1998 WL 665018 (D.D.C. Sep. 28, 1998)*. In this case, the Florida Defendants obviously have not made the required showing that they will be unable to present their case without such depositions. Indeed, most of the deponents whom they have identified by title appear to be state employees within their control.

---

n3 The Plaintiffs note further that their Interrogatory No. 5 sought information concerning all persons with knowledge of the relevant facts. According to the Plaintiffs, the Florida Defendants' responses to this Interrogatory never identified the seven government officials whom they now seek to depose *de bene esse*.

---

[*16]

In these circumstances, contrary to the Florida Defendants' contention, there is no basis for requiring the other parties to this suit to bear the additional expense and inconvenience of *de bene esse* depositions in Florida.

V. Discovery Related to the Florida Defendants' Medical and Training Logs

In early January 2000, following the denial of their objections, the Plaintiffs were directed by Judge Wood to turn over their medical and training logs. (1/13/00 Order at 10). Since this Order was entered shortly before the deadline to complete non-expert discovery, by order dated January 25, 2000, the Court directed the New York and Florida Defendants to indicate whether they sought any additional discovery as a result of their review of the logs, and, if so, the nature and extent of that discovery. The New York Defendant subsequently requested a two-week extension of time to permit additional interrogatories to be served and answered. (See 2/3/00 letter from Ms. Timon to the Court), but later evidently advised the Plaintiffs that there might not be a need for additional discovery. (See 2/8/00 letter from Mr. Karlan to the Court at 2 & Ex. B). The Florida Defendants [*17] indicated that they wished to confirm through interrogatories what the Plaintiffs meant by certain terms and symbols in the logs; following the receipt of that information, as part of a complicated analysis that they proposed to undertake, the Florida Defendants proposed to subpoena "industry publications such as the Daily Racing Form," to determine when the Plaintiffs' horses "breezed" or worked. (See 2/3/00 letter from Ms. Weisenborn to the Court).

In response to these requests, the Plaintiffs stated that they did not object to reasonable interrogatories, as long as that they were served prior to February 11, 2000. The Plaintiffs did, however, take issue with the Florida Defendants' proposed service of third-party subpoenas to racing industry publications. (See 2/4/00 letter from Mr. Karlan to Ms. Timon; 2/8/00 letter from Mr. Karlan to the Court). n4

---

n4 The Plaintiffs also argued that the New York Defendants' request was untimely because it was served on February 3, 2000, one day after the deadline set forth in the January 25, 2000, Order. Given the Plaintiffs' lengthy delay in providing the logs, the Court is unwilling to bar further discovery on this ground.

[*18]

The New York and Florida Defendants' requests for further discovery related to the logs is granted to the extent that their counsel each may serve Plaintiffs with no more than ten interrogatories limited to questions about, or directly arising from, the information set forth in the logs. These interrogatories shall be served by no later than February 29, 2000, with the responses to be served no later than March 7, 2000. (Obviously, if either the New York or Florida Defendants have previously served supplemental interrogatories related to the log and received a response, no further such interrogatories may be served.)

The Florida Defendants' related application to reopen discovery so that they may subpoena racing industry publications for copies of their prior issues is denied. The Plaintiffs have furnished the Court with material downloaded from the Internet which shows that any person may subscribe to the Daily Racing Form for as little as one month (at a cost of $ 99.00) and then access the historical data that the Florida Defendants apparently seek. Moreover, it is apparent that back issues of the Daily Racing Form are available at many public libraries, including the [*19] Library of Congress and the New York Public Library. Since such information is readily available to the public, the Florida Defendants have not shown good cause to reopen discovery simply to enable them to compel its production through subpoenas duces tecum. Cf. *Keogh v. Pearson*, 35 F.R.D. 20, 23 (D.D.C. 1964) (denying Rule 34 request for production of newspaper columns by Drew Pearson which "are readily available at the Library of Congress").

VI. Conclusion

The New York and Florida Defendants' requests for additional non-expert discovery are denied, except insofar as they seek further interrogatory responses related to the Plaintiffs' medical and training logs. Any such interrogatories are to be served by no later than February 29, 2000, with the responses due no later than March 7, 2000.

SO ORDERED.

Dated: New York, New York

February 22, 2000

FRANK MAAS

United States Magistrate Judge