# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT J. FELEKEY, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:02CV00691(CFD) |
| | : | |
| V. | : | |
| | : | |
| AMERICAN TELEPHONE AND | : | |
| TELEGRAPH COMPANY | : | |
| Defendant. | : | DECEMBER 16, 2005 |

_____

### PLAINTIFF'S MEMORANDUM IN OBJECTION TO
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FACTS:

Defendant asserts in its Rule 56(a)(1) Statement that plaintiff stated in his deposition dated February 21, 2005 that "no one at AT&T expressly represented to plaintiff that his employment could be terminated only for "just and reasonable cause". Defendant referred to plaintiff's deposition of April 21, 2005  (Ex. A, pgs 301-303).  The plaintiff denies defendant's claim where Mr. Felekey in answering defendant counsel's question as to this matter stated "essentially every one of my managers during the code of conduct review" represented the stability of this employment.  The essence of a claim of summary judgment is that no material issue of fact exists.  In this first instance a trier of fact will have to determine whether the representations of plaintiff's trainers and managers were made to plaintiff by defendant's responsible employees and constituted

offers of stable employment which would only be terminated for just and reasonable cause.  Mr. Felekey's terminating manager, Willem Weijer actually based the Felekey termination on "cause".  (Ex. 2, pg. 238)

Mr. Benjamin Lubecki, Mr. Felekey's first manager, claimed that when a person began working for AT&T he/she had a job for life,  "unless you embezzled from the company, committed a felony or destroyed the company property the company would be loyal to you and your employment and pension were secure."   See (Ex.3, Affidavit of Benjamin Lubecki)

Although defendant consistently claims defendant continuously stated all managerial employment was "at will" both the company's application for employment (Ex. 4) and letter confirming the job offer to plaintiff avoid any mention of such "at will" language.  (Ex. 5)

Defendant claims in its motion "undisputed evidence" demonstrates defendant had good cause to terminate plaintiff's employment.  However, plaintiff's Solution's manager (Exhibit 2 Weijer deposition) states at Page 123, Mr. Felekey on June 30, 1999 was "working steadily toward meeting his performance objectives with his new assignment in AT&T Solutions."

Mr. Felekey had recently in 1997 completed the signing of a 136 million dollar contract with International Telephone & Telegraph (IT&T) followed by his closing late

December, 1998 a 176 million dollar contract with Starwood Hotels and Resorts World Wide Inc., both of which contracts made Mr. Felekey the highest paid sales person in the Connecticut AT&T territory.  See (Felekey Affidavit, Ex. 1, paragraph 14, pg. 6)

Defendant claims as a basis of Mr. Felekey's poor performance that he failed to meet his sales quota for two years during the time when he was assigned to AT&T Global Services.  In his deposition (Exhibit A, Page 136) Mr. Felekey explains that failure of his unit to meet the Global Sales Quota was due to an internal AT&T "accounting anomaly" and not due to his lack of sales.  Mr. Felekey certainly was the highest paid person in the Connecticut office and plaintiff claims his position was terminated in a "reorganization" although it was actually a reorganization of one person – Mr. Felekey.  Plaintiff claims he was "reorganized" because his sales success and commissions income were so great they exceeded all sales managers and most of his superiors  (Ex. 1, Felekey Affidavit) and because he filed an appeal for the failure of the company to pay him the eighty-two thousand dollar commission he was entitled to and instead paid him six thousand dollars on his 176 million dollar Starwood contract. (Ex. 6)

Defendant consistently claims Mr. Felekey was terminated for inadequate performance.  The facts do no support the conclusion and create an issue of fact for the trier to determine along with the issue of whether there existed an implied contract which the court has reserved to the trier in its decision on the defendant's motion to dismiss.

