**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ROBERT J. FELEKEY, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | NO. 3:02CV691 (CFD) |
| | : | |
| AMERICAN TELEPHONE & | : | |
| TELEGRAPH COMPANY, | : | |
| | : | |
| Defendant. | : | JANUARY 4, 2006 |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant, American Telephone & Telegraph Company ("AT&T"), respectfully submits this Reply Brief in support of its Motion for Summary Judgment. Notwithstanding Plaintiff's conclusory claim to the contrary, his Objection to Defendant's Motion for Summary Judgment ("Plaintiff's Brief") fails to identify any genuine issues of material fact. Instead, Plaintiff's Brief relies heavily on alleged representations by AT&T personnel that, even if true, are insufficient as a matter of law to withstand summary judgment.

Plaintiff alleges that AT&T's actions in terminating him breached a contract between him and the company in that: "(a) said actions were in direct contradiction to the oral and written representations made by the defendant regarding stability of the plaintiff's employment; (b) said actions were in direct contradiction to the defendant's written employment policy; and (c) the Plaintiff's employment was wrongfully terminated without just and due cause." (Compl. ¶ 28.) Thus, this case is about whether AT&T breached an alleged contract with Plaintiff when it terminated his employment on October 15, 1999. Plaintiff's Brief attempts to confuse this issue with references to sales commissions, bonuses, severance pay and "reorganizations of one," (Pl.'s Br. at 3, 7-9), which have nothing to do with the claims currently before this Court.

Following this Court's ruling on defendant's Motion to Dismiss, Plaintiff's surviving claims are: (1) breach of contract; and (2) breach of the implied covenant of good faith and fair dealing. Plaintiff contends that summary judgment on these claims is inappropriate because there is a genuine issue of material fact as to "whether the representations of plaintiff's trainers and managers were made to plaintiff by defendant's responsible employees and constituted offers of stable employment which would only be terminated for just and reasonable cause." (Pl.'s Br. at 1-2.) As a matter of law, the alleged representations on which Plaintiff relies create nothing more than an at-will employment relationship. None of those representations, viewed independently or collectively, is sufficient to create a contract pursuant to which Plaintiff's employment was terminable only for "just and reasonable cause."

      A.    <u>AT&T Did Not Make Any Oral Representations Sufficient to Create a Contract.</u>

Plaintiff's Brief is riddled with unsupported conclusions. He claims, for example, that "essentially" all of his managers made oral representations about the stability of his employment, (Pl.'s Br. at 1), and that he was "led to believe" that transferring to AT&T Solutions would "assure him of continued employment." (Pl.'s Br. at 7; Pl.'s Affidavit, ¶ 7.)[1] When asked at his deposition, however, what *specific* representations AT&T made, it was clear that AT&T did not make any representations sufficient to create a contractual promise. Specifically, when asked what representations AT&T made concerning stability of employment in general or for him in particular, Plaintiff cited the following alleged statements by various AT&T managers:

---

[1] Plaintiff's counsel represents in his brief that Robert Gebo and Gloria Wimmer actually "*told* Mr. Felekey that accepting a transfer to Connecticut . . . would assure him of continued employment at the AT&T Connecticut Branch." (Pl.'s Br. at 7 (emphasis added).) Plaintiff's counsel cited Plaintiff's Affidavit in making this assertion, yet Plaintiff's Affidavit merely states that Plaintiff was "*led to believe*" that accepting a transfer would assure him of continued employment. (Pl.'s Aff., ¶ 7 (emphasis added).) Plaintiff failed to set forth any *specific representations* that "led" him to that belief.

- At the time he was hired in 1979, AT&T's training instructors allegedly told him that, after receiving training, AT&T employees "should expect to be working with this company for quite a long time, that the culture of this company was one in which it valued its employees and treated them fairly, and that as long as none of us violated the code of conduct and did our job, we could expect a long, fruitful career." (Felekey Dep. at 285.)[2] Ben Lubecki also allegedly told Plaintiff that "this was a long-term commitment on my part and the company's."[3] (Felekey Dep. at 287.)

- Between 1987 and 1989, David Way wrote career plans for Plaintiff that "extended 3 or more years into the future as to his best estimates of the fit between myself and the company," and wrote a letter "saying that he would gladly accept me back into his organization when it was time for career rotation."[4] (Felekey Dep. at 290-91.)

- In the early 1990s, Ray Butkus wrote Plaintiff a reference letter stating "that I had all the traits that were required for future success and that he was very impressed

---

[2] Portions of Plaintiff's deposition transcript cited herein are attached as Exhibit A.

