*Performance Improvement Plan*

S

### Important Notice to Employees

The *Performance Improvement Plan* and its guidelines are not a contract of employment, either expressed or implied, and don't create any contractual rights of any kind between AT&T and its employees. At AT&T, there is no fixed duration to the employment relationship. Employees can terminate their employment whenever they wish and for whatever reason they might have, just as AT&T may terminate any employee, with or without cause, at any time for any reason. This is known as Employment-At-Will.

AT&T reserves the right to amend, change, or cancel the *Performance Improvement Plan* or any elements of the plan at any time solely at its discretion. In addition, management reserves the right to terminate the plan prior to its stated completion date in the event the employee fails to make satisfactory progress in improving performance and completing the plan.

Sustained improved performance is expected of the employee upon satisfactory completion of the plan. Failure to satisfactorily complete the plan may result in the following:
- Transfer
- Demotion
- Dismissal

Section 5

**Comments:**

I feel compelled to present some factual information which will balance the record as presented in this document. I firmly believe that there is not a mismatch between my strengths and skills and the requirements of the Client Services Executive position. However, I do believe that there are several communications issues.

I received my first Mid-year performance Feedback in writing on August 25. I was asked to sign it and return it on September 1. This evaluation covered the first 4 months in this position. It states: "Bob is making progress in establishing his role in Business Development within the Thompson Sales Center. He has demonstrated willingness to acquire new knowledge and skill sets in order to reach target."

On September 22, I was handed a letter dated September 21 as the first written documentation that there was a problem with my performance. It also contained for the first time the Measures of Success by which I would be evaluated. I also received my "Job Description" consisting of three lines from my manager on September 23, 1999 for the first time.

I believe I understand the needs of the business and the requirement for demonstrated results; however, I disagree with a number of the subjective statements made. Many of the items contained in the description of performance problems are subjective or in fact based on hearsay.

For example, Section 2 mentions negative feedback from the sales center. When I asked for details about this, I was told that the feedback was from an individual who had worked for me. I discussed this with the employee and it seems that there has been a misunderstanding regarding this by my management.

Section 2 also mention "indirect feedback form the Starwood Customer." This is a customer with whom I negotiated two separate $150 million contracts over the course of almost 2 years. During the negotiations one of my roles was that of "Bad Cop" to my bosses role of "Good Cop". Throughout the entire process I fulfilled every promise made by AT&T and successfully concluded both these complex consortium negotiations to the clients complete satisfaction while protecting AT&T's interests. This was in spite of the intervention of three different consultant organizations.

This same client confided in me that they were looking for an outsourcing arrangement with AT&T at the dinner meeting we had in Boston in late February to celebrate the successful conclusion of our negotiations. I identified this as the next outsourcing opportunity in the branch; however, the opportunity to work on this account, in which I had three years experience, was taken away from me.

In a parallel situation, I was told in July that I should no longer be working on the Pitney Bowes account, but that it would be assigned to a peer. It is not clear to me why that decision was made.

# Performance Improvement Plan

I am confused by the "Performance Problem" identified regarding my interaction with clients, for two reasons. First, we received Value Proposition training on July 21 as conducted by William Bangert. Since then I have been incorporating this information into appropriate client presentations. I have not, however been observed by my boss. We expect to achieve this next week. Second, as to the insinuation that I am not able to link client needs to our service line, I have been successfully engaged in consultative selling for twenty years at AT&T. My client list over that period has included multinational, global corporations such as Ralston Purina, The Hartford, and Starwood, PTTs such as BT, KDD, and Telefonica. I have sold business, consumer, and international AT&T services to these clients. The transition here is around a new set of products/services and to a new set of particular clients.

On June 1, I presented an overview of AT&T Solutions to Carrier Corporation in partnership with Jan Scites, AT&T Vice President, Internet Implementation Strategy. The result of that meeting was a client comment that "AT&T is the only company he has met that has both the vision and demonstrated capability in use. He will definitely set us up as a preferred supplier because he felt he could learn from us and we can in fact solve many of his problems." The feedback from Jan Scites was that I had done an excellent job covering difficult material at an appropriately high level. Based on that meeting I delivered a proposal within 2 weeks to help Carrier develop their e-commerce strategy. A massive reorganization and downsizing impacting 10 % of their workforce worldwide has since prevented them from focusing on e-commerce.

The position I am now in, is that my "30-day review" is scheduled for 8 days from when I received my first written notice of the Measures of Success and PIP expectations. I fail to see how this is consistent with "Our Common Bond."

Having said this, I want to be clear that as a seasoned professional I am always open to constructive, fact-based criticism. I merely ask to be given a fair opportunity to demonstrate my ability to contribute to the needs of the business in this extremely challenging environment both for AT&T and for our clients. I fully expect to exceed the Measures of Success and demonstrate my contribution to the business. I respectfully request a review of the proposed time frame for the PIP and that this timeframe be extended appropriately.

Employee Signature: *[signed] Robert J Feltey*
Date: 9/25/99

Immediate Coach Signature: _____
Date: _____

AT&T Proprietary

Business Customer Care
Revised 3/98