**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ROBERT J. FELEKEY, | : | CIVIL NO. 3:02CV691 (CFD) |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| AMERICAN TELEPHONE & | : | |
| TELEGRAPH COMPANY, | : | |
| | : | |
| Defendant. | : | AUGUST 3, 2007 |

**MEMORANDUM IN SUPPORT OF MOTION FOR DIRECTED VERDICT**

Pursuant to Rule 7(a)1 of the Local Rules of Civil Procedure, Defendant, American Telephone & Telegraph Company ("AT&T"), respectfully submits its Memorandum of Law in Support of its Motion for Directed Verdict. The Court should grant its motion because Plaintiff, Robert J. Felekey ("Plaintiff"), has failed to offer legally sufficient evidence upon which a reasonable jury could conclude that he had an implied employment agreement with AT&T that it could only terminate his employment for "just and reasonable cause." The language or conduct he has identified on AT&T's part, as a matter of law, does not amount to a clear and definite promise by AT&T. Moreover, even if Plaintiff had offered sufficient evidence that he had an employment agreement with AT&T, he has failed to produce sufficient evidence upon which a reasonable jury could conclude that AT&T breached the agreement, as no genuine issue of material fact exists concerning whether AT&T had just and reasonable cause to terminate his employment. In addition, Plaintiff's breach of the implied covenant of good faith and fair dealing claim necessarily fails, as Plaintiff has not presented any evidence that AT&T breached the alleged employment agreement in bad faith. Accordingly, the Court should grant AT&T's motion and direct the verdict in its favor. Should the Court find that Plaintiff has offered legally sufficient evidence to support his claims, the Court should partially direct the verdict in AT&T's

favor on damages because Plaintiff voluntarily quit his subsequent employment with EMC Corporation.

I.      **Directed Verdict Standard**

A court should grant a motion for directed verdict when it concludes that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party" on the issues in question. See Fed. R. Civ. P. 50(a)(1); Erlich v. Town of Glastonbury, 348 F.3d 48, 52 (2d Cir. 2003). The Second Circuit has determined that a court must grant a motion for directed verdict "if, in viewing the evidence in the light most favorable to the non-moving party, (1) there is a complete absence of probative evidence to support a verdict for the non-movant or (2) the evidence is so strongly and overwhelmingly in favor of the movant that reasonable and fair-minded men in the exercise of impartial judgment could not arrive at a verdict against the defendant." See Rivera v. Granucci, No. N-87-480 (JAC), 1993 U.S. Dist. LEXIS 3264, at *4 (D. Conn. Mar. 12, 1993)[1] (citing Powell v. Gardner, 891 F.2d 1039, 1043 (2d Cir. 1989)); see also Warren v. B.P. Shipping, Inc., No. 00-7241, 2000 U.S. App. LEXIS 27199, at *3 (2d Cir. Oct. 25, 2000) (citing Diebold v. Moore McCormack Bulk Transp. Lines, Inc., 805 F.2d 55, 57 (1986)).

II.     **Plaintiff Has Failed To Offer A Legally Sufficient Evidentiary Basis To Support His Claim That He Had An Implied Employment Agreement With AT&T**

In his Complaint, Plaintiff claims that, at all times during his employment with AT&T, he had an employment agreement which provided that his "employment would not be terminated except for just and reasonable cause." (Compl. ¶ 4.) He has failed to adduce any evidence to support such a claim—indeed, to the contrary, he has admitted that no one at AT&T, either verbally or in writing, has ever indicated that AT&T could only terminate his employment for

"just and reasonable cause."  Accordingly, as set forth more fully below, as a matter of law, Plaintiff was an at-will employee and AT&T could terminate his employment for any reason.

Under Connecticut law, absent an employment contract for a specified term, an employer may terminate an individual's employment at will.  Fisher v. Jackson, 142 Conn. 734, 736 (1955); see also Santos v. Praxair Surface Techs., Inc., No. 3:04CV350, 2005 U.S. Dist. LEXIS 5354, at *7 (D. Conn. Mar. 31, 2005); Marfiak v. Blue Cross & Blue Shield, No. CV9403680075, 1997 Conn. Super. LEXIS 2997, at *4 (Conn. Super. Ct. Oct. 31, 1997) (where employer does not hire employee for a definite period of time, he is an at-will employee, and employer can discharge him at any time for a good reason, a bad reason, or no reason at all).  To establish an employment contract, Plaintiff must prove "by a fair preponderance of the evidence that [AT&T] had agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment to [him]."  Torosyan v. Boehringer Ingelheim Pharms., 234 Conn. 1, 15 (1995); see also Coelho v. Posi-Seal Int'l Inc., 208 Conn. 106, 111-12 (1988); Schermerhorn v. Mobil Chem. Co., No. 3:99CV941 (GLG), 2001 U.S. Dist. LEXIS 519, at *4 (D. Conn. Jan. 17, 2001).  He cannot create a contractual promise "by plucking phrases out of context; there must be a meeting of the minds between the parties."  Reynolds v. Chrysler First Comm. Corp., 40 Conn. App. 725, 730 (1996).  An employer's words or actions must constitute a "clear and definite promise that [a] plaintiff could be terminated only for cause or only in a certain manner." Schermerhorn, 2001 U.S. Dist. LEXIS 519, at *15-16.

