LEXSEE 1993 U.S. DIST. LEXIS 3264


Cited
As of: Aug 02, 2007

DANIEL RIVERA v. ARTHUR C. GRANUCCI, ANTHONY KRZEMINSKI, and ANTHONY ZASCIURINSKAS

Civil No. N-87-480 (JAC)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

1993 U.S. Dist. LEXIS 3264

March 12, 1993, Decided
March 12, 1993, Filed

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, an arrestee who spoke only Spanish, asserted state law claims for false arrest and malicious prosecution and federal claims under *42 U.S.C.S. § 1983* for alleged due process deprivations against three police officers who arrested him and detained him in connection with a reported burglary. The arrestee also sought injunctive relief. After the close of the arrestee's case, the police officers filed a motion for a directed verdict.

**OVERVIEW:** After the arrestee, an epileptic, left the officers' custody, he had a seizure. After charges were dropped, he filed state and federal law claims against the officers. At trial, the court granted a defense motion for directed verdict. It rejected a *§ 1983* false arrest claim, holding that a later dismissal of charges did not estop the officers from showing that probable cause had existed and that, in any event, they had qualified immunity because the officers' belief that probable cause existed was reasonable. The officers had no duty to discover the arrestee's epilepsy, and even if they had known about it, their conduct did not proximately cause any injury to him. The arrestee also had no due process right to an interpreter when he was arrested, nor were police obliged to allow bystanders to translate. The court also found that the state false imprisonment claim, like the *§ 1983* false arrest claim, and the malicious prosecution claim were barred by qualified immunity, that the officers had no duty to provide medication to the arrestee, that their conduct did not proximately cause his seizure, and that a directed verdict on the state law claims was also proper.

**OUTCOME:** The court granted a directed verdict to the police officers on the arrestee's state claims and *§ 1983* claims arising out of his arrest and his subsequent epileptic seizure.

**LexisNexis(R) Headnotes**

*Civil Procedure > Trials > Judgment as Matter of Law > Directed Verdicts*
*Criminal Law & Procedure > Trials > Motions for Acquittal*
*Evidence > Procedural Considerations > Weight & Sufficiency*
[HN1] A district court may grant a directed verdict if, viewing the evidence in the light most favorable to the non-moving party, (1) there is a complete absence of probative evidence to support a verdict for the non-movant or (2) the evidence is so strongly and overwhelmingly in favor of the movant that reasonable and fair-minded men in the exercise of impartial judgment could not arrive at a verdict against the defendant. A directed verdict is proper only if the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.

*Constitutional Law > Bill of Rights > Fundamental Rights > Search & Seizure > Probable Cause*
*Criminal Law & Procedure > Arrests > Probable Cause*
[HN2] Later dismissal of charges against an arrestee does not estop the arresting officers from asserting that they had probable cause for the arrest at the time it was made.

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Estoppel > Collateral Estoppel*
[HN3] The opportunity for full and fair litigation by the party to be estopped is the crowning consideration in determining the preclusive effect of a prior adjudication.

*Criminal Law & Procedure > Arrests > Probable Cause*
*Criminal Law & Procedure > Preliminary Proceedings > Withdrawal of Charges*
[HN4] Dismissal of charges against an arrestee does not establish even prima facie evidence of a lack of probable cause, since a lack of probable cause at the time of the hearing does not suggest a lack of probable cause at the time the prosecution was initiated.

*Civil Rights Law > Immunity From Liability > Local Officials > Customs & Policies*
[HN5] The qualified immunity defense protects government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Even where the contours of the plaintiff's federal rights are clearly established at the time of the defendant's acts, the defendant may enjoy qualified immunity if it was objectively reasonable for him to believe that his acts did not violate those rights. The standard governing the availability of this defense is one of objective reasonableness, designed to permit the resolution of many insubstantial claims on summary judgment.

*Civil Procedure > Trials > Jury Trials > Province of Court & Jury*
*Civil Rights Law > Section 1983 Actions > Law Enforcement Officials > Arrests*
*Governments > Public Improvements > General Overview*
[HN6] Police officers who are sued under 42 U.S.C.S. § 1983 for arresting a person without probable cause can assert the qualified immunity defense if (1) it was objectively reasonable for the officer to believe that probable cause existed, or (2) officers of reasonable competence could disagree on whether the probable cause test was met. Whether defendants are entitled to qualified immunity is ultimately a question of law for the court to decide.

*Constitutional Law > Bill of Rights > Fundamental Rights > Search & Seizure > Probable Cause*
*Criminal Law & Procedure > Arrests > Probable Cause*
*Criminal Law & Procedure > Arrests > Warrantless Arrest*
[HN7] Statements of bystanders present at the time of an arrest are immaterial to the issue of whether the police had probable cause for the arrest. Once police officers have probable cause to make an arrest, the officers have no affirmative duty to weigh conflicting versions of the alleged offense presented by the suspect or by passersby.

