LEXSEE 1994 CONN. SUPER. LEXIS 1412


Cited
As of: Aug 02, 2007

PHILIP H. PARIS v. NORTHEAST SAVINGS F.A.

NO. CV 910398144

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF HARTFORD - NEW BRITAIN, AT HARTFORD

1994 Conn. Super. LEXIS 1412

June 1, 1994, Decided

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant ex-employer filed a summary judgment motion in plaintiff ex-employee's action alleging that his discharge from employment constituted breach of an express contract, breach of an implied covenant of good faith and fair dealing, negligent misrepresentation, and breach of an implied contract.

**OVERVIEW:** The ex-employer, a bank, hired the ex-employee as a vice president and branch manager, but fired him after less than two weeks. The ex-employee filed an action, and the ex-employer filed a summary judgment motion, which the court granted in part and denied in part. The parties' agreement of the ex-employee's compensation for the first six months and thereafter did not constitute an express six-month employment contract, and the ex-employer did not make any representation to the contrary. The ex-employee raised a question of fact on his claims for breach of an implied contract and breach of the duty of good faith and fair dealing based on termination procedures in an employment manual, despite its disclaimer language, because he alleged that employees were informed of and relied upon the procedures. The ex-employee's claims were not pre-empted by 12 CFR § 563.39, a regulation requiring savings associations to enter only written employment contracts that have been approved by its board of directors.

**OUTCOME:** The court granted the ex-employer's summary judgment motion as to the ex-employee's claims for breach of an express contract and negligent misrepresentation. The court denied the summary judgment motion as to the ex-employee's claims for breach of an implied contract and for breach of an implied covenant of good faith and fair dealing and as to the ex-employer's special defense.

**CORE TERMS:** manual, summary judgment, employment contract, salary, termination, personnel, supervisory, express contract, distributed, terminated, at-will, implied contract, fair dealing, factual issue, disclaimer, definite, savings, progressive discipline, covenant of good faith, cause of action, disciplinary, contract of employment, vice president, deposition testimony, terminable, preemption, duration, revised, binding, preempt

**LexisNexis(R) Headnotes**

*Labor & Employment Law > Employment Relationships > At-Will Employment > Duration of Employment*
*Labor & Employment Law > Employment Relationships > Employment Contracts > General Overview*
[HN1] An annual salary term in a contract does not create a contract for a definite duration. In the absence of

facts and circumstances which indicate that the agreement is for a specific term, an employment contract which provides for an annual rate of compensation, but makes no provision for the duration of employment, is not a contract for one year, but is terminable at will by either party.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Labor & Employment Law > Employment Relationships > Employment Contracts > General Overview*
[HN2] The existence of a personnel manual claimed to create a contractual relationship does not automatically create a question of fact that precludes summary judgment. In this case the threshold question is whether, interpreting all inferences in a light most favorable to the employee, the manuals created by the employer could be found to give rise to an enforceable contract. On a motion for summary judgment, this is a question of law for the court.

*Labor & Employment Law > Employment Relationships > Employment Contracts > General Overview*
[HN3] The mere fact that an employee believes that an employee manual constituted a contract does not bind the employer without some evidence that it intended to be bound.

*Contracts Law > Formation > Offers > General Overview*
*Labor & Employment Law > Employment Relationships > Employment Contracts > Conditions & Terms > General Overview*
[HN4] If an employment manual is distributed only to supervisory personnel it cannot be said to have been communicated to an employee as part of an offer of terms of employment thus establishing a binding contract. However, if in fact manuals with disclaimer language were distributed to employees or the latter were led to believe they had rights to certain procedures set forth in the manual by a course of conduct or verbal representations by management the protections sought to be given employers through disclaimer language should not be held to apply.

*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN5] In a motion for summary judgment the evidence must be construed in a light most favorable to the non-movant.

*Contracts Law > Types of Contracts > Covenants*
*Labor & Employment Law > Employment Relationships > At-Will Employment > Duration of Employment*
*Labor & Employment Law > Employment Relationships > At-Will Employment > Exceptions > Public Policy*
[HN6] The doctrine of implied covenant of good faith and fair dealing does not convert an at-will employment into one terminable only for cause. In such an employment a breach of the implied covenant must be based on an impropriety derived from some important violation of public policy.

