LEXSEE 1999 U.S. DIST. LEXIS 16421

**CAROLYN A. HERRING, Plaintiff, v. THOMASVILLE FURNITURE INDUSTRIES, INC., Defendant.**

No. 4:96CV00081

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

*1999 U.S. Dist. LEXIS 16421*

August 31, 1999, Decided
August 31, 1999, Filed

**DISPOSITION:** [*1] Plaintiff's Motion for Reinstatement [Document # 77] GRANTED. Plaintiff's Motion for Back Pay and Prejudgment and Post-judgment Interest on Back Pay [Document # 77] and Motion for Attorney's Fees and Costs [Document # 79] GRANTED IN PART. Plaintiff's Motion for Prejudgment Interest and Post-judgment Interest [Document # 79] GRANTED IN PART and DENIED IN PART.

**COUNSEL:** For CAROLYN A. HERRING, plaintiff: ROBERT E. WINFREY, HIGH POINT, NC.

For THOMASVILLE FURNITURE INDUSTRIES, INC., defendant: RICHARD LEE RAINEY, WOMBLE CARLYLE SANDRIDGE & RICE, CHARLOTTE, NC.

**JUDGES:** James A. Beaty, Jr., United States District Judge.

**OPINION BY:** James A. Beaty, Jr.

**OPINION**

*MEMORANDUM OPINION*

BEATY, District Judge.

This case is before the Court following a trial which resulted in a jury verdict in favor of Plaintiff Carolyn A. Herring on her claim for retaliation in violation of Title VII. This matter is presently before the Court on Plaintiff's Motion for Attorney's Fees, Costs and Prejudgment Interest [Document # 79] and Plaintiff's Motion for Back Pay, Reinstatement, and Prejudgment Interest and Post-judgment Interest [Document # 77]. For the reasons discussed below, Plaintiff's Motions are [*2] GRANTED IN PART AND DENIED IN PART.

**I. FACTUAL AND PROCEDURAL HISTORY**

The controversy between Plaintiff Carolyn Herring ("Plaintiff") and Defendant Thomasville Furniture Industries, Inc. ("TFI") began in October 1994 when Plaintiff reported to Human Resources Manager Sharon Hennessee ("Manager Hennessee" or "Hennessee"), that an assistant supervisor, Richard Grimsley ("Grimsley"), had been making inappropriate sexual comments to her. The conflict culminated on March 24, 1995, when Plaintiff was terminated. Plaintiff alleged that the termination was motivated by retaliation against Plaintiff for filing her sexual harassment report and opposing what she believed to be an unlawful employment practice.

Plaintiff filed a civil action against TFI alleging that TFI had retaliated against her in violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C. §§ 2000e et seq.* Plaintiff also alleged state law claims for intentional and negligent infliction of emotional distress. The case was tried to a jury. At the close of Plaintiff's evidence, the Court denied Defendant's motion for judgment as a matter of law as to Plaintiff's Title VII claim but granted [*3] Defendant's motion for judgment as a matter of law as to Plaintiff's claims for intentional and negligent infliction of emotional distress. The following day, Plaintiff filed a Motion to Set Aside Entry of Judgment as a Matter of Law and to Reopen Case [Document # 54], and the Court denied this motion. At the close of all the evidence, the Court denied Defendant's renewed motion for judgment as a matter of law.

The jury returned a verdict in favor of Plaintiff on her Title VII claim, awarding $ 250,000.00 in compensatory damages and $ 1,250,000.00 in punitive damages. At the close of the trial, the parties agreed that the damages award would be subject to the statutory caps provided in *42 U.S.C. § 1981a(b)(3)*. Therefore, the Court

Case 3:02-cv-00691-CFD    Document 127-14    Filed 08/03/2007    Page 2 of 10

1999 U.S. Dist. LEXIS 16421, *                                                                Page 2

deferred entry of judgment and informed the parties that judgment would not be finally entered until the Court reduced the award pursuant to the statutory caps provided in *42 U.S.C. § 1981a(b)(3)*. Judgment was entered on the jury's verdict on October 22, 1998, but the final Order and Judgment was entered on April 23, 1999, when the Court entered judgment against Defendant for compensatory and punitive damages [*4] of $ 300,000.00 based on the jury's verdict and the statutory caps provided in *42 U.S.C. § 1981a(b)(3)*.

In the April 23, 1999 Order and Judgment, the Court also denied Defendant's Motion for Judgment As a Matter of Law and Motion for a New Trial. The Court found that the evidence in this case clearly supported the conclusion that Plaintiff engaged in a protected activity by filing her sexual harassment complaint, pushing for a full investigation, consulting with an attorney regarding her rights, and threatening to sue TFI for sexual harassment. Plaintiff suffered an adverse employment action because she was terminated on March 24, 1995. The Court concluded that Plaintiff had presented substantial evidence to show that the determinative factor in her termination was retaliation. Therefore, the Court concluded that the jury's verdict was supported by the evidence and was not against the clear weight of the evidence.

The Court also concluded that the award of punitive damages was supported by the evidence. Plaintiff presented substantial evidence from which a reasonable jury could conclude that the circumstances surrounding the investigation of Plaintiff's complaint [*5] and the acts leading up to Plaintiff's termination all demonstrated that Defendant acted with malice and with a reckless indifference to Plaintiff's federally protected right to be free from retaliation in violation of Title VII.