Defendant relies on the decisions of Mr. Felekey's manager at AT&T Solutions, Willem Weijer. A review of Mr. Weijer's deposition testimony convinces plaintiff he was set up for "performance termination" without any reasonable basis. In his deposition dated November 3, 2005 (Ex. 2, pg. 29, 30) Mr. Weijer testified he was the sales manager of AT&T Solutions for New England, New York, New Jersey and Pennsylvania. He stated when he became sales manager in Solutions there were three sales persons reporting to him and he interviewed and hired two more. Mr. Felekey was also hired but Mr. Weijer did not interview or hire him. Mr. Felekey was hired by another sales manager from another territory and assigned to Mr. Weijer. From his deposition it appears that Mr. Weijer was not supportive of this method of hiring Mr. Felekey at Solutions where he would be answerable to Mr. Weijer. (Weijer deposition pg. 101-107)

According to Mr. Weijer, Mr. Felekey's assignment to AT&T Solutions was engineered by an AT&T Vice President, Steve Gonzales, (Ex. 2 pg. 41) and Mr. Weijer met with Mr. Felekey on or about march 1, 1999 and instructed him to "focus his time and energy in the first initial months in his job in terms of coming up to speed on our (Solutions) services, our products, and what we do since it was new to him". (Ex. 2 pg. 44)

Mr. Weijer stated (Ex. 2 pg. 105) that for his first four months Mr. Felekey "Took a lot of training" and Mr. Weijer encouraged Mr. Felekey to take advantage of the available training.  (Ex. 2 pg. 106)

Mr. Weijer testified that on or about June 30, 1999 four months after Mr. Felekey had begun his tenure with Solutions he completed his mid year appraisal of Mr. Felekey which was probably formally written by Mr. Weijer in July, 1999.  (Ex. 2, pg. 111)

In Mr. Felekey's Mid Year Performance Feedback Review which was dated August 25, 1999, (Ex. 7) Mr. Weijer stated "Bob is working steadily toward meeting his performance objectives"  "He has added to his knowledge base by completing the required training"  "He displays good working persistence and continuously strives to improve customer satisfaction"  "Bob shows professional concern for quality work and effectively matches resources with appropriate objectives"  "He endeavors to improve overall team effectiveness by aligning the proper resources to achieve our goals"  His training "along with his business experience are expanding his skills, capabilities and potential"  "He has demonstrated willingness to acquire new knowledge and skill in order to reach target".

Less than 30 days after completing the positive Mid Year Performance Review, Mr. Weijer placed Mr. Felekey in a Performance Improvement Plan (PIP) (Ex. 8), which was dated September 21, 1999 and he delivered to Mr. Felekey on September 22, 1999

(Ex. 8) informing him the plan would be reviewed by him with Mr. Felekey on 30, 45 and 60 day intervals.  Instead of scheduling the PIP intervals as stated, Mr. Weijer scheduled the 30 day review on September 30, 1999 eight days after delivering the PIP plan document to Mr. Felekey.  The 60 day review was scheduled for October 15, 1999 which turned out to be the day Mr. Felekey was terminated for "performance" or "cause" as Mr. Weijer testified in his deposition, (Ex.2 pg. 238).

The Performance Improvement Plan in effect in 1999 was not designed by AT&T as a means to terminate an employee but as a means to retrain employees and improve their performance.  (See Ex. 9)

LAW AND ARGUMENT RELATIVE TO SUMMARY JUDGMENT

Plaintiff generally agrees with defendant's citations of law relative to Summary Judgment Celestix Corp v. Catnell, 477 U.S. 317, 324, 325 (1986); Viola v. Philips Med. Sys., 42 F3d  712, 716 (2nd Cir 1994)

Plaintiff believes he can successfully object to defendant's motion for summary judgment pursuant to Fed. R. Civ. P 56(e) because his testimony and that of Benjamin Lubecki will be admissible material facts concerning the contractual relations under which he was hired and continuously implied by the many AT&T senior management officials who supervised Mr. Felekey over the twenty years of his employment.  In

addition, Mr. Felekey submits documents which support the claims he makes in his affidavit.