[3] Plaintiff's Brief also references Lubecki's affidavit, which Plaintiff drafted, (Felekey Dep. at 26-27; Lubecki Dep. at 20 (portions attached as Exhibit B)), and which purports to state Lubecki's understanding that "when you began working for [AT&T] you had a job for life" and that, "[u]nless you embezzled from the company, committed a felony or destroyed company property, the company would be loyal to you and your employment and pension were secure." (Lubecki Aff., ¶ 3.) At his deposition, however, Lubecki backed off of these statements. He admitted that there were many other reasons why AT&T might legitimately terminate an employee, such as poor performance or a reduction in force. (Lubecki Dep. at 23-25.) Lubecki further admitted that a personality conflict in the workplace might also be a basis for termination. (Lubecki Dep. at 25-26.) Significantly, Lubecki never told Plaintiff that he could only be terminated for cause. (Lubecki Dep. at 26-27.)

[4] Notably, even after Willem Weijer told Plaintiff to start looking for other employment within AT&T, Plaintiff did not contact Mr. Way to take him up on his alleged offer because Mr. Way "was in Florida working in a different organization, and I had no desire to uproot my family while my kids were in the middle of school." (Felekey Dep. at 291.)

with my performance and that I had done a great job for him." (Felekey Dep. at 292.)

- In the 1990s, Jim Pagos allegedly told Plaintiff "how pleased he was that I had once again joined his organization based upon the great work I had done for him in the past, and how he continued to expect great things from me in the future." (Felekey Dep. at 288-89.)

- In November or December 1995, Bob Gebo allegedly told Plaintiff that he was "the best available candidate for the position of client business manager," and authorized Plaintiff's relocation to Connecticut. (Felekey Dep. at 281-82.)

- In February 1999, Richard Spina allegedly told Plaintiff in connection with his transfer to AT&T Solutions that it was "not going to be a problem" for Plaintiff to remain in Connecticut because he was the "best available candidate" for the position, he was a "great fit" with a "unique set of skills," and that they would discuss Plaintiff's salary at his annual review. (Felekey Dep. at 283-85.) Plaintiff added that "it takes a lot of time and effort to hire people in these positions—you get the impression that they are making a commitment to you." (Felekey Dep. at 294-95.)

Similarly, Plaintiff was unable to identify a single person at AT&T who told him that his employment was terminable only for "just and reasonable cause." Initially, Plaintiff claimed that "essentially every one of [his] managers" made such a representation to him. (Felekey Dep. at 301.) When asked, however, for the specific representations, Plaintiff admitted that his managers had simply discussed with him: (1) that it was "very important that you read and understand the code of conduct;" and (2) "examples of things not to do if you wanted to remain at AT&T."

(Felekey Dep. at 301.) Ultimately, Plaintiff admitted that no one at AT&T ever specifically told him that his employment was terminable only for "just and reasonable cause." (Felekey Dep. at 303-04.) The alleged representations on which Plaintiff relies, even if made, are insufficient as a matter of law to prove that Plaintiff's employment at AT&T was "stable" and terminable only for "just and reasonable cause." See Schermerhorn v. Mobil Chem. Co., No. 3:99cv941 (GLG), 2001 U.S. Dist. LEXIS 519, at *15-17 (D. Conn. Jan. 17, 2001) (granting motion for summary judgment because, *as a matter of law*, statements such as "if [plaintiff] performed in the same fashion [as his father had], that [he] would probably be able to retire from Mobil with many years of service" and because his "job prospects at Mobil were excellent and that [he] could expect a long tenure at Mobil" do not establish an employment contract);[5] D'Ulisse-Cupo v. Bd. of Dirs. 202 Conn. 206, 208, 215 (1987) (upholding motion to strike because, *as a matter of law*, statements such as "there would be no problem with [the plaintiff] teaching certain courses and levels the following year, that everything looked fine for rehire for the next year, and that she should continue her planning for the exchange program" and "[a]ll present faculty members will be offered contracts for next year" do not establish an employment contract because "none of the representations contained any of the material terms that would be essential to an employment contract, such as terms regarding the duration and conditions of the plaintiff's employment, and her salary and fringe benefits").

    B.    <u>AT&T Did Not Make Any Written Representations Sufficient to Create a Contract.</u>

Notwithstanding Plaintiff's claim that AT&T made "written representations" that constituted a contract, Plaintiff does not cite a single document that provides that his employment was terminable only for "just and reasonable cause." Indeed, Plaintiff's Performance Improvement Plan, which he signed, expressly provided that:

---

[5] Copies of unreported cases cited herein are attached as Exhibit D.

> The Performance Improvement Plan and its guidelines are not a contract of employment, either expressed or implied, and don't create any contractual rights of any kind between AT&T and its employees. At AT&T, there is no fixed duration to the employment relationship. Employees can terminate their employment whenever they wish and for whatever reason they might have, just as AT&T may terminate any employee, with or without cause, at any time for any reason. This is known as Employment-At-Will.

(Performance Improvement Plan, relevant portions attached as Exhibit C.)

Plaintiff suggests that the absence of express language in his Employment Application and hire letter that he was an at-will employee somehow means that he was *not* an at-will employee. (Pl.'s Br. at 2.) He cites no case law in support of this novel proposition. Moreover, Plaintiff has cited no language whatsoever in his Employment Application, hire letter, or any other document stating that he was a "permanent employee" or that AT&T needed "just and reasonable cause" to terminate him.