Plaintiff has failed to offer a legally sufficient evidentiary basis such that a reasonable jury could find that he had an employment agreement with AT&T.  At trial, Plaintiff essentially testified that AT&T offered him "long-term employment."  Specifically, he testified that, in

---

[1] AT&T attaches any cited unpublished opinions as Exhibit 1.

1979, Dawn Ogletree, Management Employment Supervisor, indicated that AT&T "was concerned about long-term job satisfaction of its employees." (See Tr. 34-40.)[2] Such a statement, as a matter of law, does not rise to the level of a clear and definite promise of employment. See Rooney v. Tyson, 127 F.3d 295, 297 (2d Cir. 1997) (citing Peters v. MCI Telecomm. Corp., 685 F. Supp. 411, 414 (S.D.N.Y. 1988) (an employer's promise of "long term employment" is "even less definite than a permanent appointment or employment until retirement, neither of which states a clear and definite limitation on the employer's right to discharge"));[3] Thompson v. Revonet, Inc., No. 3:05-CV-168 (RNC), 2005 U.S. Dist. LEXIS 29129, at *9-10 (D. Conn. Nov. 21, 2005) (noting that, under Connecticut law, "general promises of permanent employment create at will employment only" and that "promise of long-term employment, without accompanying promise that employment would be for a definite term or could be terminated only for just cause, did not give rise to implied contract") (citing D'Ulisse-Cupo v. Bd. of Dirs. of Notre Dame High Sch., 202 Conn. 206, 211 n.1 (1987)); Torosyan, 234 Conn. at 15; Schermerhorn, 2001 U.S. Dist. LEXIS 519, at *9-14); see also Carter v. Bartek, 142 Conn. 448, 450 (1955) (holding that "an agreement for permanent employment is no more than an indefinite general hiring, terminable at the will of either party without liability to the other").[4]

---

[2] AT&T attaches all cited trial testimony (to the extent available) as Exhibit 2.

[3] See also Giorgio v. Nukem, Inc., 31 Conn. App. 169, 177 (Conn. App. Ct. 1993) (noting that "[t]he case law in New York is in accord with that of Connecticut" with regard to the fact that "absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party") (citations omitted).

[4] Similarly, Plaintiff's testimony that Benjamin Lubecki, his first manager, allegedly told him that Plaintiff should buy a house because "you're going to be here a long time" and the fact that AT&T partnered with a mortgage company to afford him a preferential rate on a thirty-year mortgage, cannot constitute clear and definite promises of employment. (See Tr. at 91 & 153.)

Plaintiff also testified that "company officials" at his training in Kansas City indicated that so long as he did not (1) damage company equipment; (2) engage in "any kind of financial irregularity;" or (3) engage in sexual harassment or sexual behavior with coworkers, he "can expect to have a long career at AT&T."  (See Tr. at 50-51.)  Even if "company officials" made such representations, they do not constitute a clear and definite promise of employment, as a matter of law.  See Schermerhorn, 2001 U.S. Dist. LEXIS 519, at *6-8 & *15-16 (granting motion for summary judgment despite supervisor's indicating that the plaintiff "could expect a long tenure at Mobil").  As in Schermerhorn, one cannot construe these "company officials'" remarks as "an expression of intent to establish the terms of plaintiff's employment, or that termination would only be for just cause . . . ."  Id. at 16.