*Criminal Law & Procedure > Search & Seizure > Warrantless Searches > Investigative Stops*
[HN8] In the case of an investigatory stop, which is a less significant infringement on a person's liberty than an arrest, officers have no legal duty to entertain the protests of passersby if the officers have a reasonable and articulable suspicion that the person stopped has committed a crime.

*Civil Procedure > Trials > Judgment as Matter of Law > General Overview*
*Criminal Law & Procedure > Arrests > Warrantless Arrest*
*Criminal Law & Procedure > Search & Seizure > Warrantless Searches > Investigative Stops*
[HN9] A law enforcement officer can make an investigatory stop or an arrest based on the representations of other officers, without personal knowledge of the facts of the case.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
*Constitutional Law > Substantive Due Process > Scope of Protection*
[HN10] Non-English-speaking persons have a constitutional right to an interpreter in a variety of contexts when they come into contact with government authorities.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
*Evidence > Competency > Interpreters*
*Governments > Legislation > Statutory Remedies & Rights*

Case 3:02-cv-00691-CFD   Document 127-2   Filed 08/03/2007   Page 3 of 10

Page 3
1993 U.S. Dist. LEXIS 3264, *

[HN11] The Due Process Clause requires governments to provide interpretation for persons whose inability to speak English would, in the absence of an interpreter, prevent them from asserting certain constitutional or statutory rights.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
*Constitutional Law > Substantive Due Process > Scope of Protection*
[HN12] An arrestee does not have a constitutionally protected right to engage the arresting officers in a discussion about the grounds for his arrest and the arresting officers do not have a constitutional obligation to inform the arrestee of the precise nature of the charges against him at the time of the arrest.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
*Constitutional Law > Substantive Due Process > Scope of Protection*
[HN13] In the absence of a constitutional right that entitles an arrestee to communicate with the arresting officers, the absence of an interpreter at the moment of arrest does not constitute a violation of due process.

*Constitutional Law > Substantive Due Process > Scope of Protection*
*Criminal Law & Procedure > Arrests > Miranda Warnings*
*Criminal Law & Procedure > Interrogation > Miranda Rights > Notice & Warning*
[HN14] The failure to provide an arrested person with a Miranda warning in his own language might therefore render the arrestee's subsequent statements inadmissible on grounds that he had not knowingly waived his rights under the *Fifth* and *Sixth Amendments*. But the failure to provide an interpreter would not, in itself, constitute a violation of the arrestee's constitutional rights.

*Torts > Negligence > Duty > General Overview*
[HN15] At the moment of arrest the police have no duty to apprise a defendant of the precise nature of the charges against him. Inasmuch as there is no legal duty to be informed of the specific reason for an arrest in English, there is no legal duty to provide foreign language interpretation to apprise a defendant of the precise nature of the charges against him at the time of his arrest and incarceration.

*Torts > Intentional Torts > False Arrest > General Overview*
*Torts > Intentional Torts > False Imprisonment > Defenses > Justification*
[HN16] Police officers have a complete defense to a false imprisonment claim if the arrest complies with *Conn. Gen. Stat. § 54-1f(b)*, which provides that police officers shall arrest any person who the officer has reasonable grounds to believe has committed or is committing a felony.

*Torts > Intentional Torts > False Arrest > Defenses*
*Torts > Intentional Torts > False Imprisonment > Civil Rights Actions*
*Torts > Intentional Torts > False Imprisonment > Defenses > Immunity*
[HN17] A state common law claim for false imprisonment is essentially the same as a claim for false arrest under *42 U.S.C.S. § 1983*. To the extent that a police officer is found to have qualified immunity against a claim for false arrest under *§ 1983*, that same qualified immunity applies to a false imprisonment claim made by the same plaintiff.

*Torts > Intentional Torts > Malicious Prosecution > General Overview*
[HN18] A claim for malicious prosecution fails if there was probable cause for the underlying arrest.

*Constitutional Law > Bill of Rights > Fundamental Rights > Search & Seizure > Probable Cause*
*Torts > Intentional Torts > False Arrest > Defenses*
*Torts > Intentional Torts > Malicious Prosecution > General Overview*
[HN19] A police officer can rely on the defense of qualified immunity with respect to a plaintiff's false arrest claim where a reasonable police officer could have concluded that there was probable cause to arrest the plaintiff.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
*Constitutional Law > Substantive Due Process > Scope of Protection*
*Governments > Legislation > Statutory Remedies & Rights*
[HN20] Due process does not require police officers to be accompanied at the scene of an arrest by interpreters capable of speaking the language of the arrestee because the absence of an interpreter does not prevent the arrestee

from exercising any constitutional or statutory right that he may have.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
*Constitutional Law > Substantive Due Process > Scope of Protection*
[HN21] Due process does not require police officers to rely upon interpretation services volunteered by persons at an arrest scene, particularly where the persons are unknown to the police officers.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
*Constitutional Law > Substantive Due Process > Scope of Protection*
[HN22] Due process does not require police officers to provide medical care to an arrestee in the absence of some indication by the arrestee, whether through words, actions, or apparent physical symptoms, that he needs such care.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
*Constitutional Law > Substantive Due Process > Scope of Protection*
*Torts > Negligence > Causation > Proximate Cause > General Overview*
[HN23] Even where due process requires police officers to discern an arrestee's need for medical care, the officers are not subject to civil liability for failing to provide that care if their omission does not proximately cause the arrestee's injury.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
*Constitutional Law > Substantive Due Process > Scope of Protection*
[HN24] Because due process does not require police officers to apprise an arrestee of the precise nature of the charges against him, even where the arrestee speaks English, police officers are not required to apprise an arrestee of the precise nature of the charges against him in languages other than English.