*Contracts Law > Defenses > Public Policy Violations*
*Contracts Law > Types of Contracts > General Overview*
*Labor & Employment Law > Wrongful Termination > Breach of Contract > Employer Handbooks*
[HN7] An employer's policy of progressive discipline, once established, changes the employer's otherwise unfettered right to discharge an employee at any time and without cause, and creates an expectation on the part of the employee that the policy will be followed. The fact that an employee is not hired for a definite period of time does not mean that under certain circumstances an implied contract of progressive discipline will not be held to apply to the relationship.

*Torts > Business Torts > Fraud & Misrepresentation > Negligent Misrepresentation > General Overview*
[HN8] For the claim of negligent misrepresentation to lie, two conditions must be met: (1) there must be a false representation of fact, and (2) there must be sufficient evidence of reliance on the false representation.

*Banking Law > Federal Acts > Home Owners' Loan Act*
*Banking Law > Regulatory Agencies > U.S. Office of Thrift Supervision*
*Labor & Employment Law > Employment Relationships > General Overview*
[HN9] Regulations governing federal savings associations chartered under the Homeowners Loan Act of 1933 have been promulgated pursuant to federal statute by the Office of Thrift Supervision. These regulations are codified at *12 C.F.R. § 545.1 et seq.* Such regulations have the force and effect of statute. *12 C.F.R. § 563.39* provides that a savings association may enter into an employment contract with its officers and other employees only in accordance with the requirements of this section.

All employment contracts shall be in writing and shall be approved specifically by an association's board of directors.

*Banking Law > Federal Acts > Home Owners' Loan Act*
*Labor & Employment Law > Employment Relationships > General Overview*
*Labor & Employment Law > Wrongful Termination > Breach of Contract > Employer Handbooks*
[HN10] 12 C.F.R. § 563.39 is simply an expression of policy instructing member institutions that if they do contract formally with certain employees, that it must be in writing, authorized by its board, etc., etc. There is nothing to even suggest that the board intended that the vast number of employees who have no formal contracts with such institutions be precluded from claiming reliance on a work manual which outlines specific steps for performance related terminations.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN11] Concurrent state court jurisdiction should be presumed unless federal statutory or regulatory law expressly vests jurisdiction in the federal courts or preempts state causes of action.

**JUDGES:** Corradino

**OPINION BY:** CORRADINO

**OPINION**

*MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT*

The defendant has filed a motion for summary judgment as to each of the counts of the plaintiff's revised complaint. He was an employee of the plaintiff who was discharged. He alleges breach of express contract, breach of an implied covenant of good faith and fair dealing, negligent misrepresentation, and breach of an implied contract.

The defendant claims it is entitled to summary judgment because there is no genuine issue as to material facts and it is entitled to summary judgment as a matter of law. *Michaud v. Gurney,* 168 Conn. 431, 433, 362 A.2d 857 (1975); *Lees v. Middlesex Insurance Co.,* 219 Conn. 644, 650, 594 A.2d 952 (1991).

I.

The first count of the plaintiff's complaint alleges a breach of a contract between the plaintiff and the defendant Northeast Savings F.A. In his revised complaint at paragraphs 7 and 8 the plaintiff alleges that he was offered the position of Vice President and Branch Manager [*2] of the Farmington Valley Mall branch. He claims the terms offered and accepted by him were for a base salary of $ 75,000 for a six month period plus incentives and commissions. There would be a reduced annual base salary of $ 60,000 to commence after the first six months. Incentives and commissions were to be based on mortgage volume closed by eleven retail branches. There was to be a car allowance of $ 500 per month and mobile telephone expenses.