Finally, the Court found that an award of $ 300,000.00 for compensatory and punitive damages was supported by the evidence and was not excessive. The evidence produced at trial established that Plaintiff suffered physical and emotional problems as a result of her termination, based on her feeling that she had been betrayed by Manager Hennessee and targeted by the managers following her complaint against Grimsley. The evidence established that these problems affected her ability to perform other employment, that her symptoms continued until the time of trial, and that Plaintiff required counseling, medication, and in-patient treatment. Based on this evidence and all of the evidence presented by Plaintiff, the Court concluded that the jury's liability determination was properly grounded in the evidence, and the damages award of $ 300,000.00 in compensatory and punitive damages was not excessive.

The Court noted that the $ 300,000.00 award of compensatory and [*6] punitive damages did not include the equitable remedies to which Plaintiff is entitled. In addition, the Court noted that Plaintiff might be entitled to recover attorney's fees based on the jury's liability determination. Plaintiff subsequently filed the present motion seeking the equitable remedies of back pay, reinstatement, and prejudgment interest. Plaintiff also filed a motion requesting attorney's fees and costs based on the jury's liability determination. The Court will address each of these motions in turn.

II. EQUITABLE REMEDIES OF REINSTATEMENT AND BACK PAY

Plaintiff's first motion requests equitable relief in the form of reinstatement, back pay, and prejudgment interest on the back pay. The jury in this case awarded Plaintiff compensatory and punitive damages, which were capped at $ 300,000.00 pursuant to *42 U.S.C. § 1981a(b)(3)*. However, the capped award does not include equitable remedies such as reinstatement and back pay, which may be awarded by the Court. *See 42 U.S.C. § 1981a(b)(2)* (excluding from application of the statutory cap "backpay, interest on backpay, or any other type of relief authorized under section [*7] 706(g) of the Civil Rights Act of 1964"). Plaintiff now seeks reinstatement and back pay, and the Court will separately consider each of these equitable remedies.

A. Reinstatement

Reinstatement is the preferred equitable remedy designed to make the Plaintiff whole by restoring her to the position she would have had absent the unlawful discrimination or retaliation. *See Duke v. Uniroyal, Inc., 928 F.2d 1413, 1424* (4th Cir.) (noting that "reinstatement is the much preferred remedy for addressing potential future losses"), *cert. denied 502 U.S. 963, 116 L. Ed. 2d 449, 112 S. Ct. 429 (1991)*. Defendant contends that reinstatement is not appropriate in this case because the evidence reveals "such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible." *Duke, 928 F.2d at 1423*. However, based on the evidence presented at trial, the Court finds that the situation may be awkward or uncomfortable, but the evidence did not demonstrate such extreme hostility that a productive working relationship is not possible. There is no basis in this case for concluding that Plaintiff could not assume her prior [*8] position with TFI, and the Court concludes that a productive and amicable working relationship is possible and desirable in these circumstances.

Defendant contends that reinstatement is not an appropriate remedy because TFI has discovered evidence of wrongdoing by Plaintiff that would justify her termination. This argument was raised by Defendant in prior motions to limit Plaintiff's damages based on "after-


acquired evidence." Defendant contended that Plaintiff was not entitled to recover "for those damages [that were] incurred after it was discovered that Plaintiff had falsified her [employment] application [with TFI]." (Def.'s Br. in Supp. of Mot. to Reduce Damages at 3.) Under *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 130 L. Ed. 2d 852, 115 S. Ct. 879 (1995) and *Russell v. Microdyne Corp.*, 65 F.3d 1229 (4th Cir. 1995), an employer can limit an employee's remedy for discriminatory discharge and prevent reinstatement by raising the defense of "after-acquired evidence" of the employee's wrongdoing. The Fourth Circuit has explained that under *McKennon*, an employer must establish "'that the wrongdoing was of such severity that the employee in [*9] fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge.'" *Russell, 65 F.3d at 1238* (quoting *McKennon, 513 U.S. at 362-63, 130 L. Ed. 2d at 864*). Stated another way, Defendant has the burden of proving that (1) Defendant was not aware of Plaintiff's misconduct at the time of Plaintiff's termination, (2) Plaintiff's misconduct was serious enough to justify discharge, and (3) Defendant would have discharged Plaintiff for this reason if Defendant had known about this misconduct. *See Ricky v. Mapco, Inc.*, 50 F.3d 874, 876 (10th Cir. 1995) (citing *McKennon, 513 U.S. at 362-63, 130 L. Ed. 2d at 864*). If Defendant meets its burden under *McKennon*, then "'neither reinstatement nor front pay is an appropriate remedy.'" *Russell, 65 F.3d at 1238* (quoting *McKennon, 513 U.S. at 362, 130 L. Ed. 2d at 864*).