Mr. Felekey is not making any frivolous claims as alluded to by defendant in its argument. Mr. Felekey clearly sets forth 20 years of factual examples of actual positive actions of the defendant and its managers in relation to Mr. Felekey's permanent employment. (Ex. 1, Felekey Affidavit)

In 1995 Mr. Robert Gebo, AT&T Global Services Vice President and Mr. Felekey's supervisor, Gloria Wimmer, told Mr. Felekey that accepting a transfer to Connecticut from AT&T headquarters in Florham Park, New Jersey would assure him of continued employment at the AT&T Connecticut Branch. Mr. Felekey assured them and they understood that without the company's agreement he would not accept the transfer because he and his wife wanted residential and job stability while their children were in middle and high school. (Ex. 1, Felekey Affidavit)

In 1999 the AT&T Solutions management was trying to protect its annual bonus program by reducing its expenses. (See Ex. 10, Damian Statement). Mr. Felekey who was receiving a transition payment over and above his salary was an obvious target to reduce Solutions expenses. His termination on 10/15/99 was a dual benefit to the company. The first was a clear reduction in salary and transition payment which had been promised to him for at least a year from March 1, 1999, and second, was to exclude

him from the force management program used by AT&T when a management employment reduction was made.  Mr. Richard Spina who hired him at Solutions promised his salary would be reviewed and increased at the end of the transition payment program in February, 2000.

Defendant apparently believes that the company's agreement to provide Mr. Felekey with employment in Farmington so that his sons could complete their middle and high school education in West Hartford rather than moving to different locations as had been required of Mr. Felekey during his AT&T career was no more than a "scintilla of evidence" in support of plaintiff's position.  Plaintiff asserts this was material evidence as to the agreement between AT&T and him.

The court set forth in its ruling on defendant's Motion to Dismiss the Connecticut law on a claim alleging the existence of an implied agreement between the parties.  Plaintiff has the burden of proving by a fair preponderance of evidence that the defendant employer had agreed by words or action or conduct to undertake some form of actual contract commitment to him under which he could not be terminated without just cause.

Plaintiff offers (Ex 3), an affidavit of Benjamin Lubecki who was Mr. Felekey's first manager who states that in the initial training Mr. Felekey received was the emphasis from the AT&T training staff that "when you began working for the company you had a job for life unless you embezzled from the company, committed a felony or destroyed

company property". He said "the company would by loyal to you and your employment and pension were secure".

Mr. Felekey in his affidavit (Ex. 1) recites the employment security he was afforded for twenty years until 1999 when he was making more money than his manager or higher placed managers.

When Mr. Felekey's position was eliminated in a "reorganization" of one position --- his position following an ignored and unanswered appeal on his sales commission on the Starwood contract, he sought other employment within AT&T because he would be eligible for a Voluntary Retirement Incentive Program (VRIP) or Force Management benefit (FMP) program which was offered by AT&T to long term management employees in company force reduction programs and for which he had previously been informed of his eligibility. (Ex. 11, VRIP & FMP)

Mr. Felekey made his superiors aware that he was willing to accept a sales position with AT&T Solutions if he could receive the transition benefit which the company paid to commission sales personnel who accepted salary jobs. He was promised a monthly transition payment of $1,768.75 for one year (Ex. 12, Spina) and Mr. Richard Spina who negotiated with Mr. Felekey assured him this would also allow him to stay in Connecticut because it was important to Mr. Felekey and his wife as they had sons

who were in middle school and the Felekeys wanted to be assured the boys could finish middle and high school in West Hartford where they lived.

Certainly such assurance rises to an oral contract.  Mr. Felekey's termination on October 15, 1999 afforded him less than the year's transitional payment that had been promised and put him in the difficult position of not having a job to assure his remaining in West Hartford as he had been promised.

Plaintiff believes there are a substantial number of instances that will be offered at trial as material admissible evidence and which therefore give no basis for summary judgment.

THE PLAINTIFF,
ROBERT J. FELEKEY


By_____
      William T. Shea (**ct05211**)
      Shea & Cook, P.C.
      290 Pratt Street, P.O.Box 1856
      Meriden, CT 06450
      (203)634-1444
      His Attorney

## <u>CERTIFICATION</u>

This is to certify that a copy of the foregoing was sent this 16th day of December, 2005, via first class mail, postage prepaid, to:

      Eric L. Sussman, Esq.
      Victoria Woodin Chavey, Esq.
      Jeffrey A. Fritz, Esq.

Day, Berry & Howard, LLP
CityPlace I
Hartford, CT 06103-3499

Richard C. Tynan, Esq.
Halloran & Sage, LLP
225 Asylum Street
Hartford, CT 06103-4303

_____
William T. Shea