      C.    <u>In Any Event, AT&T Had Good Cause to Terminate Plaintiff's Employment.</u>

Even if Plaintiff could somehow prove that he had an employment contract with AT&T pursuant to which AT&T could terminate his employment only for good cause, AT&T had good cause to fire him. Plaintiff's Performance Improvement Plan ("PIP"), a complete copy of which is attached to Defendant's primary brief as Exhibit C, describes numerous problems with Plaintiff's performance, including:

- a "mismatch" between Plaintiff's skills and the requirements of the Client Services Executive position at AT&T Solutions;

- Plaintiff's failure to present sufficient outsourcing opportunities for AT&T Solutions to pursue;

- feedback from the AT&T sales center to the effect that Plaintiff was "not effectively teaming with sales associates;"

- Plaintiff's inability to articulate the AT&T Solutions Value Proposition in front of clients; and

- the fact that Plaintiff's manager, Willem Weijer, was often more up to date on sales activities within Plaintiff's assigned territories.  (See Section 2 of PIP.)

Plaintiff argues that AT&T wrongfully terminated him (apparently in breach of some sort of contract) by refusing to give him a full sixty days from September 22, 1999 to improve his performance.  (Pl.'s Br. at 5-6.)  Plaintiff claims that, because he did not receive a written copy of his PIP until September 22nd, AT&T was not permitted to terminate his employment until at least November 22nd.  (Pl.'s Br. at 5-6.)

Nothing in Plaintiff's PIP (or any other document) guaranteed him a right to remain employed with AT&T for at least sixty days following delivery of the written PIP document. Plaintiff is relying on language in a letter that he received from his supervisor, Willem Weijer, dated September 21, 1999, which was delivered to Plaintiff along with the PIP.  The letter (which is attached as Exhibit B to Defendant's primary brief and Exhibit 8 to Plaintiff's Brief) states that Mr. Weijer "will review [Plaintiff's] performance at the 30-day, 45-day and 60-day intervals, and, *if in any of these stages your performance has not satisfactorily improved, it could be necessary to take further action which could include dismissal*."  (emphasis added).  Indeed, Plaintiff's PIP expressly provided that "AT&T reserves the right to amend, change, or cancel the *Performance Improvement Plan* or any elements of the plan at any time solely at its discretion.  In addition, management reserves the right to terminate the plan prior to its stated completion date in the event the employee fails to make satisfactory progress in improving performance and completing the plan." (Exhibit C at 1; Pl.'s Br., Exh. 8.)  Thus, both the PIP and Mr. Weijer's letter confirmed that AT&T reserved the right to terminate Plaintiff's employment before expiration of the sixty-

day period.  Plaintiff has failed to identify any genuine issues of material fact to suggest that AT&T lacked good cause to terminate his employment.

      D.      <u>As a Matter of Law, AT&T Did Not Breach the Implied Covenant of Good Faith and Fair Dealing.</u>

As indicated in Defendant's primary brief, to prove bad faith, Plaintiff must prove that AT&T was motivated by a "dishonest purpose." <u>Anatra v. Waldo</u>, No. CV-96-03906685, 1998 Conn. Super. LEXIS 535, at *4 (Conn. Super. Ct. Feb. 27, 1998) (citing <u>Habetz v. Condon</u>, 224 Conn. 231, 238 (1992)).  "Bad faith in general implies both actual and constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." <u>Anatra</u>, 1998 Conn. Super. LEXIS 535, at *4.

Plaintiff's Brief cites no evidence that AT&T was motivated by a "dishonest purpose" or "sinister motive" in terminating his employment.  Accordingly, AT&T is entitled to summary judgment on Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

      E.      <u>Conclusion</u>

Plaintiff has no evidence that he ever had a contract with AT&T pursuant to which his employment was only terminable for "just and reasonable cause."  Moreover, even if he could prove that he had such a contract, Plaintiff cannot prove that AT&T lacked "just and reasonable cause" to terminate him, nor does he have any evidence that AT&T acted in bad faith.  For all of the foregoing reasons, and those stated in Defendant's primary brief, this Court should grant Defendant's Motion for Summary Judgment.

DEFENDANT,
AMERICAN TELEPHONE & TELEGRAPH COMPANY


By _____
    Victoria Woodin Chavey (ct14242)
    Eric L. Sussman (ct19723)
    Jeffrey A. Fritz (ct26667)
    Day, Berry & Howard LLP
    CityPlace I
    Hartford, Connecticut 06103-3499
    (860) 275-0100
    Its Attorneys

## **CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing was sent via overnight mail, postage prepaid, to: William T. Shea, Esq., Shea & Cook, P.C., 290 Pratt Street, P.O. Box 1856, Meriden, CT 06450.

_____
Eric L. Sussman