Third, Plaintiff testified that Frank Ricardo, a trainer in Cincinnati, explained to him that "as new employees you are bound by the common bond [Code of Conduct] which is AT&T's statement to you of the grounds for dismissal."  (See Tr. at 67 & 81.)  Such a statement is not promissory or sufficiently definite to manifest a intention to create an implied employment contract.  See Clouston v. On Target Locating Servs., No. 3:01Cv2404 (DJS), 2005 U.S. Dist. LEXIS 19291, at *14 (D. Conn. Aug. 19, 2005) (holding that code of conduct, even if not covered by disclaimer, "does not contain the kind of definitive language necessary to infer an intent to form an agreement . . . .") (citation omitted).  Plaintiff cannot dispute, moreover, that the conspicuous "Notice to Employees" in the Code of Conduct's Table of Contents indicates, in pertinent part, that:

> This code of conduct provides information about the standards of integrity that AT&T expects all employees to follow.  It doesn't address every situation or set forth every rule, nor is it a substitute for the responsibility of every employee to exercise good judgment.
>
> *This code isn't a contract of employment and doesn't create any contractual rights of any kind between AT&T and its employees.*

> In addition, employees not covered by a collective bargaining agreement . . . should understand that at AT&T there's *no fixed duration to the employment relationship*. They can terminate their employment whenever they wish and for whatever reason they might have, just as *AT&T may terminate their employment at any time and for any reason. This is known as employment-at-will*.

(See Def.'s Ex. 11 (emphases added).)[5] Accordingly, Mr. Ricardo's statement could not constitute an employment agreement such that AT&T could only terminate Plaintiff's employment for good cause.

Fourth, Plaintiff claims he had an employment agreement with AT&T because Dave Schmeig and Kathy Hare "were evaluating me and offered me these positions for some period of time in the future." (See Tr. at 105.) Periodically evaluating an employee, however, does not thereby vitiate the at-will relationship. See Hanna v. InfoTech Contract Servs., Inc., No. 3:01 CV 680 (SRU), 2003 U.S. Dist. LEXIS 7056, at *5 & 22 -24 (D. Conn. Apr. 21, 2003) (finding at-will employment relationship despite employee's periodic evaluation). Moreover, an employer does not create an employment contract with an employee by describing future assignments and designating an annual salary. See Paris v. Northeast Savs. F.A., No. CV910398144, 1994 Conn. Super. LEXIS 1412 at *7 (Conn. Super. Ct. June 1, 1994) (noting that "an annual salary term in a contract does not create a contract for a definite duration"); Davidson v. Morganti Nat'l Inc., No. 3:96CV1053, 1998 U.S. Dist. LEXIS 13488, at *8-9 (D. Conn. Aug. 14, 1998) (noting that fact that the plaintiff was to receive "10% of annual based pay payable upon completion of the project" created no reasonable inference of an ongoing employment relationship and that "fix[ing] a rate at which employees may be compensated during the course of their employment" does not create a contract for employment").

---

[5] The Code of Conduct's Table of Contents—and its prominent at-will provision—conspicuously was missing from Plaintiff's Exhibit 1.

As the foregoing demonstrates, Plaintiff has failed to offer a legally sufficient evidentiary basis to support his contention that he had an employment agreement with AT&T. He has admitted that:

- he had no written employment agreement with AT&T;
- no AT&T employee ever stated to him, verbally or in writing, that AT&T could only terminate his employment for "just and reasonable cause;"
- no document indicates that AT&T could only terminate his employment for "just and reasonable cause;"
- no document indicates that AT&T could only terminate his employment if he embezzled, violated the code of conduct, or disclosed confidential customer information.

Moreover, Plaintiff has admitted that the Code of Conduct, and other documents, specifically and conspicuously indicate that, unless an employee is covered by a collective bargaining agreement, he or she is an at-will employee.[6] Finally, the words or conduct he attributes to AT&T are not, as a matter of law, clear and definite promises of employment and, accordingly, cannot create an implied employment contract. The Court, therefore, should grant AT&T's motion and direct the verdict on Count 1 in its favor. See Rivera v. Granucci, 1993 U.S. Dist. LEXIS 3264, at *4 (citation omitted).

### III.   Plaintiff Has Failed To Offer A Legally Sufficient Evidentiary Basis To Support His Claim That AT&T Did Not Have Just and Reasonable Cause To Terminate His Employment

Even if Plaintiff could establish that he had an enforceable employment contract pursuant to which AT&T could terminate his employment only for "just and reasonable cause," he has failed to adduce a sufficient evidentiary basis to establish that AT&T lacked just and reasonable cause to terminate his employment and, therefore, no reasonable jury could find that it breached

---

[6] He has admitted that the Code of Conduct (Def.'s Ex. 11), Termination of Employment Policy (Def.'s Ex. 12), and his Performance Improvement Plan (Def.'s Ex. 8) indicate that he was an at-will employee.

the alleged contract.[7] While Plaintiff initially asserted that AT&T could only terminate his employment if he damaged company equipment, engaged in financial irregularities, or engaged in sexual harassment or other sexual behavior, he later testified that, in addition, AT&T could terminate his employment if he failed to do his job. (See Tr. 50-51 & 308-09.) As the Performance Improvement Plan ("PIP") indicated, Plaintiff failed properly to do his job, and accordingly, AT&T had just and reasonable cause to terminate his employment. (See PIP (Def.'s Ex. 8.)