*Civil Rights Law > Immunity From Liability > Local Officials > Customs & Policies*
*Torts > Intentional Torts > False Arrest > Defenses*
*Torts > Intentional Torts > Malicious Prosecution > General Overview*
[HN25] False imprisonment and malicious prosecution claims under state law must fail where the defendants are entitled to assert a qualified immunity defense to false arrest claims under the Due Process Clause.

*Torts > Negligence > Causation > Proximate Cause > General Overview*
*Torts > Negligence > Duty > General Overview*
[HN26] Negligence claims against police officers for failure to provide medical care must fail where the plaintiff has not shown that the officers knew or should have known of the need for care and where the plaintiff has not shown that the failure to provide care proximately cause the alleged injury.

**JUDGES:** [*1] Cabranes

**OPINION BY:** JOSE A. CABRANES

**OPINION**

*MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR DIRECTED VERDICT*

JOSE A. CABRANES, Chief Judge:

The court granted the defendants' motion for a directed verdict upon the close of the plaintiff's case. This is the opinion in support of that order.

*BACKGROUND*

This action arises out of the arrest of the plaintiff by three police officers employed by the City of New Haven, Connecticut. The events giving rise to the plaintiff's arrest began with a report of a burglary at 288 Poplar Street in New Haven on January 14, 1986. Responding to this report, defendants Arthur Granucci and Anthony Zasciurinskas approached the premises at 288 Poplar Street and observed a man leaving the building. Officer Granucci then chased the man on foot, while Officer Zasciurinskas returned to his car and drove after the suspect. After losing sight of the suspect for a time, the two officers turned onto Shelter Street and thereupon observed the plaintiff. Believing the plaintiff to be the suspect whom they were chasing, the two officers took the plaintiff into custody. The third defendant, Officer Anthony Krzeminski, arrived at the scene just as the plaintiff was taken [*2] into custody.

The plaintiff, who was born in Puerto Rico and speaks only Spanish, protested his detention but the officers did not understand his statements. Two passersby, Frank Ortiz and Juan Acevedo, also protested the detention of the plaintiff by attempting to tell the officers--in Spanish and perhaps also in English--that the plaintiff was not the person whom the officers had been chasing.

Case 3:02-cv-00691-CFD    Document 127-2    Filed 08/03/2007    Page 5 of 10

Page 5
1993 U.S. Dist. LEXIS 3264, *

Notwithstanding the protests of the plaintiff and of the two passersby, Officer Krzeminski placed the defendant in a police car and transported him to the premises at 288 Poplar Street. At that location, several persons stated that the plaintiff had been one of two men standing on the porch about a half hour earlier and that one of those two men had dropped a screwdriver in bushes near the house. After observing that certain damage had occurred at the premises, the defendants transferred the plaintiff to the custody of other police officers.

The other police officers transported the plaintiff to police headquarters on Union Avenue in New Haven, where he was "processed" and then placed in the custody of the Connecticut State Department of Correction. Approximately eighteen hours after [*3] the plaintiff was placed in the custody of the state correctional authorities, he suffered an epileptic seizure, fell from his bed, and was taken to Yale-New Haven Hospital. The charges against the plaintiff were later dismissed by the state prosecutor, at least partly on the basis of the proffered statements of Ortiz and Acevedo.

At trial, the plaintiff pressed the following claims against these defendants: (1) that he was arrested without probable cause, (2) that he was denied necessary medical attention; and (3) that he was denied access to an interpreter at the time of his arrest and while in custody of the three defendants, all in violation of the Due Process Clause. The plaintiff also pressed a number of state law claims, including claims for false imprisonment and malicious prosecution. The defendant sought damages under *42 U.S.C. § 1983* ("*Section 1983*") and under state tort law, as well as an injunction requiring, *inter alia*, that the City of New Haven provide interpreters for Spanish-speaking arrestees.

The defendants' moved for a directed verdict upon the close of the plaintiff's case. After extensive briefing of the issues [*4] raised by this motion, and after oral argument, the court granted the defendants' motion.

*DISCUSSION*

[HN1] A district court may grant a directed verdict "if, viewing the evidence in the light most favorable to the non-moving party, (1) there is a complete absence of probative evidence to support a verdict for the non-movant or (2) the evidence is so strongly and overwhelmingly in favor of the movant that reasonable and fair-minded men in the exercise of impartial judgment could not arrive at a verdict against the defendant." *Powell v. Gardner, 891 F.2d 1039, 1043 (2d Cir. 1989)* (citations and quotations omitted) (affirming in part and reversing in part trial court's grant of directed verdict in police misconduct case under *Section 1983*); *see also Belanger v. Boise Cascade Corporation, 968 F.2d 254, 257 (2d Cir. 1992)* (Winter, J.). "A directed verdict is proper only if the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." *Powell, 891 F.2d at 1043* [*5] (citations and quotations omitted).