In paragraph 7 of the plaintiff's affidavit as in the complaint, it is stated the executive vice president Mr. Strickland communicated these terms to the plaintiff. The affidavit can be read as representing that during the discussions with Strickland, Paris was told or led to understand that the salary for the first six months was set at the higher figure of $ 75,000 in order to permit the plaintiff to develop and increase the mortgage volume in the territory. The salary would be reduced to $ 60,000 after the first six month period based on the assumption that by then he would have had sufficient time to increase the volume so that his commissions would offset the salary decrease.

These appear to be the facts before the court on this [*3] issue. As noted in paragraphs 7 and 8 of his revised complaint, the plaintiff sets out the terms of compensation. In paragraph a, simply referring to those terms as specifically set out in paragraph 8, the plaintiff alleges "the promises described above created a reasonable expectation that . . (he) would be employed . . . for a terms of at least six months."

Given the way the plaintiff has framed the issues and even allowing consideration of paragraph 7 of his affidavit, further explaining the terms of the agreement and why it was structured in the way it was, it is difficult to see why the court cannot determine whether a motion for summary judgment should not be considered.

The defendant grounds its motion for summary judgment as to this count on the argument that based on the undisputed facts all that was involved here was an indefinite general hiring terminable at will and that the fact that compensation was determined by reference to a time period does not create a contract of employment for that time period.

The defendant does not appear to deny that all the facts regarding the compensation terms or the offer made to him prior to beginning work are not before the court. He [*4] makes broad allegations that "the question of whether a contract has been formed, and what its terms include, must be left to the jury to resolve." - "summary judgment is particularly inappropriate where inferences

relating to questions of motive or intent are at issue . . . therefore whether the parties in this case had formed a contract for a definite duration, and what that duration was, are questions of fact which must be resolved by a jury." But more than conclusive allegations in the pleadings or the plaintiff's belief in the permanence of employment for a fixed period are necessary to raise a material issue of fact precluding summary judgment.

Since the very words that the plaintiff claims led to the formation of an express contract - the terms of compensation - are not in dispute, it is difficult to see why the court cannot decide as a question of law whether in fact an express contract existed. Cases cited by the plaintiff do not seem on point. In *Finley v. Aetna Life & Casualty Co., 202 Conn. 190, 199, 520 A.2d 208 (1987)* it was held that statements in a policy manual were of critical relevance as to whether an express contract existed. In the absence of "definitive [*5] contract language" the court held the determination of what the parties intended to encompass in their contractual commitments is a question of the parties' intention and an inference of fact. None of this is involved here - the language determinative of whether an express contract for at least six months employment is undisputed. Inferences to be drawn or not drawn from that language present legal questions having to do with the issue of contract formation. Similarly *Szczepanik v. NE Utilities Service Co., 1 CSCR 629* was an employee's claim of breach of an implied covenant of good faith and fair dealing and turned on whether personnel policies and procedures could be said to give the employee protection. The court denied summary judgment and relied on *Finley. Cogan v. Avco Lycoming, 7 CSCR 834* was also a wrongful discharge case and to counter the contention that she was an at-will employee in a summary judgment action the plaintiff placed before the court an employer's handbook which she claimed gave her a right to a disciplinary hearing before discharge. She submitted affidavits to the effect that employers relied on this document and the court said "mixed signals from employer [*6] to employee in employee handbooks can also raise a question of fact about reasonable employee expectations," id. page 385. On this basis, the court denied summary judgment for the employer. Again, unlike the instant case, factors apart from anything to do with the actual agreement to employ were involved which the worker claimed gave her rights beyond that envisaged in the ordinary at-will situation, that is not the situation here.

Interestingly, when the plaintiff attempts to refute the position taken by the defendant as to this count, he confines himself to a thorough analysis of the terms of the compensation agreement itself and what he feels its legal implications are in defining the actual terms of employment. This underlines the fact that the issues raised by the motion as to the first count can be resolved as a legal question by the court.