This Court has already determined that Defendant failed to establish the elements of this defense. (See Memorandum Opinion dated April 23, 1999). The evidence produced at trial demonstrated that in a section on Plaintiff's employment [*10] application where Plaintiff listed her previous work experience, there exist two incorrect entries regarding the dates and amount of time that Plaintiff worked for two previous employers. One entry provides that Plaintiff worked for a previous employer "From 1973 To 1977"; a second entry provides that Plaintiff worked for another employer "From 1988 To 7 [months]." (Def.'s Trial Ex. 1.) Plaintiff contends that these entries are inadvertent errors, the second of which Plaintiff claims that she did not even write. (See Pl.'s Br. in Resp. to Def.'s Mot. to Reduce Damages Pursuant to After-Acquired Evidence at 14-15.) Conversely, Defendant contends that these entries are "falsifications," that Defendant did not discover these falsifications until July 16, 1996, and that Defendant would have terminated Plaintiff for these falsifications. (See Def.'s Brief in Supp. of Mot. to Reduce Damages at 3.) In support of its contention that TFI would have terminated Plaintiff for these entries, Defendant has offered a TFI document that provides that falsifying records or information "can result in immediate discharge." (Def.'s Trial Ex. 5.) Furthermore, General Manager David Masters testified [*11] that TFI would have terminated Plaintiff for these incorrect entries.

However, this Court has already concluded that Defendant failed to present sufficient evidence to entitle it to judgment in its favor on this defense. (See Memorandum Opinion dated April 23, 1999). The alleged "falsifications" did not appear deliberate and were more likely inadvertent errors on Plaintiff's part. Moreover, the self-serving statements of David Masters did not establish that Defendant actually would have terminated Plaintiff, an otherwise exemplary employee, if it had discovered these inadvertent errors. Thus, based on the evidence presented, the Court found that Defendant failed to prove that Plaintiff engaged in serious wrongdoing or that Defendant would have terminated Plaintiff upon discovering the errors. Therefore, the Court denied Defendant's Motion to Reduce Damages Pursuant to After-Acquired Evidence. (See Order and Judgment dated April 23, 1999.)

The Court likewise concludes that this "after-acquired evidence" does not preclude the remedy of reinstatement. As noted above, if Defendant had been able to establish that Plaintiff's misconduct was serious enough to justify discharge, [*12] and that Defendant would have discharged Plaintiff for this reason if Defendant had known about this misconduct, then reinstatement would not be an appropriate remedy. However, reinstatement is appropriate if these elements are not established. Defendant contends that "if she is rehired, she will be terminated for reasons unrelated to the alleged retaliation." (Def.'s Mem. in Opposition to Pl.'s Motion at 12.) However, because the "after-acquired evidence" defense has not been established and is not applicable, Defendant cannot use that as a basis to avoid Plaintiff's reinstatement. If Plaintiff is reinstated, Defendant may not terminate Plaintiff for these purported "falsifications" without raising a presumption that the termination is in retaliation against Plaintiff for bringing this Title VII claim.

The Court concludes that reinstatement is an appropriate remedy in this case, and Defendant has failed to present any basis for concluding that reinstatement should not be ordered. However, the Court notes that Plaintiff has not presented any evidence regarding promotions and raises that Plaintiff might otherwise have received since her termination. The burden is on Plaintiff to establish [*13] these facts, and the Court will not re-open discovery in this case at this late date to allow Plaintiff to present evidence on this issue. Therefore, the Court will reinstate Plaintiff to her former position or a substantially comparable position with TFI, at the salary Plaintiff was previously making and at no less than the

current salary for that position. In addition, Plaintiff is entitled to her prior level of benefits and seniority.

If Plaintiff's prior position or a substantially comparable position is not presently available, Plaintiff is to receive the next available vacancy in such a position. While Plaintiff is waiting for such a position, Plaintiff is to receive the salary and benefits she would receive if she were working in her prior position.

B. Back Pay

Plaintiff also seeks an award of back pay. Back pay promotes the purposes of Title VII by providing compensation for the wages and benefits that Plaintiff lost after the adverse employment action was taken against her. *See Albemarle Paper Co. v. Moody, 422 U.S. 405, 418-21, 45 L. Ed. 2d 280, 297-99, 95 S. Ct. 2362 (1975).* An award of back pay is intertwined with the injunctive relief of reinstatement, and back pay [*14] is a restitutionary remedy designed to make the Plaintiff whole. *Id.* As such, back pay is an equitable remedy to be calculated by the Court. *See id.; Duke, 928 F.2d at 1424* (noting that back pay under Title VII is an equitable, restitutionary remedy committed to the discretion of the trial judge).

An award of back pay is appropriate unless Plaintiff failed to use reasonable efforts to mitigate her damages. *Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1358 (4th Cir. 1995).* With regard to Plaintiff's mitigation of damages, Defendant correctly notes that Plaintiff found alternative employment at Miller Desk Company approximately one month after her termination from TFI. Plaintiff was terminated by TFI on March 24, 1995, and she began work at Miller Desk Company on May 1, 1995. Plaintiff later voluntarily resigned from Miller Desk Company because she was depressed and wanted to come back to work at TFI. Plaintiff's voluntary resignation from comparable employment effectively cuts off any claim she has for back pay after that point based on Plaintiff's failure to mitigate her damages. *See Brady v. Thurston Motor Lines, Inc., 753 F.2d 1269, 1273 (4th Cir. 1985)* [*15] ("Where [a] discharged Title VII plaintiff subsequently finds similar employment, but then voluntarily quits, back pay should be decreased by the amount he would have earned had he not quit."); *Griffin v. George B. Buck Consulting Actuaries, Inc., 566 F. Supp. 881, 882 (S.D.N.Y. 1983)* ("When a plaintiff has obtained employment equivalent to that from which he was excluded by the defendant, and quits without adequate reason, the backpay award must be offset by the amount the plaintiff would have earned had he kept the job."). In these circumstances, Plaintiff was entitled to recover back pay from March 24, 1995 to May 1, 1995 when she began work at Miller Desk Company. Plaintiff's position at Miller Desk Company involved comparable work at comparable compensation, and if Plaintiff had kept that job there would be no lost back pay after May 1, 1995 since her salary at Miller Desk Company would have offset any back pay award. Therefore, the Court concludes that Plaintiff is entitled to recover back pay only from March 24, 1995 to May 1, 1995.