As the PIP relates, Plaintiff failed to produce results because of his inability to recognize and convey business opportunities. He lacked the managerial skills, communication tools, financial acumen, and sales expertise properly to perform the functions of his job. He neglected his duties, mishandled his accounts, and failed to lead his sales team effectively. Most notably, he alienated clients to such a degree that a significant client specifically requested not to work with him. (See PIP at 1.) Moreover, after AT&T provided Plaintiff notice of his performance deficiencies, he failed to make progress in remedying them. He continued to disappoint his supervisors with his failure to comprehend the field and inability properly to handle business opportunities. (See PIP at 4.)

---

[7] Although Connecticut courts have not created a uniform definition of "good cause," the Model Uniform Employment Termination Act prefatory note, reprinted in 9A Lab. Rel. Rep. (BNA) 21, 23 (Aug. 8, 1991), defines good cause as "(i) [A] reasonable basis related to an individual employee for termination of the employee's employment in view of relevant factors and circumstances, which may include the employee's duties, responsibilities, conduct on the job or otherwise, job performance, and employment record, or (ii) the exercise of business judgement [sic] in good faith by the employer, including setting its economic or institutional goals and determining methods to achieve those goals, organizing or reorganizing operations, discontinuing, consolidating, or divesting operations or positions or parts of operations or positions, determining the size of its work force and the nature of the positions filled by its work force, and determining and changing standards of performance for positions."

Plaintiff has admitted that he had not passed a sales opportunity through the bid/no bid review and that he had not passed significant Management Networking Solutions opportunities to the line of business. He has admitted that Sanjay Barman, Client Business Manager, had indicated that he was not teaming well with others in the branch, that he did not believe Plaintiff had been effective in front of customers, and that Plaintiff did not track account progress effectively. Moreover, Plaintiff has admitted that, on his own accord, he played "bad cop" on the Starwood account—which likely contributed to their requesting that he be taken off the account. He also admits that he disregarded the direction of his supervisor, Willem Weijer, that he update his account plans because he believed it to be just a "paper pushing activity."

Because of Plaintiff's ongoing failure to meet the expectations of his employer, AT&T had just and reasonable cause to terminate his employment. Accordingly, no genuine issue of material exists as to whether AT&T breached any alleged employment contract and it is entitled to judgment as a matter of law. The Court, therefore, should grant its motion and direct the verdict on Count 1 in its favor. See Rivera v. Granucci, 1993 U.S. Dist. LEXIS 3264, at *4 (citation omitted).

### IV. Plaintiff Has Failed To Offer A Legally Sufficient Evidentiary Basis To Support His Claim That AT&T Breached The Implied Duty Of Good Faith And Fair Dealing

Because Plaintiff has failed to adduce a legally sufficient evidentiary basis to support his contention that he had an employment agreement with AT&T, his breach of the implied covenant of good faith and fair dealing necessarily fails and, accordingly, the Court should direct the verdict on this count in AT&T's favor. See Cowen v. Fed. Express Corp., 25 F. Supp. 2d 33, 37 (D. Conn. 1998) (Under Connecticut law, to state a claim for breach of the covenant of good faith and fair dealing in the employment context, a plaintiff "must allege either that an enforceable employment contract exists, or that the employer's actions in discharging the

employee violated a recognized public policy.")[8]  Moreover, even if Plaintiff had offered a sufficient evidentiary basis for his claim that he had an implied employment agreement, he has failed to adduce a legally sufficient evidentiary basis for his contention that AT&T breached the implied covenant of good faith and fair dealing.

"Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement."  Anatra v. Waldo, No. CV9603906685, 1998 Conn. Super. LEXIS 535, at *4 (Conn. Super. Ct. Feb. 27, 1998) (citing Habetz v. Condon, 224 Conn. 231, 238 (1992)).  To prove bad faith, a plaintiff bears a heavy burden because "[b]ad faith means more than mere negligence; it involves a *dishonest purpose*."  Anatra, 1998 Conn. Super. LEXIS 535, at *4 (citing Habetz, 224 Conn. at 237) (emphasis added).  "Bad faith in general implies both actual and constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive."  Anatra, 1998 Conn. Super. LEXIS 535, at *4 (internal citations omitted).