I

The plaintiff's first constitutional claim is that he was arrested without probable cause in violation of the Due Process Clause and that he is thus entitled to damages under *Section 1983*. The plaintiff argues (1) that the dismissal of the charges against him in state court estops the defendants from arguing that the arrest was made with probable cause, and (2) that the defense of qualified immunity is not available to the defendants on the false arrest claim. I shall address each of these contentions in turn.

A

The [HN2] dismissal of the charges against the plaintiff in the Connecticut Superior Court does not estop the officers from asserting that they had probable cause for the plaintiff's arrest. Our Court of Appeals has held in the context of a *Section 1983* action that [HN3] the opportunity for full and fair litigation by the party to be estopped is the "crowning consideration" in determining the preclusive effect of a prior adjudication. *See Golino v. City of New Haven, 950 F.2d 864, 869 (2d Cir. 1991)* (Kearse, J.), *cert. denied sub. nom. Lillis v. Golino, 120 L. Ed. 2d 902, 112 S. Ct. 3032 (1992)* (quoting [*6] *Aetna Casualty and Surety Co. v. Jones, 220 Conn. 285, 596 A.2d 414, 425 (Conn. 1991)).* In this case, there is no dispute that the hearing on dismissal and the actual dismissal of the charges against Rivera was conducted without notice to or consultation with the defendant officers. Because the prosecutor's discretionary decision to drop the charges deprived the officers of the opportunity to explain the basis for the plaintiff's arrest, the officers are not estopped from claiming that the arrest was made with probable cause. Finally, it should be noted that the [HN4] dismissal of the charges does not establish even *prima facie* evidence of a lack of probable cause, since "a lack of probable cause at the time of the hearing does not suggest a lack of probable cause at the time the prosecution was initiated." *Prosser on Torts* § 119, at 881 (5th ed. 1984).

B

[HN5] The "qualified immunity" defense is available to the defendants in this action. This defense protects government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable [*7] person

Case 3:02-cv-00691-CFD    Document 127-2    Filed 08/03/2007    Page 6 of 10

Page 6
1993 U.S. Dist. LEXIS 3264, *

would have known." *Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Siegert v. Gilley, 114 L. Ed. 2d 277, 111 S. Ct. 1789, reh'g denied, 115 L. Ed. 2d 1084, 111 S. Ct. 2920 (1991)*. Even where the contours of the plaintiff's federal rights are clearly established at the time of the defendant's acts, "the defendant may enjoy qualified immunity if it was objectively reasonable for him to believe that his acts did not violate those rights." *Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987)*. As the Court of Appeals has observed, "the standard governing the availability of this defense has evolved into one of objective reasonableness, designed to 'permit the resolution of many insubstantial claims on summary judgment.'" *Id. at 920 (quoting Harlow, 457 U.S. at 818)*.

The defense established in *Harlow* is "an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)* (emphasis in original). The breadth of the qualified immunity defense reflects [*8] the Supreme Court's concern not only with the cost of exposing government officials to civil liability but also with "the general costs of subjecting government officials to the risks of trial--distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Harlow, 457 U.S. at 816*. Because the qualified immunity defense is so broad, [HN6] police officers who are sued under *Section 1983* for arresting a person without probable cause can assert this defense if (1) it was objectively reasonable for the officer to believe that probable cause existed, or (2) officers of reasonable competence could disagree on whether the probable cause test was met. *See Robison, 821 F.2d at 913* (citing *Malley v. Briggs, 475 U.S. 335, 341 (1986))*; see also *Golino, 950 F.2d at 870*. Whether defendants are entitled to qualified immunity is ultimately a question of law for the court to decide. *See Finnegan v. Fountain, 915 F.2d 817, 821 (2d Cir. 1990)* (Oakes, C.J.).

The overwhelming [*9] weight of the evidence in this case establishes, at a minimum, that a reasonable officer could have believed there was probable cause to arrest the plaintiff after he had been transported to Poplar Street. It is undisputed that Officers Granucci and Zasciurinskas arrived at 288 Poplar Street and, with ample evidence to believe that a burglary had just taken place, observed a man exiting the house on Poplar Street. The officers took chase, and after losing sight of the fleeing suspect, stopped the plaintiff on Shelter Street, just a few blocks away from the scene of the burglary at 288 Poplar Street. The parties dispute the precise amount of time during which the officers lost sight of the fleeing suspect, but given the short distances testified to by all of the witnesses, the time could not have been very long. The officers then took the plaintiff into custody and transported him to Poplar Street, where he was identified by bystanders as one of two men who had been standing on the porch of the premises at 288 Poplar Street approximately a half hour earlier. Based on this set of facts, the officers could reasonably have believed that they had probable cause to arrest the plaintiff [*10] on Poplar Street.