Also, several courts have felt it appropriate to decide summary judgment motions on their merits where the issue was the effect of language concerning the rate or terms of compensation on the employee's status as an at-will employee, *Greco v. Hartford Courant Co., 8 CSCR 219, 220 (1993); Sullivan v. Heritage Foundation, et al,* [*7] *399 A2d 856, 859 (D.C.CA., 1979), Anselmo v. Manufacturers Life Ins. Co., 595 F. Supp. 541, 547 (D.C. Mo., 1984).*

Turning to the merits, the plaintiff seems to concede, as it must given the case law, that [HN1] "an annual salary term in a contract does not create a contract for a definite duration" *Henkel v. Educational Research Council of America, 45 Ohio St. 2d 249, 344 NE2d 118, 119 (Oh., 1976).*

> "The modern rule is that in the absence of facts and circumstances which indicate that the agreement is for a specific term, an employment contract which provides for an annual rate of compensation, but makes no provision for the duration of employment, is not a contract for one year, but is terminable at will by either party."

The court went on to say, further explaining its reasoning, that:
> "It is our conclusion having reviewed all the evidence in this record that the employment agreement between the appellee (employee) and the Research Council did not specify a period of time, but rather a rate of salary, and as such was terminable at will by either party." (Id.)

Also see *Sullivan v. Heritage Foundation, et al, 399 A2d 856, 860 (D.C. CA., 1979),* [*8] *In Re Tyson, 109 A.D.2d 1068, 487 NYS2d 206, 208 (1985), Freeman v. Hardee's Food Systems, Inc., 3 N.C. App. 435, 165 S.E.2d 39, 41-42 (N.C. 1969).*

The plaintiff who, as noted, recognizes this general rule argues, however, that "the unique structure of this employment agreement sets the case apart from the decision relied upon by the defendant, distinguishing it and creating issues of fact."

What is so "unique" about this particular agreement as to take it out of the general rule previously discussed by the court is hard to fathom. The plaintiff argues, in

effect, that by giving him a higher base salary for the first six months he would have time to build up his commissions and stabilize his income despite the projected cut in his guaranteed salary after the first six months. Exactly, but how does this so-called "unique" arrangement set out anything more than the overall terms which will establish this salary while he works for the defendant? If it does nothing more than that, the agreement is no more that a hire at will situation.

In every case where compensation is in whole or in part determined by bonuses or commissions, neither party can at the time employment commences [*9] exactly determine what the compensation will be.

The plaintiff seeks to frame the discussion as if the whole purpose of the type of compensation agreement involved in this case was to give him a higher initial salary for six months so that during that period he could develop his commissions and stabilize his income. But hiring the plaintiff was not a charitable venture on the part of the defendant. Obviously, the benefit to the defendant employer in these types of agreement depends on the business someone in the plaintiff's position can generate. The twenty percent salary drop after the first six months is meant as a major incentive to the employee to start producing as quickly and efficiently as possible. But to say a staggered compensation rate like this one creates a binding contract for the initial compensation period is not required to promote either the fairness or efficiency of such arrangements.

This is not a case where for example the plaintiff was guaranteed a minimum amount of compensation for the first six months or for any period thereafter, cf *Cramer v. Valve & Primer Corp., 47 Ill. App. 3d 152, 361 NE2d 863, 865, 5 Ill. Dec. 540 (Ill. 1977)*. The plaintiff and defendant [*10] did agree to a straight-forward and clear method to determine the plaintiff's compensation the first six months and thereafter. But despite this there is no explicit language in the agreement indicating that the plaintiff has a binding six month employment contract. As said in one early case, "It seems reasonable that, if (both parties) had so intended, they would have expressed themselves in more definite and explicit terms on so important feature of their agreement." *Edwards v. Seaboard & RR, 121 N.C. 490, 28 SE, 137* (N.C., 1897).

The defendant's brief also notes that the court in *Henkel v. Educational Research Council of America, 334 NE2d at page 123* relied on the deposition testimony of the employee as an indication the worker also realized that he did not have a binding contract of employment for a set period of time. Much of this deposition testimony is countered by the plaintiff Paris's affidavit, however, so the court will not base its decision on the Paris deposition. However, for the reasons previously stated, it does feel constrained to grant the motion for summary judgment as to the first count.

II.