Back pay generally includes lost salary and lost benefits. However, the burden is on Plaintiff to present evidence to establish [*16] the amount of back pay and lost benefits to which she is entitled. In this case, Plaintiff has presented no evidence on which this Court could base an award of raises, bonuses, or lost benefits. Plaintiff asks that the case be referred to a Magistrate Judge for additional discovery and determination of the appropriate back pay award, including lost raises, possible promotions, and lost benefits. However, Plaintiff had the opportunity during pre-trial discovery and during trial to obtain and present this information. Having failed to do so, this Court will not now reopen discovery at this late date. Therefore, Plaintiff's back pay award will be computed based on her gross salary at TFI at the time of her termination, without speculation regarding potential lost raises, promotions or benefits. [1]

> 1  The Court does not have before it the amount of Plaintiff's wages at the time of her termination from TFI. However, this amount can be objectively determined and does not require additional discovery, hearing, or order by the Court. Therefore, the Court will order back pay for the period above calculated using Plaintiff's gross wages at the time of her termination.

[*17] C. Interest on Back Pay

In addition, Plaintiff seeks to recover prejudgment interest on the back pay award. The Court concludes that Plaintiff is entitled to prejudgment interest on the back pay award, calculated at the United States Treasury Bill rate compounded annually. *See Luciano v. Olsten Corp., 912 F. Supp. 663, 676-77 (E.D.N.Y. 1996), aff'd, 110 F.3d 210 (2d Cir. 1997).* The Court notes that the accompanying Order and Judgment enters judgment for Plaintiff on her back pay award. Therefore, the prejudgment interest on the back pay award will be computed from May 1, 1995 through the date of the accompanying Order and Judgment entering the award of back pay. The Court also notes that Plaintiff is entitled to post-judgment interest on that back pay award calculated from entry of the accompanying Order and Judgment at the United States Treasury Bill rate, as described in *28 U.S.C. § 1961(b).*

III. ATTORNEY'S FEES AND COSTS

Case 3:02-cv-00691-CFD    Document 127-14    Filed 08/03/2007    Page 5 of 10

Page 5
1999 U.S. Dist. LEXIS 16421, *

Plaintiff has also moved to recover her attorney's fees pursuant to *42 U.S.C. § 2000e-5(k)*. In actions brought pursuant to Title VII, "the court, in its discretion, may [*18] allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs . . . ." *42 U.S.C. § 2000e-5(k)*. Plaintiff is a prevailing party in this case because she has received a damages judgment in her favor on the merits of her retaliation claim. *See Farrar v. Hobby, 506 U.S. 103, 111-12, 121 L. Ed. 2d 494, 503-04, 113 S. Ct. 566 (1992)*.

Defendant contends that Plaintiff is not entitled to recover attorney's fees because the motion for attorney's fees is untimely and fails to comply with the local rules. Under Local Rule 54.2, a request for an award of attorney's fees must be made within sixty days after the entry of final judgment. Defendant contends that this sixty day period should be calculated from October 22, 1998, when the Court entered judgment on the full amount of the jury's verdict. However, the Court made clear to the parties after the trial that judgment would not be final until the Court applied the statutory caps and entered a final judgment consistent with the statutory caps. The Court entered an Order and Judgment of $ 300,000.00 consistent with the statutory cap on April 23, 1999. Plaintiff filed her Motion [*19] for Attorney's Fees and Costs on May 28, 1999, within the sixty day period following the Court's entry of Judgment. Plaintiff's motion was therefore timely, given the Court's prior instructions and the date on which the final judgment was entered. The Court concludes that the Motion for Attorney's Fees and Costs is properly before the Court and should be considered on the merits.

In determining the amount of attorney's fees to award, the Court begins by calculating the "lodestar" figure. The lodestar figure is determined by multiplying the number of reasonable hours expended times a reasonable rate. *See Hensley v. Eckerhart, 461 U.S. 424, 433, 76 L. Ed. 2d 40, 50, 103 S. Ct. 1933 (1983); Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174-75 (4th Cir. 1994)*. To determine the reasonable rate and reasonable number of hours to use in calculating the lodestar, the Court is guided by the twelve "*Johnson*" factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary [*20] fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputations, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Rum Creek, 31 F.3d at 175*; (citing *Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974))*. These "*Johnson*" factors will be considered as part of the Court's determination of (A) the reasonable number of hours and (B) the reasonable rate to be used in this case. *See Daly v. Hill, 790 F.2d 1071, 1078 (4th Cir. 1986)*.