Plaintiff has failed to present *any* evidence that AT&T terminated his employment in bad faith.  As matter of law, therefore, he has not met the heavy burden of establishing that AT&T had a "dishonest purpose" or "sinister motive" in terminating his employment; he has failed to adduce any evidence suggesting that AT&T terminated his employment for any reason other than his poor performance.  Accordingly, the Court should grant AT&T's motion and direct the verdict on Count 2 in its favor.  See Rivera v. Granucci, 1993 U.S. Dist. LEXIS 3264, at *4 (citation omitted).

---

[8] Plaintiff has not alleged that his termination violated a recognized public policy.

**V.    Should The Court Find That Plaintiff Has Offered A Legally Sufficient Evidentiary Basis To Support His Claims, It Should Partially Direct The Verdict On Damages In AT&T's Favor Because Plaintiff Voluntarily Quit His Subsequent Employment**

A discharged employee must use "reasonable diligence in finding other suitable employment." Ford Motor Co. v. E.E.O.C., 458 U.S. 219, 231 (1982). "Generally, an employer seeking to avoid a lost wages award bears the burden of demonstrating that a plaintiff has failed to satisfy the duty to mitigate." Broadnax v. City of New Haven, 415 F.3d 265, 268 (2d Cir. 2005) (citation omitted). An employer may demonstrate that a plaintiff failed to satisfy the duty to mitigate by establishing *inter alia* that the plaintiff voluntarily resigned from subsequent employment. See Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 695 (2d Cir. 1990) (finding that "[a] claimant who voluntarily resigned from comparable employment for personal reasons would not have adequately mitigated damages"); Thurston v. Motor Lines, Inc., 753 F.2d 1269, 1273 (4th Cir. 1985) (holding that "[w]here a discharged . . . plaintiff subsequently finds similar employment, but then voluntarily quits, back pay should be decreased by the amount he would have earned had he not quit"); Herring v. Thomasville Furniture Indus., Inc., No. 4:96CV00081, 1999 U.S. Dist. LEXIS 16421, at *14-15 (M.D. N.C. Aug. 31, 1999) (concluding that "Plaintiff's voluntary resignation from comparable employment effectively cuts off any claim she has for back pay after that point based on Plaintiff's failure to mitigate her damages"); Griffin v. George B. Buck Consulting Actuaries, Inc., 566 F. Supp. 881, 882 (S.D.N.Y. 1983) (finding that "[w]hen a plaintiff has obtained employment equivalent to that from which he was excluded by the defendant, and quits without adequate reason, the backpay award must be offset by the amount the plaintiff would have earned had he kept the job")

While a "voluntary quit does not toll the back pay period when it is motivated by unreasonable working conditions or an earnest search for better employment," Plaintiff admitted

that he did not quit his subsequent employment at EMC Corporation ("EMC")—a job at which he could earn $350,000 per year—under such circumstances.  Cf. Hawkins, 163 F.3d at 696.  He admitted that working conditions at EMC were satisfactory: that he had a "great boss" who tried to assist him, that he had received helpful training, and that he received an award for his performance during the "fishbowl" session of his training.  He admitted that he left EMC simply because he believed it was not a "good fit," that he was not going to be successful there, and that he had no future there.  As a matter of law, such personal reasons do not overcome the fact that Plaintiff voluntarily quit his job at EMC, thereby cutting off his damages going forward.  The Court, therefore, should grant AT&T's motion and partially direct the verdict in its favor on damages, tolling Plaintiff's damages with his employment at EMC.

## VI.   CONCLUSION

For the foregoing reasons, the Court should grant AT&T's Motion for Directed Verdict and direct the verdict in its favor.

> DEFENDANT,
> AMERICAN TELEPHONE & TELEGRAPH COMPANY
>
>
> By /s/ Jeffrey A. Fritz _____
>    Victoria Woodin Chavey (ct14242)
>    Eric L. Sussman (ct19723)
>    Jeffrey A. Fritz (ct26667)
>    Day Pitney  LLP
>    242 Trumbull Street
>    Hartford, Connecticut 06103-1212
>    (860) 275-0100
>    Its Attorneys

-13-

## CERTIFICATION

      THIS IS TO CERTIFY that a copy of the foregoing was delivered this date via hand delivery at trial, to: William T. Shea, Esq., Shea & Cook, P.C., 290 Pratt Street, P.O. Box 1856, Meriden, CT 06450.

      /s/_____
      Jeffrey A. Fritz