The plaintiff has contended that he was placed under arrest not on Poplar Street but on Shelter Street, at the moment he was first taken into police custody. The record of this case, however, strongly indicates that the defendants' actions on Shelter Street could more properly be characterized as an investigatory stop, and it is clear that the officers had a reasonable and articulable suspicion sufficient to justify such a stop. *See Terry v. Ohio, 392 U.S. 1, 27 (1968)*. But even if this were not the case--even, that is, if the plaintiff was actually "arrested" on Shelter Street--the defendants would still be entitled to the qualified immunity defense. The defendants viewed the suspect at close range in the full light of day as he exited the premises on Poplar Street, they kept him in sight for some (if not all) of their brief chase, and they arrested the plaintiff after concluding that he bore a close physical resemblance to the suspect they had pursued. Even without the confirmation provided by the identification of the plaintiff by persons at the scene on Poplar Street, this evidence would be sufficient to justify a reasonable [*11] officer's conclusion that there was probable cause for the plaintiff's arrest on Shelter Street.

The plaintiff also asserts that the defendants lacked probable cause for his arrest because Ortiz and Acevedo informed the defendants on Shelter Street that the plaintiff was "the wrong man." The statements of Ortiz and Acevedo may have been effectively communicated to the three defendants; these statements may even have been truthful. But in the last analysis the [HN7] statements of Ortiz and Acevedo are simply immaterial to the issue of whether the police had probable cause for the plaintiff's arrest. Once police officers have probable cause to make an arrest, the officers have no affirmative duty to weigh conflicting versions of the alleged offense presented by the suspect or by passersby. *See Edwards v. Kittrell*, Civil No. N-87-108 (TFGD), slip op., at 4 (D. Conn. July 1, 1988) (Daly, C.J.) (officers who have probable cause have no duty to "question and weigh the suspect's version of the incident prior to making the arrest"); *see also Dirienzo v. United States, 690 F. Supp. 1149, 1157 (D. Conn. 1988)* (Dorsey, J.) (officers who have probable cause for [*12] arrest have no "affirmative duty to exhaust all possible avenues of investigation"). Consequently, it is clear that [HN8] in the case of an investigatory stop--which is a less significant infringement on a person's liberty than an arrest--the officers have no legal duty to entertain the protests of passersby if the officers have a reasonable and articulable suspicion that the person stopped has committed a crime. *See Terry, 392 U.S.*

at 27. Although we can now say with confidence that it would have been prudent for the officers to consider the views of Ortiz and Acevedo, the court finds no basis for concluding that due process required the officers to listen to these bystanders in the circumstances presented here.

Finally, a directed verdict is warranted with respect to Officer Krzeminski not only on the grounds stated above but also on the ground that his actions were taken in reliance on the representations of the other two officers. [HN9] A law enforcement officer can make an investigatory stop or an arrest based on the representations of other officers, without personal knowledge of the facts of the case. *See United States v. Hensley, 469 U.S. 221, 232-33 (1985)* [*13] (permissible for officers to make investigatory stop in reliance on "bulletin" provided by other police officers); *Brinegar v. United States, 338 U.S. 160, 176 (1949)* ("room must be allowed for some mistakes" by police officers due to ambiguous nature of arrest situations). There is no evidence here that Officer Krzeminski had reason to disbelieve the representations of the other two officers or to believe that the other officers had acted in bad faith, nor is there evidence that the facts as represented to Officer Krzeminski were insufficient to justify his conclusion that there was probable cause for the plaintiff's arrest. Consequently, even if we were to assume that Officer Krzeminski "arrested" or "detained" the plaintiff by transporting him to Poplar Street, there is no basis in the record for finding him liable on the false arrest claim.

II

The plaintiff's second constitutional claim is that the defendants violated the Due Process Clause by failing to ensure that he received necessary medication while he was in their custody. The plaintiff contends that this omission caused him to suffer an epileptic seizure while he was in the custody of [*14] state correctional authorities, approximately eighteen hours after he had left the custody of the defendants. The plaintiff's due process claim for denial of medical attention raises the following issues: (1) whether due process requires arresting officers to be accompanied by an interpreter who can understand and translate an arrestee's request for medication; (2) whether, in the absence of such a requirement, due process nevertheless required the defendants in this case to take steps that would have revealed the plaintiff's medical condition; and (3) whether, if the defendants here did have a duty to learn of the plaintiff's medical condition, the defendants' violation of that duty was a proximate cause of the plaintiff's injury.

A

The first issue to be considered is whether due process requires arresting officers to be accompanied by an interpreter who can understood and translate an arrestee's request for medication. In raising this issue, the plaintiff does not make the broad--and surely untenable--claim that all police officers should be accompanied at all times by persons capable of speaking all languages. It is apparent that the sheer number of languages spoken in this [*15] country is too great for such an obligation to be reasonable or enforceable. The plaintiff simply contends that in light of the ethnic composition of the City of New Haven, Connecticut, police officers have a constitutional obligation either to speak Spanish or to have available a Spanish-speaking interpreter when they arrest a Spanish-speaking suspect. This is a novel claim but not a wholly unreasonable one, since [HN10] non-English-speaking persons do have a constitutional right to an interpreter in a variety of contexts when they come into contact with government authorities. Even so, the court finds that the right claimed by the plaintiff is not supported by the Due Process Clause.