The plaintiff claims in count 4 an implied contract of employment [*11] was formed by provisions in a manual setting forth a progressive disciplinary procedure. It is undisputed that the plaintiff was fired without this type of disciplinary procedure. Count 4 states:

"13. The defendant maintains a policy and practice of providing employees with progressive discipline in order to attempt to correct performance problems prior to termination. More specifically, the policy requires that, absent gross misconduct necessitating immediate discharge, the following steps must be taken before an employee is terminated: verbal consultation, verbal warning, and formal written warning.

14. The progressive discipline policy created a reasonable expectation that the plaintiff's employment would not be terminated for job performance-related reasons without first being afforded notice of any such problems and an opportunity to improve."

There is a policy manual issued by the defendant that does set up such a disciplinary procedure.

The defendant argues, however, that summary judgment should be granted in its favor on this count because of two factors. For one thing, there is an explicit statement in the manual that it is not intended as a contract of employment and [*12] the manual is characterized as a guide to management to "provide consistent guidelines" to management staff.

The defendant refers to *Owens v. American National Red Cross, 673 F. Supp. 1156, 2 IE R 1145 (D. Conn. 1987)* where it says:

> . . . "it is clear that [HN2] the existence of a personnel manual claimed to create a contractual relationship does not automatically create a question of fact which precludes summary judgment. In this case the threshold question is whether, interpreting all inferences in a light most favorable to plaintiff, the manuals created by (the defendant) could be found to give rise to an enforceable contract. On a motion for summary judgment, this is a question of law for the court." *Id. at page 1152*.

The court cites *Finley v. Aetna Life & Casualty Co., 202 Conn. 190, 199, 520 A.2d 208* (footnote 5). The defen-

dant also refers to the language of this footnote in pressing its motion on this count given the disclaimer language in the manual. The *Finley* court said:

> "By eschewing language that could reasonably be construed as a basis for a contractual promise or by including appropriate disclaimers of the intention to contract, employers [*13] can protect themselves against employee contracting claims based on statements made in personnel manuals."

According to the *Finley* court, this would prevent making every termination a potential jury trial whenever a claim is made that an employment manual creates a contract.

In fact, the defendant cites several cases where summary judgment has been granted to the defendant employer when a purported contract was based on language in an employee manual expressly disclaiming an intent to form a contract, *McClean v. Derby Savings Bank*, 8 CSLR 277 (1993), *Dellipoali v. DHL Airways, Inc.*, 8 CSCR 653 (1993). [HN3] The mere fact that the plaintiff believed that the employee manual constituted a contract does not bind the defendant employer without some evidence that it intended to be bound. *Christensen v. BIC Corporation, 18 Conn. App. 451, 458, 558 A.2d 273 (1989)*.

The manual here indicates it was distributed only to supervisory personnel for their use and an affidavit of a vice president of the defendant corporation states the manual was "distributed only to management and supervisory personnel." All of this has been taken by the cases as an indication that the defendant [*14] employer did not intend to be bound by the contents of the manual, see *Christensen v. BIC Corp.* 6 CSCR 650, 651 (1991), *Owens v. American National Red Cross, 2 IER at page 1152*. Another way of stating the same proposition is that [HN4] if the manual is distributed only to supervisory personnel it cannot be said to have been communicated to an employee as part of an offer of terms of employment thus establishing a binding contract, *Skramstad v. Otter Tail County, 417 N.W.2d 124, 2 IER 1463, 1465 (Minn. App. 1987)*, *Tobias v. Montgomery Ward & Co., Inc., 362 NW 2d 380, 381, 382 (Minn. 1985)*.