A. Reasonable Number of Hours

To establish the number of hours reasonably expended, Plaintiff must "submit evidence supporting the hours worked." *Hensley, 461 U.S. at 433, 76 L. Ed. 2d at 50*. The number of hours should be reduced to exclude hours that are "excessive, redundant, or otherwise unnecessary" in order to reflect the number of hours that would properly be billed to the client. *See id. at 434, 76 L. Ed. 2d at 51*; [*21] *Daly, 790 F.2d at 1079 (4th Cir. 1986)*. In this case, Plaintiff's attorney, Robert Winfrey, presented billing records to establish the number of hours spent on Plaintiff's claim. Attorney Winfrey claims 885.50 attorney hours and 304.00 paralegal hours.

Defendant argues that the request is excessive and that the number of hours should be reduced to reflect (1) the high number of hours spent by Attorney Winfrey responding to Defendant's motion for summary judgment; (2) the high number of hours spent in communication with Plaintiff, (3) the time spent on unproductive or non-legal tasks; (4) the lack of detail in the billing records; (5) the use of paralegal time, and (6) the lack of complete success. Each of these arguments will be considered below.

i. Time Spent On Motion For Summary Judgment

Defendant first contends that the amount of time spent by Attorney Winfrey in responding to Defendant's Motion for Summary Judgment is excessive. Attorney Winfrey's billing records reflect 152 hours spent in preparing Plaintiff's brief in response to Defendant's Motion for Summary Judgment. The Court agrees with Defendant that this amount of time is excessive and is an unreasonable [*22] amount of time given the circumstances of the case and the complexity of the brief. This case was a typical employment discrimination case, without unusual or complex facts. It did not involve a large number of parties or claims. In addition, the Court notes that the time spent by Plaintiff's attorney includes time spent redrafting the brief to conform to the local rules. This time spent redrafting the brief was redundant and is not properly chargeable to Defendant. In this case, the Court concludes that 152 hours for the response brief is excessive and would not be billed to the client. Therefore, the Court will reduce the attorney time by 100 hours to exclude the hours that are "excessive, redundant, or otherwise unnecessary" in order to reflect the number of hours that would properly be billed to the client for

this service. *See Hensley, 461 U.S. at 434, 76 L. Ed. 2d at 51; Daly, 790 F.2d at 1079 (4th Cir. 1986).*

### ii. Time Spent Communicating with Plaintiff

Defendant next contends that Attorney Winfrey and his paralegal spent an excessive amount of time in communication with Plaintiff. The Court notes that some long preparation sessions are reasonable [*23] given the nature of the case and the factual inquiry that was required. The trial was fact intensive and involved Plaintiff "telling her story." Because the case was so focused on Plaintiff and was so fact-intensive, it is reasonable that Plaintiff was very involved in the preparation for trial. Likewise, it was efficient for Plaintiff to be involved in preparing for depositions and witness interviews. However, the billing records do not specify the exact amount of time spent in communication with Plaintiff. For example, the billing records describe "communication with client" on several days, but the records do not show how much of the time for that day was spent on that specific task. The Court will address this problem generally by accounting for the lack of detail in the records, as discussed below.

### iii. Travel Time and Time Spent on Non-legal Tasks

Defendant also contends that the hours billed should be reduced to account for unproductive time or time spent on non-legal tasks. Attorney Winfrey's records indicate some time spent traveling or on non-legal tasks. While this time should be compensated, it might not be compensated at the full hourly rate. *See Smith v. Freeman, 921 F.2d 1120, 1122 (10th Cir. 1990)* [*24] (awarding 25% of hourly rate for driving time, and holding that there is "no abuse of discretion in the trial court's determination that an attorney's driving time, while necessary, is essentially unproductive and, therefore, compensable at a reduced hourly rate"); *McDonald v. Armontrout, 860 F.2d 1456, 1462-63 (8th Cir. 1988)* (upholding district court's decision to compensate travel time at 1/2 the hourly rate). However, Plaintiff's billing records do not separate the amount of time spent on specific tasks, and do not allow the Court to determine the exact amount of time spent traveling or engaging in non-legal tasks. Therefore, rather than attempting to reduce these specific amounts, the Court will address this problem by considering the lack of detail in the records, as discussed below.

### iv. Detail in Records

Defendant contends that the fee request should be reduced because the billing records lack specific detail. This Court notes that additional detail and specificity in the records would have been preferable. The records give a total number of hours for each day as a lump sum, with some description but without providing the amount of time spent on the different [*25] tasks described. As discussed above, the Court is unable to determine the exact amount of time spent in communication with Plaintiff, spent traveling, or spent on non-legal tasks. In addition, the Court is troubled by the large blocks of time with very vague and general descriptions, including time described as "miscellaneous." Although this Court finds that the records contain sufficient information and adequate documentation to allow for a general evaluation of the claim, *see Daly v. Hill, 790 F.2d at 1079 n.12* (noting that "minutely detailed records" are not required), the lack of clear detail makes it more difficult for the Court to determine the reasonableness of the request. Therefore, rather than deleting specific hours, this Court will reduce the total number of hours requested by 25% to account for the lack of specificity in the records. This approach has been used by district courts in this circuit and was approved by the Fourth Circuit in *Buffington v. Baltimore County, Md., 913 F.2d 113, 126-27 (4th Cir. 1990), cert. denied, 499 U.S. 906, 113 L. Ed. 2d 216, 111 S. Ct. 1106 (1991)*, and *Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987)*, [*26] *cert. denied, 484 U.S. 1027, 98 L. Ed. 2d 765, 108 S. Ct. 752 (1988)*, in situations where the overall request appears reasonable, but the lack of detail makes it difficult to review some of the billing entries. While it may be reasonable to spend 12 to 17 hours per day working on a case during trial and during the period immediately preceding trial, Plaintiff's records are not sufficiently detailed to justify all of this time. An overall reduction of 25% corrects for this lack of detail, and ensures that the amount of time is reasonable in light of the nature of the case and the time and effort required. The Court declines to reject the fee request altogether based on the lack of detail, because the overall request does not "shock the conscience." *Cf. Fair Housing Council v. Landow, 999 F.2d 92, 97 (4th Cir. 1993)* (holding that district court may completely deny attorney's fees to a partially successful Plaintiff who sought over $ 500,000.00 in attorneys fees without adequately detailed records). The attorneys in the present case did spend a great deal of time on Plaintiff's case, and this Court finds that a reduction of 25% is more appropriate than a complete rejection [*27] of the fee request in this case.