Broadly speaking, [HN11] the Due Process Clause requires governments to provide interpretation for persons whose inability to speak English would--in the absence of an interpreter--prevent them from asserting certain constitutional or statutory rights. The most obvious example arises in the case of non-English-speaking criminal defendants: such defendants must have the assistance of an interpreter because without an interpreter the defendants could not fully exercise the right to confront witnesses and to assist [*16] in the preparation of a defense. *See United States ex rel. Negron v. New York, 434 F.2d 386, 390 (2d Cir. 1970)* (holding that a court, when put on notice of a criminal defendant's severe language difficulty, must clearly inform him "that he has a right to have a competent translator assist him, at state expense if need be, throughout his trial"). Following the same rationale, the Court of Appeals has held that due process requires the federal government to provide interpreters in other situations where the assistance of an interpreter is required for the effective exercise of a constitutional rights. *See Augustin v. Sava, 735 F.2d 32, 37 (2d Cir. 1984)* (due process requires immigration officials to provide interpretation for persons seeking to avoid deportation on grounds of persecution in home country). [1]

  1  The *Negron* rationale might also apply in situations where the absence of an interpreter would prevent a non-English-speaking person from exercising a *statutory* right. *See Zamora v. Local 11, Hotel Employees and Restaurant Employees International Union, 817 F.2d 566, 569-70 (9th Cir. 1987)* (statute requiring "equal rights" for all union members requires that interpreters be provided for non-English-speaking members at monthly union meetings).

Case 3:02-cv-00691-CFD   Document 127-2   Filed 08/03/2007   Page 8 of 10

1993 U.S. Dist. LEXIS 3264, *                                                                      Page 8

[*17] Requiring that interpreters be provided not only during trials and pre-trial proceedings but also at the scene of an arrest would substantially expand the protection afforded by the Due Process Clause. In considering whether this expansion of defendants' due process rights is justified, it bears noting that requiring interpreters to be available at the scene of an arrest would raise significant practical and legal difficulties. First, police departments would face the considerable expense of hiring interpreters to accompany officers on patrol, since officers are often required to make arrests on short notice. In addition, police departments would be required to determine the languages for which interpretation should be provided, since it would be impossible to provide on-the-scene interpretation in all languages. These difficulties, by themselves, suggest that it is unlikely that the Due Process Clause requires law enforcement officials to provide an interpreter for a non-English-speaking suspect at the scene of an arrest.

Even if the difficulty of providing interpretation at the scene of an arrest is surmountable, there is another--more important--reason to conclude that the [*18] right claimed by the plaintiff is not supported by the Due Process Clause. The plaintiff has simply not shown that the absence of an interpreter at the arrest scene prevents an arrestee from exercising any constitutional right that he may have. As noted earlier, [HN12] an arrestee does not have a constitutionally protected right to engage the arresting officers in a discussion about the grounds for his arrest. See Edwards, slip op., at 4 (officers who have probable cause have no duty to "question and weigh the suspect's version of the incident prior to making the arrest"). Moreover, the arresting officers do not have a constitutional obligation to inform the arrestee of the precise nature of the charges against him at the time of the arrest. See Kladis v. Brezek, 823 F.2d 1014, 1018 (7th Cir. 1987) (holding that there is no constitutional right to be informed of the reason for an arrest); United States ex rel. LaBelle v. LaVallee, 517 F.2d 750, 754 (2d Cir. 1975) (holding that the validity of an arrest may be upheld based on probable cause to arrest for a crime other than the alleged crime stated by the arresting officer), [*19] cert. denied, 423 U.S. 1062 (1976). [HN13] In the absence of a constitutional right that entitles an arrestee to communicate with the arresting officers, the absence of an interpreter at the moment of arrest does not constitute a violation of due process.

Finally, it should be noted that an arrestee's *Miranda* rights do not themselves give an arrestee the right to an interpreter. The courts have generally held that *Miranda* warnings are not effective if they are not provided in the language of the arrestee. See, e.g., United States v. Bernard S., 795 F.2d 749, 751-53 (9th Cir. 1986) (finding that defendant understood *Miranda* warnings in English, despite fact that his first language was Apache); see also United States v. Heredia-Fernandez, 756 F.2d 1412, 1415 (9th Cir.), cert. denied, 474 U.S. 836 (1985) (holding that language difficulties may impair arrestee's ability to waive *Miranda* rights). But these cases do not create a right to have an interpreter at the point of arrest: they simply state the sensible proposition that *Miranda* warnings [*20] are effective only if they are understood by the arrestee. [HN14] The failure to provide an arrested person with a *Miranda* warning in his own language might therefore render the arrestee's subsequent statements inadmissible on grounds that he had not knowingly waived his rights under the *Fifth* and *Sixth Amendments*. But the failure to provide an interpreter would not, in itself, constitute a violation of the arrestee's constitutional rights. See Bennett v. Passic, 545 F.2d 1260, 1263 (10th Cir. 1976) (police officer has no civil liability for a failure to provide a *Miranda* warning); see also Michigan v. Tucker, 417 U.S. 433, 444 (1974) (arrestees have no constitutional right to receive *Miranda* warnings, because such warnings are simply measures designed to prevent violations of other rights).