There is, however, an issue presented by this case which does not seem to have been precisely dealt with in prior Connecticut cases. That is, where a manual, distributed to only supervisory personnel, contains all the disclaimers and also appropriate language saying it is for supervisory personnel use a la *Finley* does that conclusively entitle a defendant employer to summary judgment? Can counter affidavits or deposition testimony raise a factual issue by alleging that in fact the manual was distributed to all employees and they were led to believe they had the rights set forth in [*15] the manual? By indirection some of the cases indicate that a factual issue can be so raised. cf. *Markguaf v. Hospital Equity Investors, Inc.*, 8 CSCR 277 278 (1983), also see *Hood v. Mercedez-Benz Credit Corp.*, 6 CSCR 650, 651. In fact cases have held that if such manuals were distributed to employees a factual issue precluding summary judgment is raised. *Cogan v. Avco Lycoming*, 7 CSCR 384 (1992), *Szeczcpamiz v. NE Utilities Service Co.*, 1 CSCR 629 (1986), also see *Owens v. American National Red Cross, supra at page 1152*, also cf *McDonald v. Mobil Coal Producing, Inc., 820 P2d 986, 989, 991 (Wyo, 1991)*. If in fact manuals with disclaimer language were distributed to employees or the latter were led to believe they had rights to certain procedures set forth in the manual by a course of conduct or verbal representations by management the protections sought to be given employers through disclaimer language should not be held to apply. See *Finley v. Aetna Life and Casualty Co., 202 Conn. 190, 199, 520 A.2d 208* (ftnote 5). Given the unequal positions of employer and employee and the fact that the manual, its distribution and representations by management regarding [*16] its applicability are completely under management control, applying the language of *Finley* to insulate employer's from jury trials in such circumstances would encourage deceptive practices and leave employees in total confusion about their rights.

The question remains, however, whether in fact the plaintiff has raised a sufficient factual issue despite the disclaimer language to avoid summary judgment. [HN5] In a motion for summary judgment the evidence must be construed in a light most favorable to the non-movant, *Evans Products Co. v. Clinton Building Supply, Inc., 174 Conn. 512, 516, 391 A.2d 157 (1978)*.

This case is somewhat unique also in that as a supervisory employee the plaintiff was given a copy of the manual. Paris states and two former supervisory employees of the defendant by affidavit claim that as supervisors they were explicitly led to understand that the procedures set forth in the manual had to be applied in all termination cases. This would not benefit the plaintiff in any implied contract theory if the employees were not informed of this supervisory practice on commencement of employment.

However, although it is a close question, the court believes the deposition [*17] testimony of Mr. Paris raises a factual issue as to the issuance of this manual or more exactly as to employee access to it and therefore reliance on its protection. The court feels the motion for summary judgment as to the fourth count should be de-

nied on what is admittedly a tenuous but legally relevant factual claim.

III.

In count two, the plaintiff alleges that the defendant arbitrarily terminated his employment without just cause and without prior notice or warning. The plaintiff claims the defendant thereby acted in bad faith and breached its duty of good faith and fair dealing.

The defendant is correct in arguing that [HN6] the doctrine of implied covenant of good faith and fair dealing does not convert an at-will employment into one terminable only for cause. *Magnan v. Anaconda Industries, Inc.*, 193 Conn. 558, 569, 479 A.2d 781 (1985).

In such an employment a breach of the implied covenant must be based on an "impropriety . . . derived from some important violation of public policy, *id.* at page 572, cf. *Carbone v. Atlantic Richfield Co.*, 204 Conn. 460, 470-471, 528 A.2d 1137 (1987).

It is also true that earlier in this opinion the court rejected the plaintiff's claim [*18] that in this case there was an express contract of employment for a definite term. Thus, the plaintiff cannot claim his employment under such a contract could only be terminated for just cause since it was an at-will employment.

Although the plaintiff's brief raises the argument more clearly than count two of his pleadings, - which probably should have been tested by a request to revise - there is a reason why the court should not grant a motion for summary judgment as to this count. The court has already determined that there is an issue of fact - tenuous though it may be - as to whether an implied contract of employment was formed adopting the provisions of the manual providing for progressive discipline before termination. Judge Hammer's reasoning in *Munson v. United Technologies Corporation*, 4 CSCR 748, 749 (1989) then becomes applicable. He noted:

> [HN7] "An employer's policy of progressive discipline, once established, changes (the employer's) otherwise unfettered right to discharge an employee at any time and without cause, and creates an expectation on the part of the employee that (that) policy will be followed."