### v. Paralegal Time

Defendant also objects to the use of paralegal time in this case. A total of 304.00 hours of paralegal time was billed, and the paralegal was used in obtaining records and helping prepare for and assist at trial. For a trial of this sort, this Court finds that the use of a paralegal is completely reasonable. The Supreme Court has held that expenses incurred for paralegal services are recoverable in civil rights litigation because delegating tasks to paralegals reduces the overall cost of the litiga-

tion. *See Missouri v. Jenkins, 491 U.S. 274, 288-89, 105 L. Ed. 2d 229, 243-44, 109 S. Ct. 2463 (1989)*. The Court finds that in this case, such an expense would customarily be billed to the client, and the paralegal fees should be included in the reasonable hours expended. However, the lack of detail in the records again makes it difficult for the Court to engage in a specific examination of the reasonableness of the hours spent. Therefore, this Court will reduce the hours by 25% to account for the lack of detail in the records and to ensure that the request is reasonable.

vi. Lack of Complete Success

Finally, Defendant contends that [*28] the hours requested should be reduced to account for the fact that Plaintiff's claims for negligent and intentional infliction of emotional distress were dismissed on a directed verdict at the close of Plaintiff's evidence. Although the amount of time expended overall by the attorneys and paralegals might be reasonable, "the most critical factor in calculating a reasonable fee award is the degree of success obtained; when a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Brodziak v. Runyon, 145 F.3d 194, 196 (4th Cir. 1998)* (internal citations omitted). Thus, in determining the number of hours reasonably expended, this Court must consider the fact that Plaintiff prevailed on her retaliation claim, but did not prevail on her state law emotional distress claims. Where a plaintiff prevails on some claims but not others, the Court must identify the relationship between the successful and unsuccessful claims. If the claims are based on different facts and legal theories, the Plaintiff should not be compensated for time spent pursuing [*29] the unsuccessful claims because that effort was not "expended in pursuit of the ultimate result achieved." *Hensley, 461 U.S. at 434-35, 76 L. Ed. 2d at 51-52*. However, where the plaintiff's claims involve "a common core of facts or will be based on related legal theories," the attorney's time will be "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* In that case, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

In this case, based on the evidence presented at trial, this Court concludes that Plaintiff's claims involve a common core of facts and are "inextricably intermingled." Plaintiff's allegations of both retaliation and infliction of emotional distress were each based on the same conduct by Defendant. This Court finds that it would be unreasonable to ask Plaintiff's attorney to divide the hours spent between the claims, since the interrelated nature of the claims would make such a division almost impossible. *Cf. Abshire v. Walls, 830 F.2d 1277, 1282-83 (4th Cir. 1987)* [*30] (holding that claims based on different legal theories were nonetheless based on a "common core of facts" since the successful claim required "developing and presenting the facts surrounding the entire sequence of events").

However, even though the claims are interrelated, that does not necessarily mean that Plaintiff should recover for all of the hours expended. The Court must evaluate the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. In this case, Plaintiff obtained a decisive victory in her retaliation claim. However, the Court dismissed her state law emotional distress claims. The Supreme Court directed that in a situation such as this, "the district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley, 461 U.S. at 436-37, 76 L. Ed. 2d at 52*. In this case, Plaintiff's attorney received a sizeable award and a vindication of Plaintiff's claim of retaliation. Plaintiff's overall success was therefore substantial. After considering all of the evidence and arguments presented during the trial [*31] of this case, this Court concludes that 90% of the time and efforts of Plaintiff's attorney was expended in pursuit of the retaliation claim or in establishing facts and background that were important to the retaliation claim. In comparing the relief obtained to the scope of litigation as a whole, an award of 90% of the overall time expended is reasonable in relation to the results obtained. Therefore, Plaintiff is entitled to recover for 90% of the hours claimed by her attorney, and a reduction of 10% in the overall hours expended is appropriate to account for Plaintiff's lack of complete success.

vii. Conclusion Calculating Reasonable Hours Expended

As discussed above, the Court has determined that the hours requested should be reduced by 100.00 hours to reflect the excessive time spent on the summary judgment brief. In addition, the request is subject to an overall reduction of 25% to account for the lack of sufficiently detailed billing records, and an overall reduction of 10% to account for the lack of complete success. Because the 25% and 10% reductions both apply to the overall total request, the result is in an overall reduction of 35%. Therefore, the total requested time [*32] will be multiplied by an "adjustment factor" of .65 to reflect this reduction.