In sum, the defendants were not required by the Due Process Clause to be accompanied by an interpreter at the moment of the plaintiff's arrest. In the absence of any such obligation, there is no basis for finding that the defendants violated the plaintiff's due process rights in failing to provide an interpreter capable of [*21] translating the plaintiff's request for medication.

B

The next issue to be considered is whether, in the absence of a duty to provide an interpreter, the defendants nevertheless had a duty to take steps that would have revealed the plaintiff's need for medication. The plaintiff asserts that due process required the defendants (1) to rely upon bystanders to translate the plaintiff's requests for assistance and (2) to examine the medical card in the plaintiff's wallet, which stated in English that the plaintiff is an epileptic. Each of these claims is without merit.

(1)

The plaintiff has contended that, even if the officers had no general duty to provide an interpreter, the officers did have a duty to take advantage of the interpretation services offered by passersby--in this case, Ortiz and Acevedo. The plaintiff draws no authority to the court's attention to support the novel proposition that police officers making an arrest have a duty to rely upon bystanders who are strangers to them to serve as interpreters. There is substantial reason to doubt that this proposition could be the law. There are certainly circumstances in which bystanders can usefully assist police officers [*22] by acting as interpreters, and there may even be occa-

sions in which police officers' duty of care or prudence requires them to take advantage of interpretation services offered by persons known to them who happen to be at the scene of an arrest. But in light of the special dangers that arise during a chase and arrest of a criminal suspect, the court cannot conclude that the police have a legal duty to rely upon bystanders who are strangers to them for assistance in communicating with a person whom the officers are chasing and are about to place under arrest.

(2)

The plaintiff also claims, in the alternative, that the officers had a duty to discover the card in his wallet which indicated that he is an epileptic. The plaintiff has not presented evidence from which it could be concluded that the defendants knew or should have known that his wallet contained a card indicating in English that he was an epileptic. The plaintiff might have a valid claim if he argued that he had presented the card to the officers; indeed, the presentation of the card would have been a simple and effective means of overcoming the language barrier that the plaintiff faced. The plaintiff might also have [*23] a valid claim if he argued that he displayed some sign of physical distress, or some other need for medication, at the time he was in the defendants' custody. But in the absence of such allegations, there simply is no basis for concluding that the officers had any reason to know that the plaintiff was carrying a card with medical information in his wallet. Consequently, the defendants had no duty to search the plaintiff's wallet or to examine the plaintiff's medical card at the scene of the arrest.

C

The final issue to be considered is whether, if the defendants did have a duty to learn of the plaintiff's medical condition, the defendants' violation of that duty was a proximate cause of the plaintiff's injury. The overwhelming evidence in the record establishes that the defendants did not proximately cause or contribute to the plaintiff's epileptic seizure. As noted earlier, the plaintiff arrested the plaintiff and held him in custody for a short time before transferring him to *other New Haven police officers* for processing at police headquarters. The plaintiff was then transferred, within hours of his arrest, to the custody of Connecticut correctional officials. In light [*24] of this undisputed evidence, there is simply no basis for concluding that the officers' failure to provide epilepsy medication for the plaintiff while he was in their custody contributed to the epileptic seizure that he suffered eighteen hours later while in the custody of state correctional authorities. Moreover, there is no evidence to support the conclusion that the defendants were in any way responsible for any dereliction of duty by the non-party police officers who "processed" the plaintiff or by the non-party correctional officials who later held him in custody. For these reasons, I find no grounds on which the defendant officers could be held liable for any damages caused by the epileptic seizure that the plaintiff suffered while in state custody.

III

The plaintiff's final constitutional claim is that the officers had a duty to apprise him of the nature of the charges against him in Spanish either directly or through an interpreter. Here again, there is a difference between the policy that is desirable and what the law requires. As noted earlier, the weight of existing authority indicates that [HN15] at the moment of arrest the police have no duty to apprise a defendant of the [*25] precise nature of the charges against him. *See Kladis, 823 F.2d at 1018* (holding that there is no constitutional right to be informed of the reason for an arrest); *LaBelle, 517 F.2d at 754* (holding that the validity of an arrest may be upheld based on probable cause to arrest for a crime other than the alleged crime stated by the arresting officer). Inasmuch as there is no legal duty to be informed of the specific reason for an arrest *in English,* there can be no legal duty to provide foreign language interpretation to apprise a defendant of the precise nature of the charges against him at the time of his arrest and incarceration--even though a defendant who does not speak English surely has a right to foreign-language interpretation in court proceedings, during police interrogations, and in any situation involving the waiver of his rights. Finally, even if the plaintiff had a constitutional right to be apprised of the precise nature of the charges against him in Spanish at the time of his arrest, it is unlikely that a violation of that right would result in civil liability for the officers. *Cf. Bennett, 545 F.2d at 1263* [*26] (holding that a police officer has no civil liability for a failure to provide a *Miranda* warning).