The fact that an employee is not hired for a definite [*19] period of time does not mean that under certain circumstances an implied contract of progressive discipline will not be held to apply to the relationship. In *Munson* the court denied a motion to strike a count alleging a breach of the covenant of good faith and fair dealing despite the fact that no violation of public policy was alleged. The court found that a contract existed adopting progressive discipline thus the nature of the employment relationship was changed at least with respect to termination procedures. Here the court does not make that explicit finding but viewing the facts most favorably to the non-movant plaintiff there remains a factual issue as to the "reasonable expectations" of the parties concerning termination procedures or the lack thereof.

The motion for summary judgment as to the second count is denied.

IV.

The defendant has also moved for summary judgment on [HN8] the claim of negligent misrepresentation. The defendant argues and the plaintiff in its brief concedes that for such a claim to lie two conditions must be met: (1) there must be a false representation of fact, and (2) there must be sufficient evidence of reliance on the false representation.

The gravamen [*20] of the plaintiff's claim that there was a false representation is that he was told that he had a definite employment contract for six months and that the representation was false because he was fired after less than two weeks. The court has already concluded that the actual terms of Mr. Paris's compensation agreement did not create such an express employment contract for six months. In his brief on this claim the plaintiff refers to the statement made by Paris in his deposition that Donald Murphy, a vice president of the defendant said "as long as I passed my audits and kept my nose clean there would be no problem" can hardly be used as support for the claim that an express six month employment contract was created here. The plaintiff in arguing earlier in its brief that such a contract existed did not even allude to Murphy's alleged statement but concentrated on the terms of the compensation arrangement itself. Standing on their own Murphy's comments cannot be used to support the notion that anything more than an at-will employment contract existed. cf. *D'Ulisse-Cupo v. Board of Education of Notre Dame High School*, 202 Conn. 206, 208, 214, 215, 520 A.2d 217 (1987). In fact, no [*21] where in his complaint does the plaintiff claim Murphy's alleged statements created an implied contract or in any way formed a basis for him to argue that an at-will employment was not what was involved here and therefore his termination breached an implied covenant of good faith and fair dealing.

Murphy's comments standing alone or coupled with the terms of compensation cannot support a claim of false representation based on the fact that the plaintiff was terminated before six months without cause. He had

no legally recognizable reason to believe he had an express contract of employment for six months.

The motion for summary judgment is granted as to the negligent misrepresentation count. The court will not discuss the reliance aspect of the claim since failure to establish either requirement of this theory of action defeats it.

V.

The defendant has also moved for summary judgment based on its special defense that a cause of action for termination of an unwritten employment contract is preempted by the regulations applicable to [HN9] a Federal Savings Association. The defendant is such an organization chartered under the Homeowners Loan Act of 1933 (HOLA). Regulations governing such [*22] associations have been promulgated pursuant to federal statute by the Office of Thrift Supervision. These regulations are codified at 12 C.F.R. § 545.1 et seq. Such regulations have the force and effect of statute. *Fidelity Federal S & L Association v. DeLaCuesta, 458 U.S. 141, 144, 145 (1982).*

Section *12 CFR § 563.39* of the regulations provides that a "savings association may enter into an employment contract with its officers and other employees only in accordance with the requirements of this section. All employment contracts shall be in writing and shall be approved specifically by an association's board of directors."

The revised complaint is not based on an employment contract that complies with the just stated requirements of this federal regulation. The defendant argues that this regulation preempts attempts by states to regulate in this area, *Rush v. FDIC, 747 F. Supp. 575, 578 (ND Cal. 1990).* To permit state causes of action on contracts not authorized by the federal regulation in effect countenances regulation of the activities of such an association by state law. The doctrine of preemption, express and implied, is set forth in *Fidelity Federal Savings & Loan* [*23] *Association v. DeLaCuesta,* at 458 U.S. pp. 152-154.

The defendant has cited two cases that involve facts similar to the case now before the court. In *Berry v. American Federal Savings, 730 P2d 905 (Colo. 1986)* a terminated manager brought an action for breach of implied contract claiming the personnel manual which contained progressive disciplinary procedures, permitted her action. Summary judgment on behalf of the defendant was affirmed and the court held that as a matter of law the previously mentioned federal regulation "preempts plaintiff's state law claims for breach of her alleged employment contract." *id. at page 906.* Also see *Sholer v. Security Federal Sav. & Loan Assn., 736 F. Supp. 1083, 1084-1085 (D.N.M. 1990)* where the court reasoned.