This calculation of hours spent is as follows:

| Billing Professional | Requested Time | Excessiveness Reduction | Resulting Time | Adjustment Factor | Adjusted Total Time |
|---|---|---|---|---|---|
| Attorney Winfrey | 885.50 | 100.00 | 785.50 | .65 | 510.58 |
| Paralegal | 304.00 | 0.00 | 304.00 | .65 | 197.60 |

After making these adjustments, the Court notes that the overall adjusted total time is reasonable based on the twelve *Johnson* factors. This trial lasted for two weeks and required many hours of investigation and time spent interviewing witnesses. Thus, the time and labor involved was substantial, and Attorney Winfrey was precluded from working on other matters because of the time spent working on this case. Although the issues presented were not novel, the case did involve a level of complexity typical in employment discrimination cases. Therefore, this Court finds that the "adjusted total time" calculated above represents time that was reasonably expended and appropriately reduced given the partial nature of Plaintiff's success and the lack of detail in the records.

B. Reasonable Rate

Once the reasonable [*33] number of hours has been determined, the Court must determine the reasonable fee "calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson, 465 U.S. 886, 895, 79 L. Ed. 2d 891, 900, 104 S. Ct. 1541 (1984)*. "This determination is fact-intensive and is best guided by what attorneys earn from paying clients for similar services in similar circumstances." *Rum Creek, 31 F.3d at 175*. In this case, Attorney Winfrey's usual customary fee is $ 150.00, based on an affidavit submitted on May 28, 1999. He has been practicing for 18 years and has had experience in various types of litigation and in employment law. Plaintiff does not submit any other affidavits to support this fee amount. However, the 1998 North Carolina Bar Association Economic Survey ("1998 Economic Survey") indicates that typical rates for an attorney admitted to the bar the same year as Mr. Winfrey range from approximately $ 100.00 to $ 170.00 in this area. This Court concludes that Mr. Winfrey's requested fee amount of $ 150.00 is reasonable, based on his affidavit, the 1998 Economic Survey, and the Court's knowledge of typical fees in the area and typical fees awarded [*34] in similar cases.

Attorney Winfrey has not submitted a requested hourly fee for his paralegal's time. There are no affidavits submitted in support of any given figure. However, the 1998 Economic Survey shows that typical paralegal rates range from $ 40.00 to $ 55.00. Based on this survey and this Court's knowledge of area fees and practices, this Court finds that $ 45.00 per hour reflects a current reasonable rate for paralegal services.

Under the twelve reasonableness factors, these rates are appropriate, and there is no additional basis for adjusting the rates up or down. Plaintiff argues that the rates should be adjusted upward to account for the contingent nature of the fee agreement and the risk involved in a contingent fee case. However, the Supreme Court has held that enhancement based on the "contingent" nature of the fee agreement is "not compatible" with fee-shifting statutes, "nor is [such an enhancement] necessary to the determination of a reasonable fee." *City of Burlington v. Dague, 505 U.S. 557, 565-66, 120 L. Ed. 2d 449, 458-59, 112 S. Ct. 2638 (1992)*. (analyzing fee shifting statutes under the Clean Air Act, but noting that those statutes were similar to *42 U.S.C. § 1988* [*35] and *42 U.S.C. § 2000e-5(k)* and that "our case law construing what is a 'reasonable' fee applies uniformly to all of them"). In addition, the result obtained was not exceptional and does not justify any other enhancement. Therefore, no fee enhancement will be applied in this case. The customary fees are reasonable and will be used without enhancement to calculate the lodestar.

Therefore, the court will calculate the attorney's fees as follows:

| Billing Professional | Adjusted Total Time | Hourly Rate | Amount of Award |
|---|---|---|---|
| Attorney Winfrey | 510.58 | $ 150.00 | $ 76,587.00 |
| Paralegal | 197.00 | $ 45.00 | $ 8,892.00 |
| TOTAL | | | $ 85,479.00 |

Based on these calculations, the total compensation for attorney time and paralegal time is $ 85,479.00. However, in addition to this figure, the Court must determine the reasonable expenses that Plaintiff can recover.

C. Expenses

Attorney Winfrey has requested $ 4,431.25 as "costs." The Fourth Circuit has held that out of pocket expenses incurred by the attorney in a civil rights case can be recovered under *42 U.S.C. § 1988* as long as they "are normally charged to a fee-paying client, [*36] in the course of providing legal services." *Spell v. McDaniel, 852 F.2d 762, 771 (4th Cir. 1988)*. Plaintiff has not itemized or described the basis for these requested costs, although Plaintiff's Brief Supporting Motion For Attorney Fee, Costs and Prejudgment Interest [Document # 80] states that "part of her costs" are the fees involved in taking the depositions of various individuals. However, these costs are not itemized and do not contain sufficient detail to allow for a specific reasonableness review. Therefore, this court finds that the overall reduction of 25% is again appropriate to account for the lack of detail in the expenses claimed. In addition, the overall expenses should also be reduced by 10% to reflect the lack of complete success and the relationship between the successful claim and the overall scope of the litigation. This overall reduction of 35% is calculated by multiplying the requested expenses by the adjustment factor of .65.