IV

I now turn to the plaintiff's state law claims. The plaintiff has pressed claims for false imprisonment, for malicious prosecution, and for negligence under Connecticut common law. Each of these claims is without merit.

The parties have agreed that the defendant [HN16] officers would have a complete defense to the false imprisonment claim if the arrest complied with *Conn. Gen. Stat. § 54-1f(b).* That statute provides that police officers shall arrest "any person who the officer has reasonable grounds to believe has committed or is committing a felony." The Court of Appeals has held that [HN17] a state common law claim for false imprisonment is essentially the same as a claim for false arrest under *Section 1983. See Posr v. Doherty, 944 F.2d 91, 95-96 (2d Cir. 1991); Raysor v. Port Authority of New York and New Jersey, 768 F.2d 34, 39 (2d Cir. 1985).* Accordingly, the

qualified immunity that the court found with respect to the plaintiff's claim for false arrest under *Section 1983* applies with equal force to the plaintiff's false [*27] imprisonment claim. Indeed, qualified immunity with respect to federal claims was adopted from the common law. *See, e.g., Harlow, 457 U.S. at 807*. Accordingly, the plaintiff's false imprisonment claim must fail on grounds of qualified immunity for the reasons outlined earlier with respect to the plaintiff's claim for false arrest under *Section 1983*.

At the hearing in which the court questioned plaintiff's counsel as to which claims were being pressed in this case, plaintiff's counsel stated that the plaintiff's [HN18] claim for malicious prosecution would fail if there were probable cause for his arrest. Since this common law claim is also subject to the officers' defense of qualified immunity, and since the court has already found that a reasonable police officer could have believed he had probable cause to arrest the plaintiff in the circumstances presented to defendants, the plaintiff's malicious prosecution claim fails as well.

The plaintiff's claim for negligence is based on the defendants' failure to provide medical care while the plaintiff was in their custody. As noted earlier, the plaintiff has not presented evidence from which it could be [*28] concluded that the defendants knew or should have known that he is an epileptic: he has not testified that he showed the officers the wallet card which described his medical condition, nor has he testified that he displayed any sign of physical distress or any other sign that he needed medication while he was in the defendants' custody. In the absence of such testimony, there simply is no basis for concluding that the officers knew or had reason to know that the plaintiff needed medication while he was in the defendants' custody. Consequently, the defendants had no duty to give the plaintiff medication while he was in their custody. Moreover, even if the defendants did have such a duty, the plaintiff's negligence claim would still fail because the overwhelming weight of the evidence demonstrates that the defendants' failure to provide medical treatment was not a proximate cause of the plaintiff's seizure.

*CONCLUSION*

To summarize:

(1) police officers may have probable cause for an arrest even where a state prosecutor later dismisses the criminal charges against the arrestee, because the prosecutor is able to consider information not available to the officers at the arrest [*29] scene;

(2) [HN19] police officers can rely on the defense of qualified immunity with respect to the plaintiff's false arrest claim where a reasonable police officer could have concluded that there was probable cause to arrest the plaintiff;

(3) [HN20] due process does not require police officers to be accompanied at the scene of an arrest by interpreters capable of speaking the language of the arrestee, because the absence of an interpreter does not prevent the arrestee from exercising any constitutional or statutory right that he may have;

(4) for the same reason, [HN21] due process does not require police officers to rely upon interpretation services volunteered by persons at an arrest scene, particularly where the persons are unknown to the police officers;

(5) [HN22] due process does not require police officers to provide medical care to an arrestee in the absence of some indication by the arrestee--through words, actions, or apparent physical symptom--that he needs such care;

(6) [HN23] even where due process does require police officers to discern the arrestee's need for medical care, the officers are not subject to civil liability for failing to provide that care if their omission does not proximately cause [*30] the arrestee's injury;

(7) [HN24] due process does not require police officers to apprise an arrestee of the precise nature of the charges against him, even where the arrestee speaks English; *a fortiori*, police officers are not required to apprise an arrestee of the precise nature of the charges against him in languages other than English;

(8) [HN25] false imprisonment and malicious prosecution claims under state law must fail where the defendants are entitled to assert a qualified immunity defense to false arrest claims under the Due Process Clause; and

(9) [HN26] negligence claims against police officers for failure to provide medical care must fail where the plaintiff has not shown that the officers knew or should have known of the need for care and where the plaintiff has not shown that the failure to provide care proximately cause the alleged injury.

For all the foregoing reasons, the defendants' motion [*31] for a directed verdict in their favor is GRANTED.

It is so ordered.

Dated at New Haven, Connecticut, this 12th day of March, 1993.

Jose A. Cabranes

Chief Judge