> "To conclude that in the absence of a written agreement an implied employment contract arises under state law which would modify the employer/employee relationship would be equivalent to suggesting that a board of directors is hampered in its efforts to remove an officer at will. This is clearly not the intent of the regulations.". . *id. at page 1085.*

What is so clear to Judge Conway in the *Sholer* case has not [*24] been as clear to other courts which have held that the federal regulations do not preempt state causes of action based on, for example, implied contract or violation of public policy theories, *Cole v. Carteret Savings Bank, 224 N.J. Super. 446, 540 A.2d 923 (N.J., 1988), Thomka v. Financial Corp. of America, 15 Cal. App. 4th 877, 19 Cal. Rptr. 2d 382, 386 (1993), Hall v. Great Western Bank, 231 Cal. App. 3d 713, 6 I.E. R 1234, 1236, 282 Cal. Rptr. 640* (Cal., 1991). Frankly, this court prefers the reasoning of *Cole* and *Hall.* The *Cole* court notes that the *Berry* court relied on a case where the defendant institution was a home loan bank subject to the Home Loan Bank Act, *12 U.S. CA. § 1421 et seq* not H.O.L.A. and that Act has a section specifically permitting home loan banks to terminate employees at will. In such a case Federal preemption under *Fidelity Federal* would without question operate to bar a claim made under state law. However, as the *Cole* court notes HOLA has no such regulation and *12 CFR § 563.39* when read in its entirety indicates a clear concern for employee rights. Section (b) says an officer or employee may be terminated at any time [*25] but any termination other than for cause - which is later defined - shall not prejudice the worker's right to compensation or other benefits under the contract. The *Cole* court reasoned that *§ 563.39* is really geared toward formal contracts with top management. Speaking of the reasoning behind the regulation, the court says:

> Additionally, *12 C.F.R. § 563.39(a)* shows an expressed concern that member institutions not make employment contracts with any officers or other employees that would constitute an unsafe and unsound practice. An example suggested in the regulation is an employment contract that provides for an excessive term! It is hardly likely that the board was concerned that middle management or lower level employees could jeopardize the

management of a member institution due to long term contracts. Indeed, as shown, the only contracts Carteret has are all with senior executives; added support for a conclusion that the obvious concern of 563.39 is the type of formal contracts for top management positions.

The court is satisfied and concludes that [HN10] regulation § 563.39 is simply an expression of policy instructing member institutions that if they do contract formally [*26] with certain employees, that it must be in writing, authorized by its Board, etc., etc. There is nothing to even suggest that the board intended that the vast number of employees who have no formal contracts with such institutions be precluded from claiming reliance on a work manual which outlines specific steps for performance related terminations. Therefore, applying established principles of *Fidelity Federal, supra*, the court is satisfied that the *Woolley* doctrine does not conflict with *12 C.F.R. § 563.39* and is not preempted.

The *Woolley* doctrine is New Jersey's version of the implied contract doctrine based on an employee manual - this court has already decided that whether the manual here can be so categorized presents an issue of fact.

In any event, [HN11] concurrent state court jurisdiction should be presumed unless federal statutory or regulatory law expressly vests jurisdiction in the federal courts or preempts state causes of action. *Shea v. First Federal Savings & Loan Association, 184 Conn. 285, 289, 439 A.2d 997 (1981)*.

Finally, it is interesting to note that *Cole*, a New Jersey case, was decided in February of 1988, over six years ago. To the courts [*27] knowledge, the board regulating savings and loan associations has not seen fit to amend its regulations in response to that case's position on preemption which is now also the California view. Given the size and importance of these states this would appear to be an odd failure of federal regulatory response if these states permission of state causes of action threatened the federal regulatory scheme or violated the doctrine of federal preemption.

The court denies the defendant's motion for summary judgment based on its special defense.

Corradino, J.