Based on these findings, the expenses are calculated as follows:

| Billing Professional | Requested Expenses | Adjustment Factor | Expenses Award |
|---|---|---|---|
| Attorney Winfrey | $ 4,431.25 | .65 | $ 2,880.31 |
| TOTAL | | | $ 2,880.31 |

[*37] Therefore, Plaintiff can recover $ 2,880.31 for Attorney Winfrey's expenses. The Court concludes that this amount is reasonable, and adequately compensates Plaintiff for reasonable expenses, including items such as depositions that would ordinarily be billed to a fee-paying client. When these expenses are added to the attorney's fees calculated above, the total award for Plaintiff on her attorney's fees claim is $ 88,359.31.

IV. INTEREST ON COMPENSATORY AND PUNITIVE DAMAGES AWARD

Plaintiff requests prejudgment interest on the $ 300,000.00 compensatory and punitive damages award. As discussed above, Plaintiff is entitled to prejudgment interest on her back pay award. However, Plaintiff has presented no authority for awarding prejudgment interest on the compensatory and punitive damages award, and this Court declines to make such an award in this case. The amount of the award itself is adequate compensation for Plaintiff's suffering and sufficiently serves the purposes of Title VII in deterring unlawful conduct and making Plaintiff whole. Therefore, Plaintiff's request for prejudgment interest on the compensatory and punitive damages award is denied.

However, the Court notes that [*38] Plaintiff also requests post-judgment interest on the $ 300,000.00 compensatory and punitive damages award. Post-judgment interest is calculated from the date of entry of the judgment. *See 28 U.S.C. § 1961(a)*. As discussed above, the Court noted after the trial in this case that the judgment would not be finally entered until the statutory caps were applied. That final judgment was entered on April 23, 1999. Therefore, Plaintiff's request is granted and Plaintiff is entitled to recover post-judgment interest calculated from April 23, 1999. Post-judgment interest is to be calculated at the United States Treasury Bill rate, as described in *28 U.S.C. § 1961(b)*.

V. CONCLUSION

This Court concludes that Plaintiff is entitled to the equitable remedy of reinstatement. Plaintiff is to be reinstated to her former position or to a substantially comparable position at TFI. If such a position is not available, Plaintiff is to be compensated at her prior salary with her prior benefits from the date of this decision forward until a position becomes available.

Plaintiff is also entitled to an award of back pay based on her gross salary at [*39] the time of termination. The back pay award will be computed from March 24, 1995 through May 1, 1995 because Plaintiff began work at a comparable position on May 1, 1995 and then voluntarily resigned. Plaintiff is entitled to prejudgment interest on this back pay award through the date of this decision. Plaintiff is entitled to post-judgment interest on

the back pay award from the date of this decision forward.

The Court also concludes that Plaintiff is entitled to recover $ 88,359.31 in attorney's fees and expenses as the prevailing party on her Title VII retaliation claim.

Finally, the Court concludes that Plaintiff is not entitled to prejudgment interest on the $ 300,000.00 award for compensatory and punitive damages. Post-judgment interest on that award will be calculated at the United States Treasury Bill rate forward from the entry of judgment on April 23, 1999.

This, the 31 day of August, 1999.

James A. Beaty, Jr.

United States District Judge

*ORDER AND JUDGMENT*

BEATY, District Judge.

For the reasons set forth in the MEMORANDUM OPINION filed contemporaneously herewith,

IT IS ORDERED, ADJUDGED, AND DECREED that Plaintiff's Motion for Reinstatement [Document # [*40] 77] is GRANTED. IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Plaintiff be reinstated to her former position or to a substantially comparable position at Thomasville Furniture Industries, Inc. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that if such a position is not available, Plaintiff is to be compensated at her prior salary with her prior benefits from the date of this Judgment forward until a position becomes available.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff's Motion for Back Pay and Prejudgment and Post-judgment Interest on Back Pay [Document # 77] is GRANTED IN PART. IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiff have and recover from Defendant back pay based on her gross salary at the time of her termination, computed from March 24, 1995 through May 1, 1995. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff have and recover from Defendant prejudgment interest on this back pay award at the United States Treasury Bill rate from May 1, 1995 through the date of this Judgment. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff is entitled to post-judgment interest on the back pay award from the date of this Judgment [*41] forward, computed at the United States Treasury Bill rate pursuant to *28 U.S.C. § 1961(b)*.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff's Motion for Attorney's Fees and Costs [Document # 79] is GRANTED IN PART, and Plaintiff is awarded $ 88,359.31 in attorney's fees and expenses. IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiff have and recover from Defendant the sum of $ 88,359.31 in attorney's fees and expenses.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff's Motion for Prejudgment Interest and Post-judgment Interest [Document # 79] is GRANTED IN PART. To the extent Plaintiff seeks prejudgment interest on the $ 300,000.00 award for compensatory and punitive damages, Plaintiff's Motion is DENIED. However, Plaintiff is entitled to post-judgment interest on that award. IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Plaintiff is entitled to post-judgment interest on the $ 300,000.00 award, computed at the United States Treasury Bill rate pursuant to *28 U.S.C. § 1961(b)* from the date of entry of Judgment on April 23, 1999.

This, the 31 day of August, 1999.

James A. Beaty, Jr.

United [*42] States District Judge